UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEXANDER PLADOTT,

      Plaintiff

v.

LARRY EWERS,
JOHN DOES 1 – 5
JOHN DOES 6 – 10,

      Defendants

CIVIL ACTION NO. 05-10356 RWZ

## COMPLAINT

### Nature of the Action

1. This case arises out of a trans-national investment fraud resulting in a debt, admitted to in a signed writing to four creditors, in the principal amount of $2,690,000,000.

### Parties

2. The Plaintiff, Alexander Pladott ("Pladott"), is a United States residing at 20000 Winnetka Place, Woodland Hills, California.

3. The Defendant, Larry Ewers ("Ewers"), is a United States citizen residing at 13726 Suntan Avenue, Corpus Christi, Texas 78418.

4. Defendants, John Does 1 – 5, are unknown persons at this time.

5. Defendants, John Does 6 – 10, are unknown persons at this time.

**Jurisdiction and Venue**

6. This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332 because it is an action between citizens of different states and nations and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

7. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a)(2).

8. Venue in this District is proper because the dispute originated in this District.

**Facts**

9. On information and belief, Ewers is a sophisticated businessman with extensive national and international experience in litigation and various business contracts.

10. Ewers is one of a group of intermediaries who initially arranged a commission fee agreement for EPD Management Company LLC ("EPD") of $18,933,750.00 pursuant to the terms of a fee agreement dated November 9, 2000 in which the law firm of Buckley, Mathews, White & Howel LLP served as paymaster. Ewers was part of a chain of brokers who were not principals in the transaction.

11. EPD was organized on October 16, 1998 per the request of Buckley, Mathews, White & Howel LLP in order to accommodate Ewers to defraud the United States Bankruptcy Court in Texas and his creditors. Ewers filed five bankruptcy petitions 04/07/98 and 06/13/2000.

12. The commission fee agreement dated November 9, 2000 between EPD and Howard Eugene Liner ("Liner") was executed by Ewers as EPD's Manager.

13. On May 9, 2000, Liner entered into a profit sharing agreement with Hsin-Ming Chuo, a/k/a Alex Cho ("Cho"), whereby the two parties would equally share the profit from a future trading transaction.

14. On July 18, 2000, Liner and Cho entered into an agreement with Christopher Patrick Heron ("Heron") to place $220,000,000 USD in blocked funds into a high yield program with Heron that would generate a profit of $1,980,000,000.00 USD in a very short period of time. The initial $220,000,000 was to remain blocked and secured in a Taiwanese bank account. To date, Heron has not paid any of the profit from the trading transaction to anyone.

15. At the end of December 2001, four of Heron's creditors agreed to cooperate with one another in joint litigation against Heron in the United Kingdom (UK) as result of Ewers having disclosed "confidential" information to them about the whereabouts of some of Heron's funds.

16. The four creditors and the amounts owed to them by Heron were: Cho/Liner - $1,980,000,000, Ah Ping Ban ("Ban") - $500,000,000, Flamecrest Enterprises Limited Trust ("Flamecrest") - $100,000,000 and Balz Wolfensberger Discretionary Trust ("Wolfensberger") - $110,000,000.

17. Ewers stated that he had engaged the services of people working for various US government agencies who had located two of Heron's bank accounts totaling $1.6 Billion USD.

18. In December, 2001. Ewers stated that he had powers of attorney from Liner and Cho to represent their interests as Heron's creditors.

19. In December 2001, the four parties/creditors reached an agreement related to the litigation in the UK against Heron. This agreement between and among the four parties/creditors was memorialized in the Memorandum of Understanding ("MOU") dated December 24, 2001 where it was stipulated, among other things, as follows:

    A. "The settlement will be paid pari-passu per each party's claim."

    B. "Larry Ewers, from the Liner and Cho party, will disclose to Tony Feldman the amounts and banking information of funds belonging to Chris Heron which total more than $1.6 Billion USD."

20. On January 14, 2002, Pladott met Ewers for the first time. The meeting took place in London, UK. Ewers introduced Pladott to his two partners, Marchman and Sharman, who accompanied Ewers to all meetings related to this complaint

21. On January 15, 2002, the UK bankruptcy court held a hearing related to the following four statutory demands against Heron:

    A. Cho/Liner    $1,980,000,000

    B. Ban    $ 500,000,000

    C. Flamecrest    $ 100,000,000

    D. Wolfensberger    $ 110,000,000

22. On January 17, 2002, the four parties/creditors executed a settlement agreement with Heron. Ewers executed the Settlement Agreement ("SA") on behalf of Liner.

23. Ewers stated in the SA that he executed it on behalf of Liner under a power of attorney he had from Liner dated January 11, 2002. Ewers executed the SA in the presence of Charles Sharman, his partner and attorney at law, as his witness as well as

in the presence of his other partner, Marchman. This statement was fraudulent. Ewers did not have a power of attorney from Liner dated January 11, 2002

24. The SA consists of thirteen pages. Pages 10, 11, 12 and 13 comprise the consent order signed by Heron as the only remedy against him if he did not pay the settlement sum by the payment date. Because Heron did not pay the settlement sum, the consent orders were filed with the court and issued as court orders on February 4, 2002.

25. Paragraph 8.4, Force and Effect, of the SA states that "none of the parties to this agreement shall be entitled to assign this agreement or any of its rights and obligations under this agreement, except as may be otherwise approved in writing by the other parties to this agreement …".

26. Paragraph 8.7, Governing Law, of the SA states that "[t]his agreement shall be governed by the law of England and Wales in every particular including formation and interpretation and shall be deemed to have been within England and Wales and the parties agree to submit to the exclusive jurisdiction of the courts of England and Wales."

27. The SA provided that the "settlement sum" be shared among the four parties/creditors on a "pari-passu" basis.

28. Heron breached the SA on January 24, 2002. On March 4, 2002 an application for a bankruptcy order against Heron on behalf of the four parties/creditors was filed in the High Court of Justice in London. Heron was adjudged bankrupt on June 18, 2002.

29. Prior to the entry of the Heron bankruptcy order, Ewers stated that the people who were working on his behalf initiated actions which had frozen the $1.6

Billion USD in the two Heron bank accounts that they had located. He also stated that his people were able to seal the two cases in the "two jurisdictions" so that no one could gain access to them.

30. On June 21, 2001, Ewers faxed to Pladott an "exclusive power of attorney and mandate" executed by Liner on June 18, 2002 which was retroactive to January 11, 2002 ("Liner's POA").

31. Liner's POA was construed pursuant to the laws of the State of Texas. It appointed Larry Ewers to act on behalf of Liner only regarding the four following contracts and matters:

> A. "That certain Memorandum of Understanding dated July 18, 2000 by and between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner."
>
> B. "That certain agreement dated January 17, 2002 by and between Eugene Liner, Ah Ping Ban, Alexander Pladott, Anthony Stephen Feldman and Christopher Patrick Heron."
>
> C. "Cause No. 384-SD-2001; in the High Court of Justice in Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner."
>
> D. "Cause No. 1625 of 2002: in the High Court of Justice in Bankruptcy; RE: Christopher Patrick Heron."

All four above "contract and matters" are under the exclusive jurisdiction of the UK courts. Ewers has not taken legal action to domesticate any of the above in any US court. Therefore, there is a legal bar from using Liner's power of attorney outside of the UK

court jurisdiction where Ewers was authorized to act on behalf of Liner in a very limited scope.

32. Liner's POA states that "the sole and exclusive power of attorney for conducting any and all business transaction of every nature and kind relating to the contracts, litigation, claims and causes of action <u>asserted by me</u> against Christopher Patrick Heron before the court in the <u>above referenced matters</u>..." (emphasis added). The only litigation asserted by Liner is in the above referenced matters described in the above paragraph. No other action was asserted by Liner.

33. The acting solicitor in the UK for the four parties/creditors, Anthony Feldman ("Feldman") issued a document dated June 20, 2002 indicating the amount of the outstanding Heron debt, including interest, owed to each of the four parties/creditors. The four parties/creditors all agreed that the distribution of any funds eventually collected towards the Heron debt be distributed on a "pari-passu" basis:

| | | |
|---|---|---|
| A. | Cho/Liner | 71.49% |
| B. | Ban/Flamecrest & Wolfensberger | 28.51% |

34. On January 22, 2003, a deed was executed in London, UK between Malcolm Barry Harris ("Harris"), the UK Trustee of the Heron Estate, Larry Ewers, on behalf of creditor Liner, and Alexander Pladott, on behalf of creditors Ban, Flamecrest and Wolfensberger. This deed authorized, under certain terms and conditions, the securing of assets that may properly belong to the Heron Estate and are located outside of the UK.

35. On January 29, 2003, Ewers entered into an agreement with Pladott regarding Heron's assets located outside of the UK (pursuant to the January 22, 2003

agreement) providing that any recovered assets would be deposited into a <u>joint</u> bank account operated with signatures and instructions from both Ewers and Pladott.

36. On April 19, 2003, Pladott sent a Memorandum of Understanding to Ewers in order to memorialize the agreement and the relationship between the parties where it was stipulated, among other things, that any collection of any funds related to the January 17, 2002 SA would be for and on behalf of all four parties/creditors.

37. On May 5, 2003 Ewers and Pladott entered into an additional agreement regarding the recovery of Heron's assets. This agreement was prepared by Ewers and Sharman and described the status of the two Heron Bank accounts which Ewers' associates had located outside of the UK: "[M]onies recovered, which may belong to Mr. Heron, frozen in a bank account pending final determination by an order of a court of competent jurisdiction..." and further stipulated: "After all expenses have been deducted and made payable to the parties, the balance of monies shall then be paid in the following proportions: 71.49% to the Ewers Group and 28.51% to the Pladott Group per the agreement each group has in place between themselves."

38. On June 13, 2003, Ewers filed a lawsuit in the District Court of Harris County, Texas, Cause No. 2003-33307, with the intent and sole purpose of usurping Liner's rights to the $1,980,000,000 USD which Heron owes Liner.

39. On or about November 7, 2003, Ewers filed a Motion to Intervene in Civil Action No. 02-10532-RWZ in the Federal District Court in Boston, MA. Ewers committed fraud upon the court by claiming the following:

A. "Effective January 11, 2002, Ewers became and remains the sole and exclusive attorney in fact for Liner, with respect to, among other matters,

the Heron Settlement Agreement and all rights of Liner under that agreement." This is a false statement. Liner did not give Ewers any equity rights.

B. "Ewers seeks to satisfy his judgment against Heron." This is a false statement. Ewers has never had a judgment against Heron.

C. "Based on the application of Ewers as the Petitioning Creditor, Heron was placed in bankruptcy in the UK on June 18, 2002." This is a false statement. Ewers is not a creditor, petitioning or otherwise, in the Heron bankruptcy.

All of the above statements made by Ewers are misleading, materially false and were made to create the false perception that Ewers is one of Heron's creditors.

40. On or about January 7, 2004, Ewers filed Civil Action No 04-10024-RWZ, <u>Larry Ewers v. Christopher Patrick Heron, et al.</u>, in the Federal District Court in Boston, Massachusetts. In that proceeding, Ewers committed or attempted to commit a fraud upon the Court in order to quickly obtain a judgment against Heron in his own name.

41. In Paragraph 22 of his Complaint [#04-10024-RWZ] Ewers alleged that "pursuant to an exclusive power of attorney dated January 11, 2002, Ewers became and remains the sole and exclusive attorney in fact for Liner with respect, among other matters, to all rights of Liner under the Heron Settlement Agreement." This claim is materially false and misleading. There is no power of attorney from Liner to Ewers dated January 11, 2002, and Liner never gave Ewers any equity rights.

42. In the same case, Ewers served Heron with a copy of the complaint filed in C.A. No. 02-10532-RWZ and accordingly filed the proof of service. Ewers never served Heron with the complaint for C.A. No. 04-10024-RWZ which was the reason that Ewers obtained the default judgment against Heron.

43. In the same case, C.A. No. 04-10024-RWZ, in the motion Ewers filed on June 15, 2004 [Docket Entry #11], Ewers stated as follows:

   A. "Pursuant to an exclusive power of attorney dated January 11, 2002, Ewers became, and remains, the sole and exclusive attorney in fact for Liner with respect to, among other matters, all of Liner's rights under the agreement. A true copy of the power of attorney is attached as Exhibit B. The $1,980,000,000 Cho/Liner debt is payable to Ewers."

This statement was materially false and intentionally misleading. The attached Exhibit "B" is not a power of attorney dated January 11, 2002. No power of attorney from Liner to Ewers gave Ewers equity rights. Therefore, the $1,980,000,000 Cho/Liner debt is not payable to Ewers.

   B. "Heron's failure to pay the settlement sum by the payment date, without more, rendered the entire $1,980,000,000 due and payable to Ewers."

This statement is materially false and intentionally misleading. This is not the remedy in the SA and therefore nothing is due and payable to Ewers.

44. On July 19, 2004, Pladott sent a letter to the court [Docket Entry No. 17], followed by a Motion to Intervene, on or about August 4, 2003. Afterwards, Ewers' pleadings to the Court related to his right to the $1,980,000,000 began to change.

45. On August 25, 2004, Ewers filed a motion in Docket No. 04-10024 [Docket Entry #25], and introduced "The Compensation agreement dated May 3, 2002 as Exhibit 4 in which he claimed that Liner assigned him a fifty percent (50%) interest in Liner's bankruptcy claim against Heron. Again, Ewers intentionally mislead the court. The assignment was made to E.P.D. E.P.D. was not a viable company at the time, and EPD is not a party to Docket No. 04-10024.

46. Ewers also attached Exhibit 8 to his August 25, 2004 motion. Exhibit 8 was Case #2003-33307, <u>EPD Management Company LLC and Larry Ewers v. Howard Eugene Liner</u>, pending in the District Court of Harris County, Texas. Liner was served on September 20, 2004, one year <u>after</u> Ewers filed the case. The case was dismissed with prejudice on January 10, 2005. All of Ewers' claims were dismissed. Ewers' claim that he had an interest in the $1,980,000,000 is therefore false.

47. In Ewers' motion filed on October 28, 2004 in Docket No. 04-10024-RWZ [Docket Entry #33], Ewers argued "as the sole member of EPD, Ewers has a beneficial interest in the Compensation Agreement. Under governing Texas law, already cited to this court, to constitute an agency coupled with an interest, the agent must have a present, beneficial interest in the property on which the power is to operate... Tex. Jur. 3d Agency § 35."

48. Ewers further argued that "[t]he Compensation Agreement can only reasonably be construed to assign EPD an interest in all of the underlying causes of action Liner owned against Heron, and thus, to create a beneficial interest in Ewers, which in turn rendered the POA, as it expressly so states, a power of attorney coupled with an interest."

49. The records of the Texas Secretary of State show that Ewers is not, and has never been, the sole member of EPD. Therefore, Ewers does not have a beneficial interest in the compensation agreement and the Liner power of attorney could not have been coupled with an interest.

50. The alleged compensation agreement was between EPD and Liner, and Ewers was not a party to the agreement. Consequently, Ewers cannot assert any claims arising from the agreement. Ewers, neither as an individual nor as a stockholder, may personally own any assets of the corporation or beneficial interest in its causes of action.

51. In the motion that Ewers filed on October 28, 2004 in Docket No. 04-CV-10024-RWZ [Docket Entry #33, Exhibit 3], Ewers indicated that a new Article of Organization dated Sunday, October 18, 1998 and executed by Larry Ewers and his wife, Janice Ewers, made him the President of E.P.D. No such document was ever filed with the Texas Secretary of State. This exhibit was intentionally misleading and fraudulent. Ewers is not the President of E.P.D.

52. The transcript of the hearing on October 28, 2004 in Docket No. 04-10024-RWZ evidences that Ewers' attorney made to the following statements to Judge Zobel:

   A. "Ewers is not suing in any representative capacity." This is a false statement per Ewers' own complaint and motions already filed with the court.

   B. "Ewers has an assignment of fifty percent of the bankruptcy claim." This is a false statement. Ewers does not have an assignment from Liner according to his own pleading the court.

C. "Ewers has an interest apart from receiving compensation for collecting."

This is a false statement. Ewers does not have a financial interest.

53. All of the Defendants intentionally conspired to commit fraud upon the Federal Court in Boston by their conduct calculated to deceive the court by filing false statements, false affidavits and false documents in order for Ewers to obtain a judgment in his favor as a Heron "creditor" in the amount of $5.94 Billion US Dollars.

54. John Does 1-5 aided and abetted Ewers to locate Heron's two bank accounts. John Does 6-10 aided and abetted Ewers in perpetrating a fraud on the court.

### Ewers' Breaches of His Agreements with Pladott

55. Ewers breached the agreements he had with Pladott by filing the complaint against Heron in the Federal District Court in Boston, C.A. No. 04-10024-RWZ, with the active participation of the other co-defendants, by seeking a judgment in his own name only in order to collect the $1.6 Billion USD in Heron's two bank accounts which he had previously located in two jurisdictions outside the jurisdiction of this court.

56. The various agreements between Pladott and Ewers provided for the following:

A. The settlement amount would be paid on a pari-passu basis per each party's claim.

B. Ewers would disclose the amounts and banking information of the funds belonging to Heron which Ewers said totaled more than $1.6 Billion USD.

C. Ewers would arrange to open a joint bank account in a US bank which would be operated with joint signatures and instruction from both Ewers

and Pladott and in which all monies recovered from Heron would be deposited before distribution to the various creditors.

D. Any monies recovered from Heron's frozen bank accounts, pending final determination by an order of a court of competent jurisdiction, would be applied against the debts owed by Heron and would be dispersed in the following proportions: 71.49% to the Ewers Group and 28.51% to the Pladott Group per the agreements each group has in place among themselves.

57. Between January and April 2004, Ewers and Pladott negotiated the mitigation of the new situation created by Ewers having filed the complaint against Heron in Boston.

58. On Mach 10, 2004, Ewers met Pladott to address the new situation and proposed the following:

A. Ewers would forward Pladott a copy of the notarized power of attorney that Ewers gave his partner Marchman with Ewers' instructions related to the litigation in the two jurisdictions and the fund distribution per the agreements between Ewers and Pladott.

B. Ewers asked Pladott to prepare an agreement that would secure the distribution of Heron's funds in the two jurisdictions to Pladott's group of Heron's creditors as a result of the Ewers action in Boston.

59. At the end of April 2004, Pladott sent Ewers a draft of the proposed agreement. Ewers confirmed to Pladott that the agreement and Annex "A," were

acceptable to him and that he would sign the agreement and would also cause Annex A to be executed and delivered to Pladott.

60. On May 10, 2004 Pladott sent Ewers two original copies of the agreement Ewers had approved, notarized and executed by Pladott.

61. Ewers did not sign the agreement. He came up with a myriad of excuses, health problems and others, for delaying his execution of the agreement.

62. On July 15, 2004, Ewers informed Pladott by facsimile that he would like to retract the agreement Pladott sent him on May 10, 2004 and would not sign it.

## COUNT I
## (Fraud on the Court)

63. The Plaintiff hereby repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 62.

64. Ewers has committed a fraud on the court, which fraud was aided and abetted by the other Defendants.

65. The Plaintiff has or will incur damages as a result of this fraud on the court, including but not limited to the incurring of attorney's fees.

## COUNT II
## (Specific Performance)

66. The Plaintiff hereby repeats, re-alleges, and incorporates by reference the allegations set forth in paragraphs 1 through 65.

67. In March-April, 2004, Ewers and Pladott negotiated and entered into an agreement regarding the distribution of Heron's funds in the two jurisdictions to Pladott's group of Heron's creditors as a result of the Ewers action in Boston.

68.     All of the material terms of the agreement had been agreed upon and the execution of the written agreement which Pladott forwarded to Ewers on May 10, 2004 was a mere formality.

69.     Ewers reneged on the contract by refusing to execute it without a valid reason for doing so.

70.     Pladott is entitled to specific enforcement of the agreement, specifically its Annex A, as embodied in the written contract which Pladott forwarded to Ewers on May 10, 2004.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Alexander Pladott, hereby requests this Court to grant him the following relief:

1.     Enter a judgment, pursuant to Count I of this Complaint, rescinding any judgment issued to the Defendant, Larry Ewers, by this Court in Docket No. 04-10024.

2.     Enter a judgment, pursuant to Count I of this Complaint, against the Defendant, Larry Ewers, for monetary damages arising out the fraud on the court, plus interest and costs.

3.     Enter a judgment pursuant to Count I of this Complaint, restraining and enjoining the Defendant, Larry Ewers, from representing himself as a creditor of Christopher Patrick Heron, or from making any claims or representations that he has equity rights under the January 17, 2002 Settlement agreement with Christopher Patrick Heron.

4. Enter a judgment against the Defendant, Larry Ewers, pursuant to Count II of this Complaint, specifically enforcing the contract as embodied in the written agreement which the Plaintiff, Alexander Pladott, forwarded to Ewers on May 10, 2004.

5. Enter a judgment against the Defendant, Larry Ewers, pursuant to Count II of this Complaint, restraining and enjoining the Defendant, Larry Ewers, from taking any actions which are not in accordance with the May 10, 2004 agreement with Pladott.

6. Enter a judgment against the Defendant, Larry Ewers, pursuant to Count II of this Complaint, restraining and enjoining the Defendant, Larry Ewers, from taking any actions in the two jurisdictions, or any others, where Heron's bank accounts or funds are located.

7. Enter a judgment against the Defendant, Larry Ewers, ordering him to submit any restraining order entered against him in this case to all courts and third parties to which Ewers has presented himself as a creditor of Heron, or as having equity rights under the settlement agreement with Heron.

8. Enter a judgment granting the Plaintiff, Alexander Pladott, such other and further relief as this Court deems just and reasonable.

ALEXANDER PLADOTT

By his Attorney,

_____
Isaac H. Peres, BBO #545149
50 Congress Street
Boston, MA 02109
(617) 722-0094

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Alexander Pladott v. Larry Ewers__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    for patent, trademark or copyright cases
   - [X] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.
   - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   Larry Ewers v. Christopher Patrick Heron, et al., Docket No. 04-10024-RWZ

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]   NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]   NO [X]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]   NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [ ]   NO [X]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]   Central Division [ ]   Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]   NO [X]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Isaac H. Peres__
ADDRESS __50 Congress Street, Boston, MA 02109__
TELEPHONE NO. __(617) 722-0094__

(Coversheetlocal.wpd - 10/17/02)

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Alexander Pladott

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Isaac H. Peres, 50 Congress Street
Boston, MA 02109   (617) 722-0094

## DEFENDANTS
Larry Ewers

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

FILED
2005 FEB 23 P 2:41
U.S. DISTRICT COURT
DISTRICT OF MASS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Specific Enforcement of Contract and Fraud

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE Zobel
DOCKET NUMBER 04-10024-RWZ

DATE 2-23-05
SIGNATURE OF ATTORNEY OF RECORD
/s/ Isaac Peres

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____