UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALEXANDER PLADOTT,<br>Plaintiff,<br><br>v.<br><br>LARRY EWERS, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-10356-RWZ |

## ANSWER OF DEFENDANT LARRY EWERS

Defendant Larry Ewers ("Ewers") answers the numbered allegations of the Complaint as follows:

1. Denied.

2. On information and belief, admitted.

3. Admitted.

4. Ewers is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore denies them.

5. Ewers is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph, and therefore denies them.

6. This paragraph states a conclusion of law to which no response is required; to the extent a response may be required, the allegation is admitted.

7. This paragraph states a conclusion of law to which no response is required; to the extent a response may be required, the allegation is admitted.

8. This paragraph states a conclusion of law to which no response is required; to the extent a response may be required, the allegation is admitted.

9. Ewers admits that he has been a businessman. Ewers denies the remaining allegations.

10. Except for the referenced November 9, 2000 agreement, which document, in its entirety, speaks for itself, Ewers denies the remaining allegations.

11. Denied.

12. The referenced November 9, 2000 agreement, in its entirety, speaks for itself.

13. The referenced May 9, 2000 agreement, in its entirety, speaks for itself.

14. With respect to the first sentence, the referenced July 18, 2000 agreement, in its entirety, speaks for itself. Ewers admits the second sentence. With respect to the third sentence, Ewers states that he has not received payment of any of the profit from Heron, but Ewers is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations with respect to payments "to anyone."

15. Denied.

16. The Settlement Agreement dated January 17, 2002 (the "Settlement Agreement"), in its entirety, speaks for itself as to the respective creditors.

17. Denied.

18. Denied.

19. Ewers admits the first sentence. Ewers denies that the MOU memorialized that agreement and denies that he ever executed the MOU or that it constitutes any form of agreement between the parties.

20. With respect to the first sentence, Ewers admits that he met Pladott in person for the first time on January 14, 2002, but states that the allegations are misleading because Ewers and

_486976_3/

Pladott had spoken many times by telephone between July 2001 and January 2002. Ewers denies the remaining allegations.

21. Admitted, but as of January 14, 2002 Ewers had powers of attorney from Liner pursuant to multiple Powers of Attorney executed by Liner and dated January 10, 2002 (*see* Exhibit A), January 11, 2002 (*see* Exhibit B), May 21, 2002 (effective January 11, 2002) (*see* Exhibit C) and June 18, 2002 (effective January 11, 2002) (*see* Exhibit D); and Ewers was, furthermore, the beneficiary, through his LLC, E.P.D. Management Company, LLC, of the Fee Agreement dated November 9, 2000, as well as of the Compensation Agreement effective July 1, 2001, in which Liner agreed that "Mr. Larry Ewers has provided to Liner personal services and financial support in the investigation and prosecution of the Bankruptcy Claim."

22. The Settlement Agreement, in its entirety, speaks for itself; it recites that Ewers signed "in exercise of a Power of Attorney under the hand of the said Howard Eugene Liner dated the 11th day of January 2002."

23. Ewers admits the first sentence. With respect to the second sentence, Ewers admits he executed the Settlement Agreement in the presence of Charles Sharman and Larry Marchman, but denies that Sharman was his "partner" or that Marchman was his "other partner." Ewers denies the third and fourth sentences, as Ewers did indeed have, and still has in his possession: (a) a Power of Attorney executed by Liner, dated and notarized on January 10, 2002, and faxed from "H.E. Liner" on January 11, 2002 at 11:23 a.m. (*see* Exhibit A), and (b) a Power of Attorney executed by Liner, dated and notarized on January 11, 2002 (*see* Exhibit B).

24. With respect to the first sentence, the Settlement Agreement, in its entirety, speaks for itself. Ewers denies the balance of the allegations.

25. The Settlement Agreement, in its entirety, speaks for itself.

_486976 3/

26. The Settlement Agreement, in its entirety, speaks for itself; moreover, the Settlement Agreement is not the only relevant agreement and other agreements specify different laws and jurisdictions.

27. The Settlement Agreement, in its entirety, speaks for itself.

28. Admitted, on information and belief.

29. Denied.

30. Denied.

31. The June 18, 2002 Power of Attorney, in its entirety, speaks for itself. (*See* Exhibit D). The remaining allegations are denied, in that although the Power of Attorney does enumerate the stated contracts and matters, the Power of Attorney also grants Ewers the power "of doing any and every act, and exercise any and every power, that I [Liner] might or could do, and that may be reasonably necessary," and collection of the debts owed by Heron is in no way limited to the United Kingdom.  Indeed, the Plaintiff himself executed agreements with Ewers which expressly contemplated "recovery of assets of Mr. Heron located outside the United Kingdom," so Pladott has never believed that actions against Heron were limited to the United Kingdom and the scope of Ewers' Power of Attorney is not so limited.

32. The Power of Attorney, in its entirety, speaks for itself.  The remaining allegations are denied and are absurd.

33. On information and belief, admitted.

34. The Deed dated January 22, 2003, in its entirety, speaks for itself.  Among other things, it is flatly inconsistent with the immediately preceding allegations of Plaintiff's Complaint, in that it explicitly contemplates "securing assets located outside the United Kingdom."

_486976_3/

35. The Agreement dated January 29, 2003, in its entirety, speaks for itself.

36. The Agreement dated April 24, 2003, in its entirety, speaks for itself.

37. The Agreement dated May 5, 2003, in its entirety, speaks for itself. It does not refer to "two Heron Bank accounts which Ewers' associates had located outside of the UK."

38. Denied; the allegations and claims in the June 13, 2003 lawsuit speak for themselves.

39. Ewers admits the first sentence. Ewers denies the remaining allegations of paragraph 39, and specifically denies the absurd allegations of any "fraud upon the court." For example, the allegation quoted in sub-paragraph A from Ewers' Motion to Intervene, far from being "a false statement," is absolutely true and correct. It is Plaintiff's allegation, "Liner did not give Ewers any equity rights," which is absurd, since (i) the quoted allegation from Ewers' Motion does not mention the word "equity" or the phrase "equity rights"; and (ii) the Power of Attorney grants Ewers "any and every power" of Liner's under various contracts and with respect to various matters, and grants Ewers the power to do "all acts necessary in the prosecution of the claims asserted in the referenced matter *and* the rights granted under said contracts," such that Ewers was not limited to any particular forum but could pursue rights of recovery under the contracts with Heron anywhere; and (iii) the powers granted to Ewers were explicitly "sole and exclusive," "to the exclusion of all other persons or entities, including myself [Liner]." Even more basically, the subject Motion to Intervene openly described Ewers' status and clearly stated that Ewers was suing under the Power of Attorney for Liner: "Effective January 11, 2002, Larry Ewers ('Ewers') became and remains *the sole and exclusive attorney-in-fact for Liner*, with respect to, among other matters, the Heron Settlement Agreement and *all rights of Liner under that Agreement*"; "*Ewers claims a right to specific property*, namely Heron's Syndicate 150 assets, *to satisfy a settlement agreement between Heron and Liner*." The suggestion that

- 5 -

Ewers' statements "were made to create the false perception that Ewers is one of Heron's creditors" is absurd, because Ewers explicitly identified his status as acting under a Power of Attorney for Liner.

40. Ewers admits the first sentence and denies the second sentence.

41. Denied. Pladott's allegations are themselves false and sanctionable. Attached as Exhibit B is a copy of the January 11, 2002 Power of Attorney, executed by Liner, the existence of which Pladott denies, and attached as Exhibit A is a copy of a Power of Attorney dated January 10, 2002 and even containing the facsimile transmission information lines, showing that it was faxed from the law firm to Liner on January 10 and from Liner to Ewers on January 11, 2002. The Settlement Agreement specifically refers to the "Power of Attorney under the hand of the said Howard Eugene Liner dated the 11th day of January 2002" and is signed by Pladott.

42. Denied. Ewers served Heron with the Complaint in Civil Action No. 04-10024-RWZ. The error in the proof of service was based simply on a secretarial error in carrying over the earlier civil action number in a cover letter to the agent – not on the Summons or on the Complaint itself.

43. Ewers admits that the subject allegation did appear in the Complaint, but denies that it was either "materially false" or "intentionally misleading." Ewers admits that, apparently, the final version of the Power of Attorney may have been attached to the Complaint – the version that was dated June 18, 2002 and effective as of January 11, 2002, rather than the version that was both dated and effective January 11, 2002. However, there was a January 11, 2002 Power of Attorney (see Exhibit A); there was also a Power of Attorney dated June 18, 2002 and effective as of January 11, 2002 (see Exhibit C); Ewers never made any allegation concerning any so-called "equity rights," whatever Pladott means by that; and, as demonstrated above, Ewers had

486976_3/

the sole and exclusive power – exclusive even as against Liner himself – to do exactly what he did. Moreover, Pladott was *aware* that the Complaint was going to be filed; received *a copy* of the Complaint as filed; and, long after it was filed, supported its contents! Indeed, Pladott himself explicitly agreed that the Power of Attorney is <u>irrevocable</u>. In an e-mail dated June 22, 2004, more than six months after the Complaint was filed, Pladott stated to Ewers:

> "I propose you file an ex-parte motion with the court for a temporary injunction against Liner with a simple limited scope: that *Liner cannot directly or indirectly alter, modify or revoke your Power-of-Attorney* prior to the final ruling in the case before the court."

Pladott's present Complaint is wrong on the facts and profoundly hypocritical.

44. Ewers admits the first sentence but denies the second sentence.

45. Ewers admits the first sentence but denies the second sentence. Ewers has a beneficial interest in the Compensation Agreement by virtue of his being the owner of E.P.D. and, since Ewers' Power of Attorney is both irrevocable by its terms and coupled with an interest, it is, under applicable Texas law, irrevocable. The Power of Attorney itself recognizes that it is irrevocable and coupled with an interest:

> "HOWARD EUGENE LINER … does make, constitute, mandate and appoint LARRY EWERS … as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate … to act in [Liner's] place, and stead *for the purpose of doing any and every act, and exercise any and every power, that [Liner] could do, and that may be reasonably necessary regarding the following contracts and matters*: That certain Memorandum of Understanding, dated July 18, 2000 …; That certain Agreement dated January 17, 2002…; Cause No.384-SD-2001: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and Cause No. 1625 of 2002: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron."

> "This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, *is irrevocable*, and *coupled with an interest*, and *shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts*. I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement(s) of such Attorney-

In-Fact and Mandate, that *this Exclusive Power of Attorney and Mandate has not been revoked* or modified in any manner...."

"I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power of Attorney and Mandate along with the rights and powers granted herein, *all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts.* Said Attorney-In-Fact and Mandate shall have the powers set forth herein *to the exclusion of all other persons or entities, including myself, my heirs and assigns.*" (Emphases added.)

With respect to the fourth sentence, Ewers denies that E.P.D. was not a "viable" company at the time and admits E.P.D. was not a party to Docket No. 04-10024.

46. Ewers admits that he attached Exhibit 8 to his August 25, 2004 Opposition to Motion to Intervene and that that case was dismissed. Ewers otherwise denies the allegations, and states that the order dismissing the Texas case (to which Pladott was not a party) was subsequently vacated. Ewers retains an irrevocable interest in, and an irrevocable, exclusive power of attorney with respect to, the subject Heron debt.

47. Denied. Pladott refers to Ewers' Supplemental Brief in Opposition to Plaintiff-Intervenors' Motion to Intervene" as a "motion." The Supplemental Brief speaks for itself.

48. The Supplemental Brief speaks for itself.

49. Denied.

50. Denied.

51. Denied; the referenced exhibit is not a "new Article of Organization." It is a copy of the Minutes of the Organizational Meeting of E.P.D. Ewers admits this document was not filed with the Texas Secretary of State; it is not required to be filed and is customarily not filed with the Texas Secretary of State. Ewers denies the last two sentences of this paragraph.

52. Denied. The transcript of the hearing on October 28, 2004, in its entirety, together with Ewers' extensive Brief, Supplemental Brief, Exhibits, and Appendix of Texas Authority, as

- 8 -

well as the Affidavit of Liner's own former attorney with respect to the Power of Attorney and other materials submitted to the Court speak for themselves. Pladott plucks statements out of context and fails to accurately reflect the complexity of, and exhaustive support for, the arguments.

53. Denied.

54. Denied.

55. Denied. Answering further, Ewers states that Pladott knew about the Complaint in advance, actively supported its filing, actively monitored the progress of the case, actively solicited the cooperation of the Trustee in Bankruptcy, and demurred only in making any financial contribution.

56. The referenced agreements, in their entireties, speak for themselves.

57. Denied.

58. Denied.

59. Denied.

60. Ewers admits receiving copies of a draft agreement notarized and executed by Pladott in May 2004, but denies that he ever approved it.

61. Ewers admits the first sentence but denies the second sentence.

62. The facsimile transmission, in its entirety, speaks for itself.

### COUNT I
(Fraud on the Court)

63. Ewers hereby repeats and incorporates herein by reference his responses to the allegations set forth in paragraphs 1 through 62.

64. Denied.

65. Denied.

- 9 -

<u>COUNT II</u>
(Specific Performance)

66. Ewers hereby repeats and incorporates herein by reference his responses to the allegations set forth in paragraphs 1 through 65.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

<u>FIRST AFFIRMATIVE DEFENSE</u>

Pladott is not the real party in interest as to the greatest number of his allegations and claims and lacks any standing to pursue them. Pladott is in large part asserting matters which could rightfully be asserted, if by anyone at all, by Liner, and although Pladott claims that Liner is a necessary party to Ewers' action, Pladott has failed to join Liner in his own action but purports to make arguments on Liner's behalf. To the extent that Pladott has any interest whatsoever in this case, it is only by virtue of his representative capacity as Trustee of various Trusts, the beneficiaries of which and details of which he has failed and refused to disclose, and Pladott has not brought this suit in his capacity as Trustee of Flamecrest Enterprises Limited Trust or Balz Rudolph Wolfensberger Discretionary Trust, the entities which have an interest in the pertinent agreements. As an individual, Pladott has no standing whatsoever in the subject matter of the Boston litigation or this present suit.

<u>SECOND AFFIRMATIVE DEFENSE</u>

Pladott's claims are barred by his own knowledge of, participation in and approval of the Boston litigation, and Pladott is estopped by his own participation in, acquiescence in, approval

- 10 -

of and efforts to join in the Boston litigation, to protest said litigation.  In particular, but without limitation:

- Pladott e-mailed Ewers on October 14, 2003:  "Concerning Boston, while we were there I explained the reasons why I cannot participate in your financial effort in there. Please be assured that I, like you, look forward to winning the war."

- By letter dated October 27, 2003, *cc* to Ewers, Pladott himself informed Harris of the possibility contemplated by all parties that Ewers would institute litigation in Boston against Heron.  Pladott sought the Trustee's "cooperation" *vis a vis* such litigation.

- By e-mail dated December 11, 2003, nearly a month in advance of the filing of this litigation, *cc* to Pladott, Ewers wrote to the Trustee in Bankruptcy, explicitly seeking his advice on nine specific questions, including: (1) Ewers' ability to "file as a creditor against Heron in a civil (U.S. Federal Court) proceeding in the U.S."; (2) Ewers' ability to "file a contract action (i.e., a lawsuit on the Settlement Agreement) against Heron in a proceeding in the U.S."; (3) – (5) whether there existed any "automatic stay" which might bar the Boston Litigation; (6) whether Ewers could "proceed on your [the Trustee's] behalf ... in order to marshal or collect against assets of Heron's in the U.S."; (7) – (8) what authorization would be required to proceed.  Ewers *cc'd* Pladott on this e-mail.

- By letter dated December 15, 2003, Ewers reiterated all nine questions to the Trustee's Counsel, Pike.  Ewers *cc'd* Pladott.

- On December 22, 2003, the undersigned counsel to Ewers had a detailed discussion of the issues with the Trustee's counsel, Mr. Pike, as a result of which Ewers was authorized to proceed with the Boston Litigation.

- On December 23, 2003, Ewers sent the Trustee a letter containing "a full report of all activities ongoing in US Federal Court (Boston, Mass. USA) related to Christopher Patrick Heron....  This was done in my name only, with no liability to yourself...."  Again, Ewers *cc'd* Pladott.  Ewers informed the Trustee of the upshot of Pike's legal advice, and reported that "it was decided to file a claim of action against Heron in the USA in my name only."  Ewers duly reported that he had "discussed this with Pladott who concurred in its totality."  In closing, Ewers stated:

    "At no time have we, or will we do anything that is not in the best interest of you as Trustee in Heron's Bankruptcy, petitioning creditors, and supporting creditors.  At each step we have sought advice from you as Trustee [and] Pladott, representing the supporting creditors, before any claim of action was taken....  this is not a claim of action for the benefit of one party over the others, but a claim of action for the benefit of each of the creditors as Trustee you represent....  I will ... provide updates and ... keep the parties fully informed.  Pladott and I are in daily communication and each step he is fully informed prior to any

_486976_3/

actions being taken. I will keep you informed as you deem necessary in conducting your duties as Trustee. I trust you will agree with the legal opinions given, and will assist us fully in our pursuit to recover assets belonging to Heron. It is most important to have your full support and cooperation. Our goal from day one has been to recover funds owed by Heron to the creditors."

- By e-mail to both Ewers and Pladott on January 6, 2004, the Trustee, Harris, confirmed his earlier statements of support: "you may rest assured of my continuing wish to assist you [both] in your endeavours ... since clearly the position truly is that you are assisting me as trustee."

- Ewers routinely updated Pladott on events in the Boston litigation, informing him of its filing, of service of process on the defendants, and on events such as "We are filing for a default and a motion for a real estate attachment in Pomeroy's home county." Pladott routinely monitored the case online.

- Pladott wrote the Trustee and his counsel, on March 23, 2004, months after the filing of the Boston case: "Are you suggesting that since nothing is going to happen with our case in the UK, *we should devote our time and money to the US litigation?*"

At no time did Pladott express any retraction of his consent to the prosecution of the case, prior to Pladott's attempt to <u>intervene</u> in it and obtain the <u>benefits</u> of it while having shouldered none of the burdens. In reliance upon their express approval and knowing acquiescence, Ewers pursued the Boston litigation vigorously, and bore 100% of the burdens and costs. Pladott is barred from and estopped to contest the Boston litigation.

## THIRD AFFIRMATIVE DEFENSE

Pladott is estopped by his own agreement with and adoption of many of the positions he now purports to repudiate, such as his belief in the irrevocable nature of Liner's Power of Attorney and his urging of Ewers to assert that irrevocability in a forceful manner in the very litigation of which Pladott now complains. In an e-mail dated June 22, 2004, more than six months after the Complaint was filed, Pladott stated to Ewers:

"I propose you file an ex-parte motion with the court for a temporary injunction against Liner with a simple limited scope: that ***Liner cannot directly or indirectly alter, modify or revoke your Power-of-Attorney*** prior to the final ruling in the case before the court."

- 12 -

## FOURTH AFFIRMATIVE DEFENSE

Pladott's action is barred by laches and delay.

## FIFTH AFFIRMATIVE DEFENSE

Pladott's claim for specific performance of an alleged contract fails, and is subject to

Rule 12(b)(6) dismissal, because Pladott fails to allege any consideration given for the alleged

agreement, which, as Pladott alleges, was never signed.

## SIXTH AFFIRMATIVE DEFENSE

Pladott's claim with respect to an alleged "fraud on the Court" are barred by his own

unclean hands, including but not limited to Pladott's own many false statements to the Court in

the course of Pladott's attempts to intervene in and obtain the benefit of the very litigation he

now purports to protest. Among the numerous false allegations in Pladott's proposed Complaint

of Intervenors are the following, which list is not exhaustive:

¶ 31:   "In paragraph 2 of the Complaint, Ewers alleged that he was the sole plaintiff and
party in interest with respect to the causes of action alleged in the Complaint."

FALSE. Paragraph 2 merely recited that Ewers "is a U.S. citizen residing in
Corpus Christi, Texas." Ewers' Complaint repeatedly alleges the existence of the
other creditors. *See, e.g.,* ¶ 10 ("Heron entered into a Settlement with four such
defrauded creditors, including ... Liner"); ¶ 12 ("Heron agreed ... to pay the
creditors..."); ¶ 20 (Heron failed to pay "his creditors"); ¶ 22 ("Pursuant to an
Exclusive Power of Attorney ... Ewers became and remains the sole and exclusive
attorney-in-fact for Liner..."); ¶ 24 (On his List of Creditors ... Heron listed the
Liner debt, for which Ewers is attorney-in-fact..."); ¶ 39 ("Pomeroy and Heron
entered into a conspiracy to fraudulently conceal ... assets ... from Heron's
creditors, including Ewers"); ¶ 51 ("Heron transferred assets ... with the intent to
hinder, delay and defraud creditors, including Ewers"). Ewers has even filed the
Settlement Agreement among all of the parties in this Court.

¶ 33:   "Ewers has no interest in the causes of action set forth in the complaint except as
Liner's attorney in fact."

FALSE. The Compensation Agreement dated May 3, 2002 states: "Liner does
hereby assign, transfer, and convey to EPD [an LLC owned and controlled by

_486976_3/

Ewers], fifty percent (50%) *interest in and to the Bankruptcy Claim*, including, without limitation, fifty percent (50%) of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the Bankruptcy Claim." In the Compensation Agreement, Liner agreed that "EPD by and through its managing manager, Mr. Larry Ewers has provided to Liner personal services and financial support in the investigation and prosecution of the Bankruptcy Claim." The attorney who represented Liner with respect to the preparation of both the Compensation Agreement and the Power of Attorney, R. Bruce Buckley, executed an Affidavit, filed in this Court as Exhibit 1 to Plaintiff's Supplemental Brief in Opposition to Plaintiff-Intervenors' Motion to Intervene, stating: "To the best of my knowledge and belief, everyone involved in this transaction, including Mr. Liner, was very aware that E.P.D. Management Company, L.L.C. was owned by Mr. Ewers." Pladott also denied, and continues to deny, the existence of the Powers of Attorney which demonstrably do exist, and are attached hereto. The Power of Attorney dated June 18, 2002 specifically states that "This Exclusive Power Of Attorney ... *is irrevocable*, and *coupled with an interest*." Pladott is thus denying an interest which Liner himself specifically acknowledged. Pladott failed to bring the Compensation Agreement to the attention of the Court and simply denied without more that, despite Ewers many Powers of Attorney and the Compensation Agreement to the contrary, Ewers had any interest (beneficial or otherwise) in the claims against Heron.

¶ 34:   "There has never been a legally binding assignment of any interest owned by Liner in any assets, causes of action, or claims to Ewers."

FALSE. *See* discussion immediately preceding with respect to ¶ 33. *See also* the language of the Power of Attorney itself, which recites: "This Exclusive Power Of Attorney And Mandate ... *is irrevocable*, and *coupled with an interest*."

¶ 36:   "The Power of Attorney was terminated effective July 16, 2004."

FALSE. The Power of Attorney is irrevocable as a matter of law. Pladott knew that this allegation was false; indeed, he had asserted the contrary, in writing. In an e-mail dated June 22, 2004, more than six months after the Complaint was filed, Pladott stated to Ewers:

> "I propose you file an ex-parte motion with the court for a temporary injunction against Liner with a simple limited scope: that *Liner cannot directly or indirectly alter, modify or revoke your Power-of-Attorney* prior to the final ruling in the case before the court."

¶ 37(t):   "Ewers misrepresented ... that he had received an assignment of causes of action and claims rightfully belonging to Liner."

- 14 -

FALSE. *See* discussion immediately preceding with respect to ¶ 33. *See also* the language of the Power of Attorney itself, which recites: "This Exclusive Power Of Attorney And Mandate ... *is irrevocable*, and *coupled with an interest*."

¶ 37(d):   "Ewers has used the Power of Attorney in an attempt to secret assets of Heron from the Bankruptcy Court in the United Kingdom and the Trustee in Bankruptcy appointed thereby."

FALSE. The Trustee was from the inception of the Boston litigation fully informed concerning the institution and prosecution of this case. If this case were "an attempt to secret assets ... from the Trustee," it is baffling why the Trustee's advance approval was sought, and why the Trustee was provided with a copy of the Complaint as well as frequent updates.

¶ 54:   "Upon information and belief, Ewers transferred assets to his own account or for his benefit which rightly belong to Plaintiff-Intervenors ... with the intent to hinder, delay and defraud Plaintiff-Intervenors."

FALSE. This outrageous allegation has no basis in fact and Pladott has stated so in writing to the Trustee in Heron's bankruptcy. For example, *see* Pladott's letter to the Trustee dated March 15, 2004 ("Mr. Feldman himself is the source of the unfounded allegations regarding the legal proceedings in the US and Canada"), and Pladott's letter dated March 16, 2004 ("You indicate there are many references to proceedings in the US and Canada. ... I hope that you are not referring to rumors started from Mr. Feldman.")

## SEVENTH AFFIRMATIVE DEFENSE

Pladott has failed to name parties who are, according to his own allegations, necessary and indispensable parties.

## EIGHTH AFFIRMATIVE DEFENSE

Pladott fails to state a claim upon which relief can be granted.

## NINTH AFFIRMATIVE DEFENSE

Pladott's claims are barred by the doctrine of waiver, in that by having advance notice of the Boston litigation (as well as the previous attempt to intervene), by approving the litigation, by monitoring it, by being kept informed, by making suggestions as to its prosecution, and by seeking the benefits of it (but declining to assume any of the financial responsibility for it) (*see*

_486976_3/

Pladott's e-mail of October 14, 2003: "Concerning Boston, while we were there I explained the reasons why I cannot participate in your financial effort in there. Please be assured that I, like you, look forward to winning the war"), Pladott waived any objection to the litigation.

TENTH AFFIRMATIVE DEFENSE

Pladott's request for equitable relief in the form of specific performance is barred by the inequity of his seeking the benefits of the Boston litigation while having refused to contribute to its financial burden, and by his unclean hands, waiver and estoppel as set forth above.

LARRY EWERS

By his attorney,

Alan M. Spiro (BBO No. 475650)
Kenneth V. Nourse (BBO No. 655781)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
617.439.4444

Dated:  April 29, 2005

**CERTIFICATE OF SERVICE**

I, Alan M. Spiro, hereby certify that on April 29, 2005, I served a true copy of the above document by facsimile transmission and by first class mail, postage pre-paid, upon:

Isaac H. Peres
50 Congress Street
Boston, Massachusetts 02109
Fax:  617.367.8840

Alan M. Spiro (BBO No. 475650)

_486976_3/

# EXHIBIT A

## POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, a resident of Katy, Fort Bend County, Texas,

United States of America, has made, constituted, and appointed, and by these presents does

make constitute, mandate, and appoint LARRY EWERS as his true and lawful Attorney-In-

Fact and Mandate for me and to act in my place, and stead for the sole and limited purpose

of doing any and every act, and exercise any and every power, that I might or could do, and

that may be reasonably necessary regarding the following matter:

No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE:
Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene

To do any and every act, and exercise any and every power, that I may have
that the Attorney-In-Fact and Mandate shall deem proper or advisable,
intending hereby to vest in the Attorney-In-Fact and Mandate the power of
attorney for conducting any and all business relating to the claims and causes
of action asserted by me against Christopher Patrick Heron before the Court
in the above referenced matter.

This Power Of Attorney And Mandate shall automatically terminate upon the full and

final adjudication and disposal of the referenced matter, or upon receipt by Mr. Larry Ewers

of a written notice of termination. I agree that anyone dealing with said Attorney-In-Fact and

Mandate  may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that this

Power Of Attorney and Mandate has not been revoked or modified in any manner.

POWER OF ATTORNEY AND MANDATE
Page 1

(Initial)

Ħel

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Power Of Attorney and Mandate along with the rights and powers granted herein, all acts necessary to in the prosecution of the claims asserted in the referenced matter. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may

POWER OF ATTORNEY AND MANDATE
Page 2

(Initial)

FROM : H E Liner                    PHONE NO. : 1 713 5787267              Jan. 11 2002 11:24AM P5
       01/10/02  THU 17:15 FAX 713 799 7703    B M W & H.L.L.P.                        @005

sustain or incur directly with carrying out the authority granted to him in this Power Of

Attorney and Mandate.

   This Power Of Attorney and Mandate shall be construed pursuant to the laws of the

State of Texas.

   IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney

and Mandate which shall become effective this 10th day of January, 2002.


H. E. Liner
Howard Eugene Liner

THE STATE OF TEXAS §
                    §
COUNTY OF HARRIS    §


   This instrument was acknowledged before me on the 10th day of January, 2002, by
Howard Eugene Liner.

                                    Chris Tillerson
                                    Notary Public In And For
                                    The State Of Texas

         CHRIS TILLERSON
         MY COMMISSION EXPIRES
            February 9, 2003



POWER OF ATTORNEY AND MANDATE                                    (Initial)
Page 3

# EXHIBIT B

# POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, a resident of Katy, Fort Bend County, Texas,

United States of America, has made, constituted, and appointed, and by these presents does

make constitute, mandate, and appoint **LARRY EWERS** as his true and lawful Attorney-In-

Fact and Mandate for me and to act in my place, and stead for the sole and limited purpose

of doing any and every act, and exercise any and every power, that I might or could do, and

that may be reasonably necessary regarding the following matter:

> No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE:
> Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene
>
> To do any and every act, and exercise any and every power, that I may have
> that the Attorney-In-Fact and Mandate shall deem proper or advisable,
> intending hereby to vest in the Attorney-In-Fact and Mandate the power of
> attorney for conducting any and all business relating to the claims and causes
> of action asserted by me against Christopher Patrick Heron before the Court
> in the above referenced matter.

This Power Of Attorney And Mandate shall automatically terminate upon the full and

final adjudication and disposal of the referenced matter, or upon receipt by Mr. Larry Ewers

of a written notice of termination. I agree that anyone dealing with said Attorney-In-Fact and

Mandate may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that this

Power Of Attorney and Mandate has not been revoked or modified in any manner.

POWER OF ATTORNEY AND MANDATE
Page 1


(Initial)

Mandate against any and all claims, demands, losses, damages, actions and causes of action,

including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may

POWER OF ATTORNEY AND MANDATE
Page 2


(Initial)

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Power Of Attorney and Mandate along with the rights and powers granted herein, all acts necessary to in the prosecution of the claims asserted in the referenced matter. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may

**POWER OF ATTORNEY AND MANDATE**
Page 2

(Initial)

sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate.

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

**IN WITNESS WHEREOF,** Howard Eugene Liner executes this Power Of Attorney and Mandate which shall become effective this 11th day of January, 2002.



**Howard Eugene Liner**

**THE STATE OF TEXAS §**
**                        §**
**COUNTY OF HARRIS   §**

This instrument was acknowledged before me on the 11th day of January, 2002, by Howard Eugene Liner.

CHRIS TILLERSON
MY COMMISSION EXPIRES
February 9, 2008

Notary Public In And For
The State Of Texas

**POWER OF ATTORNEY AND MANDATE**
Page 3

(Initial)

# EXHIBIT C

# POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, being one and the same person as H.E. Liner and Howard B. Liner, a resident of Rosenberg, Fort Bend County, Texas, United States of America, has made, constituted, and appointed, and by these presents does make constitute, mandate, and appoint LARRY EWERS as his true and lawful Attorney-In-Fact and Mandate for me and to act in my place, and stead for the sole and limited purpose of doing any and every act, and exercise any and every power, that I might or could do, and that may be reasonably necessary regarding the following matters:

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron

To do any and every act, and exercise any and every power, that I may have that the Attorney-In-Fact and Mandate shall deem proper or advisable, intending hereby to vest in the Attorney-In-Fact and Mandate the power of attorney for conducting any and all business relating to the claims and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters, including without limiting the generality of the foregoing, the full right and authority to compromise and settle said matters.

This Power Of Attorney And Mandate shall not terminate on my disability, is irrevocable, and coupled with an interest and shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters.

POWER OF ATTORNEY AND MANDATE
Page 1

(Initial)

I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that this Power Of Attorney and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Power Of Attorney and Mandate along with the rights and powers granted herein, all acts necessary to in the prosecution of the claims asserted in the referenced matter. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Power Of Attorney and Mandate.

**POWER OF ATTORNEY AND MANDATE**
Page 2

*(Initial)*

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate.

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 21ˢᵗ of May, 2002, which shall become effective as of the 11ᵗʰ day of January, 2002 for all purposes.

_____
Howard Eugene Liner

THE STATE OF TEXAS §
                   §
COUNTY OF HARRIS   §

This instrument was acknowledged before me on the 21ˢᵗ day of May, 2002, by Howard Eugene Liner.



_____
Notary Public In And For
The State Of Texas

POWER OF ATTORNEY AND MANDATE
Page 3

_____
(Initial)

# EXHIBIT D

*Exhibit*

## EXCLUSIVE POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, being one and the same person as H.E. Liner, Howard E. Liner, and Gene Liner, a resident of Rosenberg, Fort Bend County, Texas, United States of America, has made, constituted, and appointed, and by these presents does make constitute, mandate, and appoint **LARRY EWERS** a resident of Corpus Christi, Nueces County, Texas, United States of America as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate for me and to act in my place, and stead for the purpose of doing any and every act, and exercise any and every power, that I might or could do, and that may be reasonably necessary regarding the following contracts and matters:

That certain Memorandum of Understanding, dated July 18, 2000 by and between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner;

That certain Agreement dated January 17, 2002 by and between Howard Eugene. Liner, AH Ping Ban, Alexander Pladott, Anthony Stephen Feldman, and. Christopher Patrick. Heron;

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and.

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron

(Initial)

To do any and every act, and exercise any and every power, that I may have that the Attorney-In-Fact and Mandate shall deem proper or advisable, intending hereby to unconditionally vest in the Attorney-In-Fact and Mandate the sole and exclusive power of attorney for conducting any and all business transactions of every nature and kind relating to the contracts, litigation, claims and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters, including without limiting the generality of the powers granted herein, the full exclusive right and authority to compromise and settle said matters.

This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, is irrevocable, and coupled with an interest, and shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts. I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the statement's) of such Attorney-In-Fact and Mandate, that this Exclusive Power Of Attorney and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Exclusive Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Exclusive Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power Of Attorney and

**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 2

(Initial)

Mandate along with the rights and powers granted herein, all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts. Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Exclusive Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Exclusive Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate.

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 5

_(Initial)_

IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 18th of June, 2002, which shall become effective as of the 11th day of January, 2002 for all purposes.

_Howard E. Liner_
**Howard Eugene Liner**

THE STATE OF TEXAS        §
                          §
COUNTY OF _Harris_        §
                          §

^18th/^ This Exclusive Power of Attorney and Mandate was acknowledged before me on the /8th/ day of June, 2002, by Howard Eugene Liner.



```
TRACY STECK
MY COMMISSION EXPIRES
February 3, 2004
```

_Tracy Steck_
Notary Public In And For
The State Of Texas

_HEL_
(Initial)

**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 4