UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| ALEXANDER PLADOTT, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 05-10356-RWZ** |
| LARRY EWERS, | ) | |
| JOHN DOES 1 – 5 | ) | |
| JOHN DOES 6 – 10, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AGAINST THE DEFENDANT LARRY EWERS

### BACKGROUND

This case arises out of certain trading transactions that were orchestrated in the year 2000 by an individual Christopher Patrick Heron ("Heron"). Heron failed to pay profits that he had agreed to pay to certain investors, Howard Eugene Liner ("Liner"), Ah Ping Ban ("Ban"), Flamecrest Enterprises Limited Trust ("Flamecrest Trust"), and Balz Rudolph Wolfensberger Trust ("Wolfensberger Trust"). Heron eventually acknowledged the following debts to them:

1.    Alex Cho/Liner -- $1,980,000,000.00[1]
2.    Ban -- $500,000,000.00
3.    Flamecrest Trust -- $100,000,000.00
4.    Wolfensberger Trust -- $110,000,000.00

---

[1]  Cho and Liner had entered into a profit sharing agreement whereby the two would share equally from the profit generated by a trading transaction orchestrated by Heron.

1

Heron's acknowledgement of these debts is contained in a Settlement Agreement between the parties dated January 17, 2002. Heron breached the Settlement Agreement shortly after its execution, which triggered certain bankruptcy proceedings against him in the United Kingdom. Affidavit of Alexander Pladott, hereinafter, Pladott Aff., ¶¶ 2-4.

The Defendant, Larry Ewers ("Ewers"), was *not* a party to the January 17th Agreement and Heron is *not* indebted to him directly or indirectly. Ewers' involvement in Heron's debts stems only from a Power of Attorney, dated June 18, 2002, in which Liner granted Ewers the authority to act on his behalf with respect to the specific four "contracts and matters", but did not assign any of Heron's debt to Ewers.[2]

Ewers, however, claims that Liner assigned 50% of his interest in the "UK bankruptcy claim" to E.P.D. Management Company, LLC ("E.P.D."), pursuant to a Compensation Agreement dated May 3, 2002, in which E.P.D. was given a "fifty percent (50%) interest only in and to the UK Bankruptcy Claim" under certain terms and conditions. The May 3, 2002 Compensation Agreement defines the "bankruptcy claim" as "Cause No. 1625 of 2002 styled in the High Court of Justice in Bankruptcy RE: Christopher Patrick Heron". One of those terms and conditions in the Compensation Agreement was that the "collection of the Bankruptcy claim shall be deposited into the appropriate trust account of mutually agreeable legal counsel [and] that designated legal counsel shall oversee the disbursal of all sums received in accordance with the terms of this Agreement." Thus, if Liner assigned any of Heron's debt to him to anyone, it was assigned to E.P.D., and not to Ewers personally. Moreover, E.P.D. is not entitled to

---

[2]  In a related case in this Court, Liner has filed an Affidavit in which he has denied having executed the June 18, 2002 Power of Attorney, which was preceded by other Powers of Attorney which he did admittedly execute.

collect any money on its own since the recovered money needs to be deposited in the trust account of mutually agreeable legal counsel.

In addition, Ewers executed the Compensation Agreement as "President" of E.P.D. The records in the Texas Secretary of State's office indicate that the sole "manager" of E.P.D. was and continues to be an individual named Don Butler, and *not* Ewers. As is set forth in the Affidavit of Kevin Michaels, submitted herewith, there are many irregularities surrounding Ewers' relationship to E.P.D. which call into question his authority to act on E.P.D.'s behalf and, as a consequence, the validity of the Compensation Agreement.

Lastly, Heron's debt to Liner under the January 17, 2002 Settlement Agreement, which forms the basis for the "bankruptcy claim" which was supposedly assigned to E.P.D., could *not* be assigned to anyone unless certain conditions were met. In particular, the January 17th Agreement specifically states that

> [·]his Agreement shall be binding upon the Parties to this Agreement and their respective successors and permitted assigns Provided [sic] that none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to the Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement.

Pladott submits that there was no valid legal assignment of Heron's debt from Liner to E.P.D. since the conditions required under the January 17th Agreement (i.e., approval in writing from the other parties) never occurred. Accordingly, Ewers should not be representing to anyone that he is a direct creditor of Heron based on the Compensation Agreement because there are serious questions regarding its validity and scope.

The only straightforward connection that Ewers has to the Heron debt, therefore, is as an agent for Liner under the Power of Attorney. Liner has, however, terminated the Power of Attorney and has filed a lawsuit against Ewers in the District Court of Harris County, Texas [Howard Eugene Liner v. E.P.D. Management Company, L.L.C. and Larry Ewers, No. 2005-11080] in which Liner seeks to establish that the Power of Attorney was terminated on July 16, 2004. Thus, even Ewers' ability to act as an agent for Liner is in currently dispute.

Through their representative, the Plaintiff, Alexander Pladott ("Pladott"), Ban, Flamecrest Trust, and Wolfensberger Trust entered into oral and written agreements with Ewers regarding the collection and division of Heron's debt. Pladott Aff., ¶ 11. Pladott entered into the agreements with Ewers based on the latter's claim that he had discovered, through confidential sources, two bank accounts belonging to Heron totaling $1.6 Billion. Pladott Aff., 11. Ewers has represented to Pladott that he has located assets belonging to Heron which have been frozen in New York State and Canada. He had also represented to Pladott on numerous that he has engaged in an active effort to free up and collect Heron's assets in New York and Canada. Pladott Aff., ¶ 13.

In his agreements with Pladott, Ewers agreed to disclose the information regarding Heron's bank accounts to the Pladott creditors; to split any money recovered from Heron with those creditors according to certain agreed upon percentages; and to place the recovered money in a joint bank account with Pladott. Ewers has never divulged any additional information regarding the above-mentioned bank accounts to the Pladott creditors. Pladott Aff., ¶ 12.

Ewers has also filed a lawsuit against Pladott in the District Court of Harris County, Texas [Larry Ewers v. Alexander Pladott, No. 2004-43354] alleging a breach of contract by virtue of Pladott's alleged failure to shoulder his share of the legal and investigation fees allegedly expended by Ewers in pursuit of claims against Heron. In that lawsuit, Ewers seeks a "judgment that rescinds the contract and relieves him of any obligation to share any proceeds he may eventually realize as a result of his efforts to collect the debt he is owed by Heron." Pladott Aff., ¶ 14.

## ARGUMENT

As a result of the foregoing facts, Pladott believes that Ewers is angling towards a recovery of Heron's assets (and in particular, the frozen assets of Heron in New York and Canada) for his *sole* benefit in violation of his obligations to Pladott and his creditors. Pladott Aff., ¶ 15. This conclusion is almost inescapable given the relief which Ewers seeks in the lawsuits filed in Texas against Liner and Pladott. If Ewers is allowed to represent to courts in other jurisdictions where Heron's assets are located that he is a direct creditor of Heron and/or that he has an equity interest in Heron's debt via an assignment of Liner's rights, this may well enable him to secure those assets for his sole benefit in violation of his obligations to Pladott and his creditors. Pladott's creditors would be irreparably harmed in the event that Ewers secured any of Heron's assets for his sole benefit, as there may not be any other assets available to satisfy Pladott's creditors.

## CONCLUSION

Accordingly, to maintain the status quo while the parties' respective rights are determined both here and in the Texas courts, Pladott is requesting this Court to enter an order restraining and enjoining the Defendant, Larry Ewers, until further order of this

5

Court, from representing to any court or third-party that he is a direct creditor of Christopher Patrick Heron, by way of a Compensation Agreement dated May 3, 2002 between E.P.D. Management Company, LLC and Howard Eugene Liner, or otherwise. In addition, Pladott requests this Court to order Ewers to serve a copy of the Preliminary Injunction upon any courts and/or any third parties where he has made any such representations.

ALEXANDER PLADOTT

By his Attorney,

Isaac H. Peres, BBO #545149
50 Congress Street
Boston, MA 02109
(617) 722-0094

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, I served a copy of this document, by first class mail, upon Alan Spiro, Edwards & Angell, LLP, 101 Federal Street, Boston, MA 02110.

Isaac H. Peres