## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER PLADOTT,<br><br>Plaintiff<br><br>v.<br><br>LARRY EWERS,<br>JOHN DOES 1 – 5<br>JOHN DOES 6 – 10,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  CIVIL ACTION<br>NO. 05-10356-RWZ |

### AFFIDAVIT OF ALEXANDER PLADOTT

I, Alexander Pladott, being duly sworn, hereby depose and states as follows:

1.      I am the Plaintiff in this case.  I am a citizen of the United States and I reside at 20000 Winnetka Place, Woodland Hills, CA 91364.

2.      This case arises out of certain trading transactions that were orchestrated in the year 2000 by an individual Christopher Patrick Heron ("Heron").

3.      Heron failed to pay profits that he had agreed to pay to certain investors, Howard Eugene Liner ("Liner"), Ah Ping Ban ("Ban"), Flamecrest Enterprises Limited Trust ("Flamecrest Trust"), and Balz Rudolph Wolfensberger Trust ("Wolfensberger Trust").  Heron eventually acknowledged the following debts to them:

1.      Alex Cho/Liner -- $1,980,000,000.00
2.      Ban -- $500,000,000.00
3.      Flamecrest Trust -- $100,000,000.00
4.      Wolfensberger Trust -- $110,000,000.00

4.    Heron's acknowledgement of these debts is contained in a Settlement Agreement between the parties dated January 17, 2002. Heron breached the Settlement Agreement shortly after its execution which triggered the bankruptcy proceedings against him in the United Kingdom. A copy of the January 17th Agreement is annexed hereto as Exhibit "A".

5.    I represent Ban, Flamecrest Trust, and Wolfensberger Trust.

6.    The Defendant in this case, Larry Ewers ("Ewers"), was *not* a party to the January 17th Agreement and Heron is *not* indebted to him directly or indirectly.

7.    Ewers' involvement in Heron's debts stems *only* from a Power of Attorney, dated June 18, 2002, in which Liner granted Ewers the authority to act on his behalf with respect to the specific four "contracts and matters" but did not assign any of Heron's debt to Ewers. A copy of the Power of Attorney is annexed hereto as Exhibit "B".

8.    Ewers claims that Liner assigned 50% of his interest in the "UK bankruptcy claim" to E.P.D. Management Company LLC ("E.P.D."), a company allegedly controlled by Ewers, pursuant to a Compensation Agreement dated May 3, 2002, in which E.P.D. was given a "fifty percent (50%) interest only in and to the UK Bankruptcy Claim" under certain specific terms and conditions. A copy of the Compensation Agreement is annexed hereto as Exhibit "C".

9.    EPD is *not* a party to the January 17, 2002 Settlement Agreement with Heron; EPD is *not* a party to the bankruptcy proceedings against Heron in the UK; EPD is *not* a party in the related Case #04-10024-RWZ and EPD was *never* recognized by Heron as one of his creditors in the UK bankruptcy proceedings.

10.  EPD entered into the Compensation Agreement dated May 3, 2002 with Liner three and one-half months after the January 17, 2002 Settlement Agreement was executed between Heron and his four creditors.  The Heron Settlement Agreement is not mentioned anywhere in the EPD Compensation Agreement.  Therefore, Liner, Ewers and EPD did not intend to include any of Liner's rights from the Settlement Agreement in Liner's agreement with Ewers.

11.  I have entered into oral and written agreements with Ewers regarding the collection and division of Heron's debt.  I entered into the agreements with Ewers based on his claim that he was an agent of Liner and that he had discovered, through confidential sources, two frozen bank accounts belonging to Heron in New York State and Canada totaling $1.6 Billion.

12.  In his agreements with me, Ewers agreed to disclose the information regarding Heron's bank accounts to my creditors; to share any money recovered from Heron with Heron's creditors according to certain agreed upon percentages; and to place the recovered money in a joint bank account with me.  Ewers has never divulged any additional information regarding the above-mentioned bank accounts to me or my creditors.

13.  Ewers has represented to me on numerous occasions that he has engaged in an active effort to free up and collect Heron's assets in New York and Canada.

14.  Ewers has filed a lawsuit against me in the District Court of Harris County, Texas [Larry Ewers v. Alexander Pladott, No. 2004-43354] alleging a breach of contract by virtue of my alleged failure to shoulder my burden of the legal and investigation fees allegedly expended by Ewers in pursuit of claims against Heron.  In

that lawsuit, Ewers seeks a "judgment that rescinds the contract and relieves him of any obligation to share any proceeds he may eventually realize as a result of his efforts to collect the debt he is owed by Heron." I deny that I agreed to share any legal or investigative fees with Ewers. I also deny that Heron owes any debt to Ewers.

15.    As a result of the foregoing facts, I believe that Ewers is angling towards a recovery of Heron's assets (and in particular, the frozen assets of Heron in New York and Canada) for his *sole* benefit in violation of his obligations to my creditors. I believe that this conclusion is almost inescapable given the relief which Ewers seeks in the lawsuits filed in Texas against Liner and me.

16.    If Ewers is allowed to represent to courts in other jurisdictions where Heron's assets are located that he is a direct creditor of Heron and/or that he has an equity interest in Heron's debt via an assignment of Liner's rights under the January 17, 2002 Settlement Agreement, this may well enable him to secure those assets for his sole benefit in violation of his obligations to me and my group of creditors.

17.    My group of creditors would be irreparably harmed in the event that Ewers secured any of Heron's assets for his sole benefit.

Wherefore it is respectfully requested that this Motion be granted in its entirety.


Date:  May 1, 2005
       Woodland Hills, CA 91364

                                    _____
                                    Alexander Pladott


State of California          )
                             )  ss.
County of Los Angeles        )

Subscribed and sworn to (or affirmed) before me on this 1st day of May, 2005 by Alexander Pladott, proved to me on the basis of satisfactory evidence to be the person who appeared before me.


_____
S. Stone
Notary Public

```
S. STONE
Commission # 1556850
Notary Public - California
Los Angeles County
My Comm. Expires Mar 5, 2009
```

Title of Document:  Affidavit of Alexander Pladott
Document Date: May 1, 2005          Number of Pages:  5

CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2005, I served a copy of this document, by first class mail, upon Alan Spiro, Edwards & Angell, LLP, 101 Federal Street, Boston, MA 02110.

Isaac H. Peres

# EXHIBIT "A"

**AN AGREEMENT** made the 17th day of January 2002 **BETWEEN**

(1)    **HOWARD EUGENE LINER** of 21403 Crystal Greens, Katy, Texas 77450 USA ("Mr Liner")

(2)    **AH PING BAN** of 231 Outram Road, 01-01 Tarng Chern Building, Singapore 169040 ("Mr Ban")

(3)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 9 364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Flamecrest Enterprises Limited Trust ("Flamecrest")

(4)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 9 364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust ("Wolfensberger")

(5)    **CHRISTOPHER PATRICK HERON** of 21 Dale House, Boundary Road, St John's Wood, London NW8 0JB ("Mr Heron")

**IT IS HEREBY AGREED** as follows:

**1.    Definitions**

| | | |
|---|---|---|
| 1.1 | "the Ban Contract" | An agreement in writing dated 25th November 1998 and made between Mr Heron (1) and Mr Ban (2) as amended firstly by an undated addendum to the said agreement and secondly by a further addendum to the said agreement dated 24th December 1998 |
| 1.2 | "the Ban Debt" | US$500,000,000 payable pursuant to the Ban Contract by Mr Heron together with Interest thereon from 3rd December 1999 |
| 1.3 | "the Ban Petition" | A bankruptcy petition to be issued by Mr Ban against Mr Heron in the High Court of Justice, |

1

flam0018-1451 17/1/2002

Chancery Division, In Bankruptcy, for non-payment by Mr Heron of the Ban Debt

| | | |
|---|---|---|
| 1.4 | "the Clients Account" | The United States Dollar Clients Account of the Creditors' Solicitors at Barclays Bank Plc, Barclays Business Centre, Baker Street Branch, 93 Baker Street, London W1A 4SD Sort Code 20-30-19 SWIFT Code BARC GB 22 Account No. 83590699 |
| 1.5 | "the Creditors" | Mr Liner, Mr Ban, Flamecrest and Wolfensberger |
| 1.6 | "the Creditors' Solicitors" | Messrs. Anthony Feldman & Co of 40 Manchester Street, London W1U 7LL |
| 1.7 | "the Financial Statement" | A statement evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles |
| 1.8 | "the Flamecrest Contract" | An agreement in writing dated 14th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Flamecrest Enterprises Limited Discretionary Trust (2) |
| 1.9 | "the Flamecrest Debt" | US$100,000,000 payable pursuant to the Flamecrest Contract by Mr Heron together with Interest thereon from 14th April 2000 |
| 1.10 | "the Flamecrest Petition" | A bankruptcy petition to be issued by Flamecrest against Mr Heron in the High Court of Justice, |

0039

Chancery Division, In Bankruptcy, for payment by Mr Heron of the Flamecrest Debt

1.11  "the Heron Net Worth"          The sum of US$6,000,000 approximately

1.12  "Interest"                     Interest at the Interest Rate accruing from the respective dates from which Interest is payable under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract until payment by Mr Heron of the amounts due under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract respectively

1.13  "the Interest Rate"            8% per annum

1.14  "the Cho/Liner Contract"       An agreement in writing dated 18th July 2000 and made between Hsin-Ming Chuo and Mr Liner (1) and Mr Heron (2)

1.15  "the Cho/Liner Debt"           US$1,980,000,000 payable pursuant to the Cho/Liner Contract by Mr Heron together with Interest thereon from 18th July 2001

1.16  "the Liner Petition"           A bankruptcy petition to be issued by Mr Liner against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Cho/Liner Debt

1.17  "the Parties"                  The parties to this agreement

1.18  "the Payment Date"             The 24th day of January 2002

1.19  "the Settlement Sum"           Seventy percent of the liquidated value of the Heron Net Worth

1.20    "the Statutory Demands"      The Statutory Demands issued against Mr Heron by the Creditors in respect of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt

1.21    "the Wolfensberger Contract"      An agreement in writing dated 15th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust (2)

1.22    "the Wolfensberger Debt"      US$110,000,000 payable pursuant to the Wolfensberger Contract by Mr Heron together with Interest thereon from 15th April 2000

1.23    "the Wolfensberger Petition"      A bankruptcy petition to be issued by Wolfensberger against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Wolfensberger Debt

## 2.    Interpretation

2.1    References to a Clause where the context so admits are to a Clause of this Agreement

2.2    The clause and paragraph headings in this Agreement are for ease of reference only and are not to be taken into account in the interpretation of the clause or paragraph to which they refer

2.3    Words importing the singular meaning where the context so admits include the plural meaning and vice versa

2.4    Words of one gender include both other genders and words denoting natural persons include corporations and firms and all such words are to be construed interchangeably in that manner

0041

2.5    Words denoting an obligation on a party to do any act matter or thing include an obligation to procure that it be done and words placing a party under a restriction include an obligation not to permit infringement of the restriction

3.    **Recitals**

3.1    Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Flamecrest Enterprises Limited Trust

3.2    Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the Balz Rudolf Wolfensberger Discretionary Trust

3.3    Mr Heron is indebted to Mr Liner for the Cho/Liner Debt

3.4    Mr Heron is indebted to Mr Ban for the Ban Debt

3.5    Mr Heron is indebted to Flamecrest for the Flamecrest Debt

3.6    Mr Heron is indebted to Wolfensberger for the Wolfensberger Debt

3.7    The Parties have agreed to compromise and settle the amounts due respectively to the Creditors on the terms and conditions hereinafter appearing

4.    **Mr Heron's Obligations**

4.1    On or before the Payment Date Mr Heron shall remit or cause to be remitted to the Clients Account the Settlement Sum with a value date being on or before the Payment Date and in respect of this sub-clause time shall be of the essence of this agreement

4.2    On or before the 1st February 2002 Mr Heron shall provide the Financial Statement of the Heron Net Worth and certified copies of the sale notes evidencing the liquidated amount(s) thereof to the Creditors' Solicitors and in respect of this sub-clause time shall be of the essence of this agreement

4.3  Forthwith upon the signing of this agreement Mr Heron shall sign Consent Orders in the forms annexed hereto dismissing his applications to the Court to set aside the Statutory Demands

4.4  If and when served by the Creditors' Solicitors with any or all of the Liner Petition the Ban Petition the Flamecrest Petition and the Wolfensberger Petition Mr Heron will not on any grounds whatsoever oppose the making by the Court of a Bankruptcy Order against him and will not appeal the same

## 5.  Enforcement of the Contracts

If actual assets and/or liabilities of Mr Heron as at 15th January 2002 including any assets in the names of or under the control of nominees agents or servants increase Mr Heron's actual net worth after taking into consideration only those liabilities listed on the Financial Statement are in excess of the amount of the Heron Net Worth or are not listed in the Financial Statement then (but not otherwise) the amounts due under the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt shall immediately become due and payable credit being given by the Creditors for the Settlement Sum (if received)

## 6.  Full and Final Settlement

Provided that pursuant to the terms of this agreement the Settlement Sum is paid by Mr Heron on or before the Payment Date and the Financial Statement is delivered on or before 1st February 2002 then (but not otherwise) and provided further that the actual net worth of Mr Heron as at 15th January 2002 does not exceed the net worth of Mr Heron as disclosed in the Financial Statement and there are no assets of Mr Heron in his name or in the names of or under the control of his nominees agents or servants not listed in the Financial Statement the Settlement Sum shall be in full and final settlement and extinction of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt

## 7.  Confidentiality

7.1  Each of the Parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective employees and agents shall keep confidential) any information which it or they may acquire in relation to the terms of this Agreement and shall not use or disclose such information except with

the consent of the other party to this Agreement or in accordance with the Order of a Court of competent jurisdiction

7.2     The Parties to this Agreement shall procure that the officers employees and agents of each of them observe a similar obligation of confidence in favour of the Parties to this Agreement

7.3     The obligations of each of the Parties contained in clause 7.1 shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party of its said obligations Provided that nothing contained in this clause 7 shall prevent any party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement

7.4     For the purposes of this clause 7 the expression "party" shall include the subsidiary companies of any party and any other company controlled by that party and the employees or agents of that party and of such subsidiary or controlled companies

7.5     This clause 7 shall survive expiry or termination of this Agreement

## 8.     Miscellaneous Provisions

8.1     Whole agreement

This Agreement contains the whole agreement between the Parties and supersedes any prior written or oral agreement between them relating to it and the Parties confirm that they have not entered into this Agreement on the basis of any representations that are not expressly incorporated in it

8.2     Discretion

No decision exercise of discretion judgment opinion or approval of any matter mentioned in this Agreement or arising from it shall be deemed to have been made by the Parties except if in writing

8.3     No modification

This Agreement may not be modified except by an instrument in writing signed by all of the Parties or their duly authorised representatives .

8.4     Force and effect

This Agreement shall be binding upon the Parties to this Agreement and their respective successors and permitted assigns Provided that none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to this Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement

8.5    No waiver

No exercise or failure to exercise or delay in exercising any right power or remedy vested in any party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right power or remedy

8.6    Publicity

No party shall be entitled to make or permit or authorise the making of any press release or other public statement or disclosure concerning this Agreement or any of the transactions contemplated in it without the prior written consent of the other party

8.7    Governing law

This Agreement shall be governed by the law of England and Wales in every particular including formation and interpretation and shall be deemed to have been made within England and Wales and the Parties agree to submit to the exclusive jurisdiction of the Courts of England and Wales

AS WITNESS the hands of **LARRY EWERS** in exercise of a Power of Attorney under the hand of the said **HOWARD EUGENE LINER** dated the 11th day of January 2002 and of the said **ANTHONY STEPHEN FELDMAN** as Solicitor and Agent for the said **AH PING BAN** and of the other parties hereto the day and year first before written

SIGNED by the above named **LARRY EWERS**) **HOWARD EUGENE LINER** by his Attorney
as the Attorney and in the name of the above  )
named **HOWARD EUGENE LINER** in the
presence of:                                            )

CHARLES A. SHARMAN
4227 SAN FELIPE, No. SF25
HOUSTON, TEXAS 77027
ATTORNEY AT LAW

8                                        0045

SIGNED by the said **ALEXANDER**    )

**PLADOT** in the presence of    )

      *AS ABOVE*

SIGNED by the said **ANTHONY**    )

**STEPHEN FELDMAN** in the presence of )

      *AS ABOVE*

SIGNED by the said **CHRISTOPHER**    )

**PATRICK HERON** in the presence of    )

      *AS ABOVE*

# EXHIBIT "B"

# EXCLUSIVE POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, being one and the same person as H.E. Liner, Howard E. Liner, and Gene Liner, a resident of Rosenberg, Fort Bend County, Texas, United States of America, has made, constituted, and appointed, and by these presents does make constitute, mandate, and appoint LARRY EWERS a resident of Corpus Christi, Nueces County, Texas, United States of America as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate for me and to act in my place, and stead for the purpose of doing any and every act, and exercise any and every power, that I might or could do, and that may be reasonably necessary regarding the following contracts and matters:

That certain Memorandum of Understanding, dated July 18, 2000 by and between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner;

That certain Agreement dated January 17, 2002 by and between Howard Eugene Liner, AH Ping Ban, Alexander Pladott, Anthony Stephen Feldman, and Christopher Patrick Heron;

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 1

(Initial)

To do any and every act, and exercise any and every power, that
I may have that the Attorney-In-Fact and Mandate shall deem
proper or advisable, intending hereby to unconditionally vest in
the Attorney-In-Fact and Mandate the sole and exclusive power
of attorney for conducting any and all business transactions of
every nature and kind relating to the contracts, litigation, claims
and causes of action asserted by me against Christopher Patrick
Heron before the Court in the above referenced matters,
including without limiting the generality of the powers granted
herein, the full exclusive right and authority to compromise and
settle said matters.

This Exclusive Power Of Attorney And Mandate shall not terminate on my disability,

is irrevocable, and coupled with an interest, and shall only terminate upon the full and final

adjudication, resolution, settlement, and disposal of the referenced matters and contracts.

I agree that anyone dealing with said Attorney-In-Fact and Mandate  may rely upon the

statement(s) of such Attorney-In-Fact and Mandate, that this Exclusive Power Of Attorney

and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon

me and my heirs or assigns.  An affidavit, executed by the Attorney-In-Fact and Mandate

stating that he does not have, at the time of doing an act pursuant to this Exclusive Power Of

Attorney and Mandate, actual knowledge of the revocation or termination of this Exclusive

Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-

revocation and non-termination of the power at that time.

I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate

shall lawfully do, or cause to be done by virtue of this Exclusive Power Of Attorney and

**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 2

(Initial)

Mandate along with the rights and powers granted herein, all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts. Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Exclusive Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Exclusive Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate.

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 3

_feu_
(Initial)

0064

IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 18th of June, 2002, which shall become effective as of the 11th day of January, 2002 for all purposes.

*Howard E. Liner*
**Howard Eugene Liner**


THE STATE OF TEXAS     §
                           §
COUNTY OF *Harris*     §


    This Exclusive Power of Attorney and Mandate was acknowledged before me on the 18th day of June, 2002, by Howard Eugene Liner.



| TRACY STECK |
| MY COMMISSION EXPIRES |
| February 3, 2004 |

*Tracy Steck*
Notary Public In And For
The State Of Texas


**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 4

*HEL*
(Initial)

0065

# EXHIBIT "C"

Exhibit +

# COMPENSATION AGREEMENT

This Compensation Agreement ("**Agreement**") is entered into on this the 3rd day of May, 2002, but shall be effective as of the 1st day of July, 2001 by and between Howard E. Liner ("**Liner**"), a resident of Rosenberg, Fort Bend County, Texas and E.P.D. Management Company, L.L.C. ("**EPD**"), a Texas limited liability company, with its principal place of business being 13726 Suntan, Corpus Christi, Texas 78418.

## WITNESSETH:

**WHEREAS,** Liner is the owner and holder of certain claims and causes of action against Mr. Christopher Patrick Heron ("**Heron**"), which arise as a result of Heron's breach of the terms of a certain Memorandum of Understanding dated July 18, 2000 between Heron, Liner and Hsin-Ming Chuo ("**Chuo**");

**WHEREAS,** Liner caused to be filed on March 4, 2002 a bankruptcy petition asserting various claims against Heron in *Cause No. 1625 of 2002 styled In The High Court Of Justice In Bankruptcy RE: Christopher Patrick Heron* ("**Bankruptcy Claim**");

**WHEREAS,** EPD by and through its managing manager, Mr. Larry Ewers has provided to Liner personal services and financial support in the investigation and prosecution of the Bankruptcy Claim; and

**WHEREAS,** Liner and EPD mutually desire to continue with the Bankruptcy Claim seeking a mutually satisfactory resolution of the Bankruptcy Claim;

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Liner and EPD hereby agree as follows:

1.    Liner does hereby assign, transfer, and convey to EPD, fifty percent (50%) interest in and to the Bankruptcy Claim, including, without limitation, fifty percent (50%) of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the Bankruptcy Claim. Liner and EPD stipulate and agree that all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the

COMPENSATION AGREEMENT
PAGE 1

Bankruptcy Claim shall be deposited into the appropriate trust account of mutually agreeable legal counsel. Designated legal counsel shall oversee the disbursal of all sums received in accordance with the terms of this Agreement. Said legal counsel shall provide Liner and EPD with a full accounting of all fees incurred, interest earned and disbursements made.

2.  Liner agrees to reimburse EPD for all sums expended in the investigation and prosecution of the Bankruptcy Claim, which shall include without limitation, all legal fees, investigators fees, travel costs and/or other verifiable costs and expenses, with an offset to Liner for all sums expended in the investigation and prosecution of the Bankruptcy Claim.

3.  Liner hereby represents and warrants that the payment of sums hereunder by Liner to EPD relate solely to the claims and causes of action asserted by Liner in the above referenced Bankruptcy Claim. Liner further represents and warrants to EPD that he is the owner and holder of his claims asserted in the Bankruptcy Claim.

4.  Liner hereby agrees to defend, indemnify, save, and hold harmless EPD, its officers, directors, shareholders, members, or managers from and against any and all claims, demands, causes of action, and damages of any third parties (i) claiming an interest in the Bankruptcy Claim or any proceeds derived therefrom, (ii) any fees relating to this  Agreement, or (iii) claiming an interest in the underlying transaction set forth herein, together with any court costs, attorney's fees or other costs or expenses arising therefrom.


All the terms, provisions, covenants, obligations, indemnities, representations, warranties and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns. Any assignment of the parties rights hereunder shall be made expressly subject to all of the terms, provisions, covenants, obligations, indemnities, representations, warranties and conditions of this Agreement.


COMPENSATION AGREEMENT
PAGE 2

Each Party hereto shall from time to time do and perform such further acts and execute and deliver such further instruments, assignments and documents as may be required or reasonably requested by the parties hereto to carry out and effect the intentions and purposes of this Agreement.

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

This Agreement embodies the entire agreement between the parties, superseding all prior agreements, negotiations, letters of intent, arrangements and understandings related to the subject matter hereof either written or oral, and may only be supplemented, altered, amended, modified, or revoked by a writing signed by duly authorized representatives of all the parties hereto. Notwithstanding the provisions of this paragraph, no party shall be bound by, subject to, or deemed a party to, any agreement between the parties which have not been duly executed by, or on behalf of, such party.

Any of the terms, provisions, covenants, representations, warranties or conditions hereof may be waived only by a written instrument executed by the party waiving compliance.    Except as otherwise expressly provided in this Agreement, the failure of any party at any time or times to require performance of any provision hereof shall in no manner affect such party's right to enforce the same.

This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the substantive and procedural laws of the State of Texas. The parties agree that the negotiation, offer and acceptance and performance of the Agreement shall be deemed to have occurred in Houston, Harris County, Texas.

This Agreement may be executed in one or more counterparts, all of which may be deemed to be an original document.    A facsimile copy of this signed Agreement will be treated as an original for all purposes.

COMPENSATION AGREEMENT
PAGE 3

0068

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written, to be effective as of the effective date set forth above.

**HOWARD E. LINER**                    **E.P.D. MANAGEMENT COMPANY, L.L.C.**

"Liner"                                "EPD"

By: _____                  By: _____
     Howard E. Liner                        Larry Ewers, President