UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALEXANDER PLADOTT,<br>Plaintiff,<br><br>v.<br><br>LARRY EWERS, et al.,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 05-10356-RWZ |

**OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY
INJUNCTION AGAINST DEFENDANT LARRY EWERS**

**INTRODUCTION**

Pladott petitions this Court to disturb the status quo in an unprecedented way: to issue "an order restraining and enjoining the Defendant, Larry Ewers … from representing to any court or third-party that he is a direct creditor of Christopher Patrick Heron, by way of a Compensation Agreement dated May 3, 2002 between EPD Management Company, LLC and Howard Eugene Liner, or otherwise." Motion for a Preliminary Injunction ("Motion"), p. 1.

In support of his Motion, Pladott challenges extant contracts to which he is not a party, and with respect to which he has no standing. He misconstrues internal corporate matters concerning EPD, of which Ewers is indisputably the sole owner and manager, and with which Pladott has no relationship, no first-hand knowledge, no rights and no standing. Pladott seeks an extraordinary order prohibiting a *bona fide* party to extant contracts of the very right even to assert his rights under those contracts – in Court! – at the behest of a person who is neither a party to those contracts, nor has any standing with respect to those contracts! Pladott asks for this extraordinary relief on a preliminary basis – before a witness is called, in the absence of the other party to the contracts, before the full and fair presentation of evidence, before a trial on the

merits, before a fair and full adjudication on the merits.  Indeed, the relief requested would

literally preclude a fair and full adjudication on the merits.

Having failed in a previous effort in this Court to make precisely the same arguments, in

litigation already pending before this Court (Ewers v. Heron et al., No. 04-10024-RWZ (D.

Mass, Jan. 7, 2004) (the "Ewers vs. Heron" Litigation), a case in which Liner, the actual party to

the relevant contracts, was at least a named movant/intervenor and was represented by counsel,

Pladott wastes this Court's time, and forces Ewers to expend precious resources, on arguments

previously heard and at least preliminarily rejected by this Court when even Liner's intervention

was denied.  Now, Liner is not here – he is not a party to this case – but Pladott merely presumes

to speak for him.  Pladott has no cognizable standing to do so.

Finally, Ewers also notes that Pladott, in violation of L.R. 7.1(a)(2), failed to confer in

good faith to resolve or narrow the issues he raises before filing his Motion.

## ARGUMENT

### I.      STANDARD

The standard for preliminary injunctive relief in the First Circuit has been articulated

frequently.  In order to prevail, Pladott bears the burden of demonstrating:

> (1) a substantial likelihood of success on the merits; (2) a significant risk
> of irreparable harm if the injunction is withheld; (3) a favorable balance of
> hardships; (4) a fit (or a lack of friction) between the injunction and the
> public interest.

Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citing McGuire v. Reilly, 260

F.3d 36, 42 (1st Cir. 2001); Ralph v. Lucent Tech., Inc., 135 F.3d 166, 167 (1st Cir. 1998)

(quoting EEOC v. Astra, USA, Inc., 94 F.3d 738, 742 (1st Cir. 1996).

Importantly, "the aim of a preliminary injunction is to preserve the status quo, freezing an

existing situation so as to permit the trial court, upon full adjudication of the case's merits, more

BOS_489266_2.DOC/KNOURSE

effectively to remedy discerned wrongs." <u>Matos v. Clinton School Dist.</u>, 367 F.3d 68, 72 (1st

Cir. 2004). A preliminary injunction that "disturb[s], rather than preserv[es] the status quo

'normally should be granted only in those circumstances when the exigencies of the situation

demand such relief.'" <u>Rarities Group, Inc. v. Karp</u>, 98 F. Supp. 2d 96, 104 (D.Mass. 2000)

(quoting <u>Mass. Coalition of Citizens with Disabilities v. Civil Defense Agency</u>, 649 F.2d 71, 76

n.7 (1st Cir. 1981).

In its essence, Pladott's requested injunctive relief, namely that Ewers be enjoined "from

representing to any court or third-party that he is a direct creditor of Christopher Patrick Heron,

by way of a Compensation Agreement dated May 3, 2002 between EPD Management Company,

LLC and Howard Eugene Liner, or otherwise," would require this Court – at the <u>outset</u> of this

case, <u>before</u> the presentation of any evidence, and <u>prior</u> to a full and fair adjudication on the

merits – to make the ultimate determinations of law and of fact on the ultimate issues of the case,

in the absence of the other party to the relevant contracts! Pladott asks the Court to hold that the

Compensation Agreement and the irrevocable Power of Attorney, through which Ewers claims

his status as a creditor of Heron, are unenforceable. As no Court has ruled either contract to be

unenforceable – indeed, in the <u>Ewers vs. Heron</u> case, Ewers has obtained a contrary default

judgment and this Court has heard and at least preliminarily rejected the same arguments Pladott

makes here – the injunctive relief requested by Pladott seeks a remarkable change of the status

quo: an order that would prohibit Ewers from litigating his position on the merits, by preventing

him from even asserting that position! Keeping this in mind, the Court should view Pladott's

motion with disfavor, because, as will be demonstrated, the exigencies of the situation fall well

short of justifying extraordinary preliminary relief that would disturb the status quo.

BOS_489266_2.DOC/KNOURSE

## II.    PLADOTT FAILS TO DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.    Pladott Is Not A Real Party In Interest And Has No Standing To Raise Issues Concerning Agreements To Which He Is Not A Party.

To begin with, Pladott, as an individual, has no standing whatsoever in the subject matter of the Ewers vs. Heron Litigation or this present suit.  Pladott was not a party, in any capacity, to either of the two relevant agreements – either the Compensation Agreement or the exclusive and irrevocable Power of Attorney – which were both agreements between Liner on the one hand, and Ewers or Ewers' wholly-owned LLC, on the other.  Pladott is not a real party in interest as to these agreements or, consequently, as to the greatest number of his allegations and claims.  Pladott lacks any standing whatsoever to assert Liner's rights or positions on these contracts.  Whereas Ewers has Liner's exclusive Power of Attorney, Pladott does not.

Moreover, to the extent that Pladott might conceivably have any interest whatsoever in any funds of Heron's, it could only be in Pladott's capacity as Trustee of two trusts – Flamecrest Enterprises Limited Trust and Balz Rudolph Wolfensberger Discretionary Trust – which are allegedly creditors of Heron.  However, Pladott has not brought this suit in his alleged capacity as Trustee of those Trusts.  Nor has Pladott joined those Trusts as parties (by contrast, the Trusts were nominal movants/intervenors, and therefore parties for limited purposes, in the Ewers vs. Heron case).  Nor has Pladott disclosed the beneficiaries of those Trusts, nor the details of those Trusts, nor proffered any showing of the bona fides of his own authority with respect to those Trusts.  In any event, as an individual, Pladott has no interest (unlike Ewers, who, as an individual, has an exclusive Power of Attorney from Liner, coupled with a beneficial interest specifically acknowledged by Liner in the Power of Attorney, in those claims).

BOS_489266_2.DOC/KNOURSE

Accordingly, Pladott fails to meet even a threshold burden of demonstrating <u>standing</u> to challenge the issues he purports to raise in his Motion – a fundamental prerequisite to demonstrating a substantial likelihood of success on the merits. Pladott can neither speak for Liner, nor represent Liner's rights in Liner's absence, nor pursue, as an individual as opposed to as a Trustee of two absent, mystery Trusts, any interest relating to Heron's funds.

### B.    Pladott Has Failed To Join Necessary Parties.

Pladott has not even bothered to <u>join</u> Liner, who, as the signatory of and party to both the Compensation Agreement and the Power of Attorney, must surely be an indispensable party. Because of Ewers' exclusive Power of Attorney from Liner, Ewers can proceed without joining Liner: indeed, Liner explicitly delegated his standing to Ewers for purposes of Ewers' exercise of his powers.[1]) Pladott simply <u>presumes</u> to speak on behalf of an absent third party, whose interests Pladott has demonstrated no power or authority to represent. Pladott has not even attempted a showing of any such authority. This is fatal to his case, as well as hypocritical.[2]

### C.    Pladott's Claim of 'Fraud on the Court' (Count I) Is Wholly Unfounded.

#### (1)    Ewers Properly Claims Rights Against Heron Under An Irrevocable Power Of Attorney Coupled With An Interest.

Ewers filed the <u>Ewers vs. Heron</u> case expressly pursuant to an Exclusive Power of Attorney and Mandate ("POA") executed on June 15, 2002. <u>See Exhibit A</u>. By means of the POA, Liner unmistakably appointed Ewers:

---

[1]  The Court will recall, as discussed further below, that in the Power of Attorney, Liner appointed Ewers to be "his sole, exclusive ... Attorney-In-Fact ... to act in my place and stead ... and exercise any and every power, that I could do." Liner "ratif[ied] and confirm[ed] that [Ewers] shall lawfully do, or cause to be done ... all acts necessary in the prosecution of the ... rights granted under said contracts." Finally, Liner confirmed that Ewers had "the powers set forth herein <u>to the exclusion</u> of all other persons or entities, <u>including myself</u>...." Thus, whereas Ewers has the express right to act in Liner's stead, Pladott has no such right, no legal standing, and does not even attempt any such showing.

[2]  Hypocritical, because whereas Pladott claimed that Liner was a necessary party in the <u>Ewers vs. Heron</u> Litigation, Pladott failed to join Liner in this action, but merely presumes to make arguments about Liner's rights!

BOS_489266_2.DOC/KNOURSE

> "***his sole, exclusive, true, and lawful Attorney-In-Fact*** and Mandate ... to ***act in [Liner's] place***, and stead for the purpose of doing ***any and every act, and exercise any and every power***, that [Liner] could do, and that ***may be reasonably necessary regarding the following <u>contracts and matters</u>***:  That certain Memorandum of Understanding, dated July 18, 2000 ...; That certain Agreement dated January 17, 2002...; Cause No.384-SD-2001: In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and Cause No. 1625 of 2002:  In The High Court Of Justice In Bankruptcy: RE: Christopher Patrick Heron."

<u>See</u> <u>Exhibit A</u>.  (As discussed further below, but as is evident from the above, contrary to Pladott's unsupported and insupportable statements, Ewers' rights under the POA extend <u>not</u> merely to certain bankruptcy proceedings, and are in no way limited to those proceedings, but extend to the underlying <u>contracts</u> ("***any and every power ... regarding the following <u>contracts</u> and <u>matters</u>***: That certain Memorandum of Understanding, dated July 18, 2000 ...; That certain Agreement dated January 17, 2002...") pursuant to which Liner was owed money by Heron.

Furthermore, the POA specifically provides:

> "This Exclusive Power Of Attorney ... ***is <u>irrevocable</u>***, and ***coupled with an interest***, and shall only terminate ***upon the full and final adjudication, resolution, settlement, and disposal of the referenced <u>matters</u> <u>and</u> <u>contracts</u>***.  I agree that anyone dealing with [Ewers] may rely upon the statement(s) of [Ewers], that this Exclusive Power of Attorney and Mandate has not been revoked*** or modified in any manner...."

> "I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate [Ewers] ***shall lawfully do, or cause to be done*** by virtue of this Exclusive Power of Attorney and Mandate along with the rights and powers granted herein, ***all acts necessary in the prosecution of the claims asserted in the referenced matter <u>and the rights granted under said contracts</u>.  Said Attorney-In-Fact and Mandate shall have the powers set forth herein <u>to the exclusion of all other persons</u> or entities, <u>including myself</u>, my heirs and assigns.***"
> (Emphases added.)

In view of this unambiguously irrevocable power of attorney, Pladott's allegation that Liner terminated the POA (<u>see</u> Memorandum, p. 4) is baseless.

BOS_489266_2.DOC/KNOURSE

The Compensation Agreement, referenced by Pladott in his Motion, is dated May 3, 2002

(see Exhibit B).  The Compensation Agreement is unequivocally an assignment.  It states:

> "Liner does hereby *assign, transfer, and convey* to EPD, fifty percent (50%)
> *interest in and to the Bankruptcy Claim, including*, without limitation, *fifty
> percent (50%) of all sums to be received by Liner as a result of the compromise,
> settlement, resolution, execution, or collection of the Bankruptcy Claim*."

Moreover, the Compensation Agreement specifically recites that Liner "is the owner of

certain claims and causes of action against Mr. Christopher Patrick Heron … which arise as a

result of Heron's breach of the terms of a certain Memorandum of Understanding dated July 18,

2000 between Heron, Liner and Hsin-Ming Chuo…."  Ewers was given a 50% interest in Liner's

claims based on this ***underlying contract***, as well as, in the Power of Attorney, an exclusive

Power of Attorney with respect to "***the rights granted under said contracts***."  The

Compensation recites that Liner caused to be filed a bankruptcy petition asserting these "various

claims" against Heron, <u>which</u> underlying claims are defined as the "Bankruptcy Claim."  This

describes the underlying claims of Liner, namely the debts owed to Liner by Heron, which were

the basis for the filing of the bankruptcy petition.  It was a 50% interest in the <u>underlying</u> claims,

and a 50% interest in "***all sums to be received by Liner as a result of the … resolution,***

***execution, or collection of the Bankruptcy Claim***" that was assigned to Ewers.  There is

absolutely no language in the Compensation Agreement suggesting that any approval of any

bankruptcy court was required to make the assignment effective.  To the contrary, the

Compensation Agreement states:

> "Liner does hereby assign, transfer, and convey to [Ewers], fifty percent (50%)
> *interest in and to the Bankruptcy Claim, including, <u>without limitation</u>*, fifty
> percent (50%) of <u>*all sums to be received by Liner*</u> as a result of the compromise,
> *settlement, resolution, execution, or collection* of the Bankruptcy Claim."
> (Emphasis added.)

BOS_489266_2.DOC/KNOURSE

See Exhibit B. "Collection" of the "Bankruptcy Claim" – comprised of the underlying claims on the underlying contracts – is what is being sought in the Ewers vs. Heron Litigation. Ewers indisputably had and has the exclusive Power of Attorney to pursue Liner's claims arising out of Heron's breach of the underlying contracts, and an equitable interest in 50% of all sums collected on those underlying contracts, the breach of which gave rise to the claims comprising the "Bankruptcy Claim."

Under Texas law, as explained below, if the POA is, as it specifically states, "coupled with an interest," it is irrevocable and continues in force and effect, notwithstanding Pladott's mere assertion [without any standing to do so!] of Liner's purported, unilateral, legally ineffective attempt to revoke it. See Memorandum, p. 4.

Ewers was and remains the sole member and owner of EPD – a fact of which Liner "was very aware" at the time of execution of the Compensation Agreement and the POA, according to Liner's own attorney, who represented Liner in connection with the POA! See Buckley Affidavit, ¶ 4, attached hereto as Exhibit C). As the sole member and owner of EPD, Ewers has a beneficial interest in the Compensation Agreement, under governing Texas law. "To constitute an agency coupled with an interest, the agent must have a present, **beneficial** interest in the property on which the power is to operate…." Tex. Jur. 3d Agency §35 (emphasis added). *Any equitable interest*, even a mere security interest, is a sufficient interest, when coupled with a power of attorney, to make that power of attorney irrevocable. Nelson v. Consumers County Mutual Ins. Co., 326 S.W.2d 535, 538 (Tex. Civ. App. – San Antonio, 1959, *reh'g denied*).

Pladott has known about the irrevocability of Liner's Power of Attorney for years. Indeed, Pladott has himself previously agreed, in writing, that the Power of Attorney is

- 8 -

BOS_489266_2.DOC/KNOURSE

irrevocable.[3] By letter dated June 3, 2004, <u>Pladott</u> himself stated to the Trustee in Heron's

Bankruptcy (<u>see</u> <u>Exhibit D</u>):

> "Per the legal advice that Ewers has already obtained in the U.S., **_Liner cannot legally revoke this power-of-attorney_**."

See <u>Exhibit D</u>.  Furthermore, on June 22, 2004, Pladott e-mailed Ewers (<u>see</u> <u>Exhibit E</u>):

> "I propose you file an ex-parte motion with the court for a temporary injunction against Liner with a simple limited scope:  that **_Liner cannot directly or indirectly alter, modify or revoke your Power-of-Attorney_** prior to the final ruling in the case before the court."

See <u>Exhibit E</u>.  Pladott's position of last year was and remains correct:  it is his self-

serving <u>change</u> of position that is inexplicable.  Equally inexplicable is Pladott's arrogant

assumption that he can take sides against Liner, or speak for Liner in Federal Court, as he

wishes, without joining Liner as a party, and without any showing that he has authority of

any kind, or standing, to represent Liner!

### (2)  <u>There Are No 'Irregularities' in Ewers' Relationship with EPD.</u>

Pladott advances no more than mere speculation, rather than any concrete evidence, that

"there are many irregularities surrounding Ewers' relationship to EPD, which _call into question_

his authority to act on EPD's behalf and, as a consequence, the validity of the Compensation

Agreement."  Memorandum, p. 3 (emphasis added).  (Pladott's questioning of <u>Ewers'</u> authority

to speak for Ewers' own company, EPD, stands in stark contrast to Pladott's utter failure to posit

---

[3] Liner, Pladott and the Trustee in Bankruptcy have long been in possession of two legal opinions concerning the irrevocability of the POA. One was written by attorney Charles A. Sharman and sent to Ms. Sarah Calhoun, Liner's purported attorney in fact, with a copy to Liner, on May 26, 2004.  Sharman also sent such an opinion letter to Thomas R. Hilberth, a purported "proceeds assignee" of Liner, with copies to Liner and to the Trustee, on June 10, 2004. A second opinion, dated May 7, 2004, was provided to the Trustee by attorney R. Bruce Buckley, a partner in the firm Buckley, Mathews, White & Howell LLP.  Buckley opined that the POA "is irrevocable and coupled with an interest, and can only terminate upon the full and final adjudication, resolution, settlement, and disposal of the Heron Claims;" that "Ewers has the powers enumerated in the [POA] to the exclusion of all other persons or entities, including Liner;" and that "Liner cannot assign ... that which he has already exclusively and irrevocably assigned to Ewers." This opinion is especially significant, since the law firm, Buckley, Mathews, White & Howell LLP, was, on information and belief, Liner's own law firm in connection with the POA.

<u>any</u> authority or standing he has to speak for Liner, or any interest or standing he has individually, as opposed to as a purported Trustee of certain Trusts as to which he proffers <u>no</u> information, in any claims against Heron.)

As support for this untenable position, Pladott cites the Affidavit of Kevin Michaels, which posits, based on no personal knowledge but only on a limited review of a few documents, that "there were no documents on file with the Texas Secretary of State until March 15, 2002 that associated Mr. Ewers with EPD." Michaels Aff., ¶ 6.

Without giving inordinate weight to these flimsy statements, Ewers submits the Affidavit of Don Butler, attached as <u>Exhibit F</u>. Butler makes it unmistakably clear that his role in EPD was to organize the LLC for Ewers, who was, and was intended to be, the sole owner of EPD. Butler Aff. ¶ 2. Butler resigned as the Initial Manager in favor of Ewers, never had an ownership relationship or management role in EPD, and merely filed the paperwork as its Initial Manager. <u>Id.</u> Butler, unlike Michaels, had first-hand personal knowledge of the establishment of EPD and Ewers' ownership interest.

In any event, Pladott's raising of flimsy "questions" about Ewers authority over EPD falls far short of establishing either that Ewers has no such authority. It falls even further short of establishing that Ewers does not have an equitable interest in EPD sufficient to confer upon him, under Texas law, a Power of Attorney "coupled with an interest" – as the POA itself specifically states – sufficient to make the POA "irrevocable" – again, as the POA itself specifically states. Pladott's "questions" do not remotely warrant a pre-determination, on a preliminary basis, prior to a trial on the merits, of the ultimate issues in this case, as Pladott's requested relief seeks.

BOS_489266_2.DOC/KNOURSE

### (3) Pladott Has No Standing To Challenge Liner's Assignment to Ewers Of Heron's Debt To Liner; Pladott's Speculation As To The Propriety Of This Assignment Is Baseless And Amounts To Nothing.

Although Pladott was not a party to the Compensation Agreement, he purports to challenge Ewers' representation that he is a creditor of Heron pursuant to the Compensation Agreement, on the flimsy basis "because there are serious questions regarding its validity and scope." Memorandum, p. 3. Pladott may self-servingly "submit that there was no valid legal assignment of Heron's debt from Liner to EPD" (id.), but he provides no factual basis for such conjecture, and mere conjecture does not begin to satisfy Pladott's threshold burden to demonstrate a substantial likelihood of success on the merits required for this Court to grant Pladott's Motion. Pladott was not a party to the Compensation Agreement; he is not a real party in interest; he has no standing whatsoever to contest Ewers' rights under that Agreement; he has no first-hand knowledge; and his mere say-so amounts to literally nothing.

Equally obviously, Pladott's unauthorized, standing-less speculations are not remotely sufficient basis upon which this Court might determine, as a preliminary matter, that Ewers must be enjoined from even asserting, representing or fully and fairly litigating his rights under the Power of Attorney and the Compensation Agreement!

### (4) Ewers' Actions In Texas Against Liner And Pladott Are Meritorious.

Liner is in breach of both the Compensation Agreement and a Non-Disclosure Agreement dated May 3, 2002. In the Compensation Agreement, Liner agreed "to reimburse EPD [Ewers' wholly-owned company] for all sums expended in the investigation and prosecution of the Bankruptcy Claim...." Liner has never reimbursed Ewers. In the Non-Disclosure Agreement, Liner agreed:

> "Information provided by one Party shall not be disclosed or released by the other Party to any third party.... All information exchanged between

the parties shall be kept strictly confidential.... The Parties agree that the unauthorized disclosure of confidential information in breach of this agreement shall entitle the non-disclosing party to liquidated damages in the full amount of payments received by the disclosing party under the [Compensation Agreement]."

Liner has breached the Non-Disclosure Agreement in wholesale fashion, not merely disclosing confidential information, but making <u>criminal</u> misrepresentations (to an FBI Agent) concerning the Heron Bankruptcy Proceedings and Liner's expectancy interest therein, as a result of which Liner was <u>indicted</u> and <u>convicted</u> for making false statements. As a result of Liner's breaches of the Compensation Agreement and the Non-Disclosure Agreement, in 2003, Ewers commenced the case <u>EPD Management Company, LLC and Larry Ewers v. Howard Eugene Liner</u>, No. 2003-33307, pending in Harris County, Texas (the "Liner Action"). <u>See</u> <u>Exhibit G</u>.

The Liner Action states claims for breach of the Non-Disclosure Agreement, breach of the Compensation Agreement, a Declaratory Judgment "that the power of attorney coupled with an interest given to Ewers by Liner is irrevocable and that Liner's attempts to revoke the power of attorney are of no force or effect," and attorneys' fees. Although the Liner Action was initially dismissed when an attorney representing Ewers went to the wrong court room, the order dismissing the Texas case (to which Pladott was not a party) was subsequently vacated and the case remains pending. <u>See</u> <u>Exhibit H</u>.

Ewers commenced the case <u>Larry Ewers v. Alexander Pladott</u>, No. 2004-43354, pending in the District Court of Harris County, Texas (the "Pladott Action"), alleging breach of contract by virtue of Pladott's failure to shoulder his share of the legal fees and investigation fees expended by Ewers in pursuit of creditors' claims against Heron. <u>See</u> <u>Exhibit I</u>.

The Pladott Action also contains a claim that "Pladott fraudulently induced Ewers to enter into the contract by misrepresenting that he was paying his share of [U.K. Solicitor

- 12 -

Anthony] Feldman's legal fees and would continue to do so." Ewers believes that Pladott did

not pay his share and has failed to pay his share of the fees of successor counsel in the Heron

U.K. Bankruptcy Proceedings. The Pladott Action further alleges that Pladott has failed and

refused to pay anything toward the legal fees incurred in this case, and seeks rescission of any

obligation on Ewers' part to share any proceeds which may eventually be realized as a result of

the debt that Ewers is owed by Heron.

Thus, these issues relating to Liner and Pladott are already under state court adjudication

pending in Texas, and are founded on allegations that merit the relief requested.

### III.    Pladott Cannot Demonstrate Any Cognizable Risk Of Irreparable Harm If Injunctive Relief Is Denied.

Pladott's attempt to articulate any supposed "irreparable harm" if this Court does not

grant his request for a preliminary injunction fails miserably. At best, Pladott states

speculatively that Ewers' representation to other courts that he has an interest in Heron's debt

"may well enable him to secure those assets for his sole benefit in violation of his obligations to

Pladott and his creditors." Memorandum, p. 5. Such a statement fails to demonstrate irreparable

harm to Pladott, amounts to little more than a speculative statement of what Ewers "may" do in

unspecified cases in unidentified jurisdictions, and logically compels the conclusion that Pladott

has a remedy readily available if Ewers were to somehow secure assets for his sole benefit in

violation of any alleged obligations to Pladott and his creditors: file suit to recover whatever

funds Pladott and his creditors believe is rightfully theirs.

In an attempt to redeem his failure to show "irreparable harm," Pladott includes as a red

herring an assertion that "Pladott's creditors would be irreparably harmed in the event that Ewers

secured any of Heron's assets for his sole benefit, as there may not be any other assets available

to satisfy Pladott's [*sic*] creditors." Since Pladott brings this action in his individual name only,

- 13 -

the supposed "irreparable harm" inflicted on creditors – <u>none</u> of whom, other than Ewers, is a

<u>party</u> to this suit – is not germane to this Court's decision to grant or deny Pladott's request for

an extraordinary preliminary injunction.

**IV.    The Balancing Of The Hardships Weighs Heavily In Favor Of<br>Denying Pladott's Request For A Preliminary Injunction.**

If the preliminary injunction were granted, Ewers would stand to lose – on a preliminary

basis, before the presentation of any evidence, without the presence of the real party in interest,

prior to any full and fair adjudication on the merits, and on the mere unverified say-so of an

individual who has <u>no</u> interest in or standing to litigate either the Power of Attorney or the

Compensation Agreement – the right even to assert the benefits of the bargain of those extant

contracts. <u>Neither</u> the Compensation Agreement <u>nor</u> the irrevocable Power of Attorney has been

adjudicated by any Court to have been revoked, rescinded, terminated, or no longer in force.

These agreements, on their face, are valid, enforceable, irrevocable and fully in effect. Thus, the

status quo would be disturbed in an extraordinary way, enjoining Ewers from even <u>asserting</u> his

rights under extant contracts in any court, if Pladott's requested relief were granted. It would

virtually constitute a denial of Ewers' due process rights – the nullification of his contract rights

without the ability to present evidence to a jury, based on the mere say-so of a person who is not

a party to those contracts and has no standing to assert any rights under those contracts!

Pladott, on the other hand, could suffer no cognizable <u>irreparable</u> harm if his Motion is

denied. First, this case is plainly about, and only about, money. Second, if the status quo is

maintained, leaving the Compensation Agreement and the Power of Attorney in effect (albeit

subject to adjudication at a trial on the merits), then even if Ewers were somehow to recover

funds as a creditor of Heron, Pladott may resort to the courts to obtain funds allegedly due him

by Ewers from such recovery.

- 14 -

Ewers has <u>already</u> agreed to the entry of a judgment against Heron in the <u>Ewers vs. Heron</u> case that would permit no distribution of any proceeds without the further Order of this Court! Ewers re-affirms that readiness now. Therefore, apart from baseless (and frankly bizarre) speculations about what Ewers <u>might</u> do in some other <u>unnamed</u> lawsuits in some other <u>undisclosed</u> jurisdictions, Pladott has not begun to make a showing of cognizable, imminent, irreparable harm.

### V.    The Public Interest Would In No Way Be Served By Granting Pladott's Request For A Highly Unusual Injunction.

To the extent that this factor is relevant to Pladott's Motion, granting Pladott's request for a preliminary injunction would be tantamount to annulling the Compensation Agreement and the Power of Attorney, at the request of an individual who is neither a party to those contracts nor has any standing with respect to them, on a preliminary basis, before the presentation of evidence, in the absence of parties necessary for the full and fair adjudication of the rights of the real parties in interest. The public interest weighs in favor of enforcing facially valid private contracts. The public interest weighs heavily <u>against</u> depriving a party to private contracts of the right even to <u>assert, in a court of law,</u> his rights under those contracts, at the request of an individual who is neither a party to nor has any standing with respect to those contracts, on a preliminary basis, before the presentation of evidence, in the absence of parties necessary for the full and fair adjudication of the rights of the real parties in interest, and, as a consequence, without due process of law.

## CONCLUSION

Pladott has no standing. He adduces no *bona fide* evidence to support his contentions. His arguments contradict the language of the contracts that are at issue. His arguments have been previously presented to, and at least preliminarily rejected by, this Court, when this Court

BOS_489266_2.DOC/KNOURSE

denied intervention to Liner and to Pladott's alleged Trusts.  For these and the above-detailed

reasons, Ewers respectfully requests that Pladott's Motion for a Preliminary Injunction be

DENIED, in its entirety, and that Ewers be awarded his costs, including the reasonable attorneys'

fees he incurred in defending against an unfounded, unauthorized, redundant, frivolous motion.

LARRY EWERS

By his attorneys,

_____
Alan M. Spiro (BBO No. 475650)
Kenneth V. Nourse (BBO No. 655781)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
617.439.4444

Dated:  May 20, 2005

## CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that on May 20, 2005, I served a true copy of the above
document by facsimile transmission and by first class mail, postage pre-paid, upon:

Isaac H. Peres
50 Congress Street
Boston, Massachusetts 02109
Fax:  617.367.8840

_____
Alan M. Spiro (BBO No. 475650)

- 16 -

BOS_489266_2.DOC/KNOURSE

# EXHIBIT A

## EXCLUSIVE POWER OF ATTORNEY AND MANDATE

**THAT HOWARD EUGENE LINER,** being one and the same person as H.E. Liner,

Howard E. Liner, and Gene Liner, a resident of Rosenberg, Fort Bend County, Texas, United

States of America, has made, constituted, and appointed, and by these presents does make

constitute, mandate, and appoint **LARRY EWERS** a resident of Corpus Christi, Nueces

County, Texas, United States of America as his sole, exclusive, true, and lawful Attorney-In-

Fact and Mandate for me and to act in my place, and stead for the purpose of doing any and

every act, and exercise any and every power, that I might or could do, and that may be

reasonably necessary regarding the following contracts and matters:

That certain Memorandum of Understanding, dated July 18, 2000 by and
between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner;

That certain Agreement dated January 17, 2002 by and between Howard
Eugene. Liner, AH Ping Ban, Alexander Pladott, Anthony Stephen Feldman,
and Christopher Patrick. Heron;

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE:
Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner;
and

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE:
Christopher Patrick Heron

*(Initial)*

To do any and every act, and exercise any and every power, that I may have that the Attorney-In-Fact and Mandate shall deem proper or advisable, intending hereby to unconditionally vest in the Attorney-In-Fact and Mandate the sole and exclusive power of attorney for conducting any and all business transactions of every nature and kind relating to the contracts, litigation, claims and causes of action asserted by me against Christopher Patrick Heron before the Court in the above referenced matters, including without limiting the generality of the powers granted herein, the full exclusive right and authority to compromise and settle said matters.

This Exclusive Power Of Attorney And Mandate shall not terminate on my disability, is irrevocable, and coupled with an interest, and shall only terminate upon the full and final adjudication, resolution, settlement, and disposal of the referenced matters and contracts. I agree that anyone dealing with said Attorney-In-Fact and Mandate  may rely upon the statement(s) of such Attorney-In-Fact and Mandate, that this Exclusive Power Of Attorney and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon me and my heirs or assigns.  An affidavit, executed by the Attorney-In-Fact and Mandate stating that he does not have, at the time of doing an act pursuant to this Exclusive Power Of Attorney and Mandate, actual knowledge of the revocation or termination of this Exclusive Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-revocation and non-termination of the power at that time.

I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate shall lawfully do, or cause to be done by virtue of this Exclusive Power Of Attorney and

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 2

(Initial)

Mandate along with the rights and powers granted herein, all acts necessary in the prosecution of the claims asserted in the referenced matter and the rights granted under said contracts. Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Exclusive Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Exclusive Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate.

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 18th of June, 2002, which shall become effective as of the 11th day of January, 2002 for all purposes.

_Howard E. Liner_
**Howard Eugene Liner**

**THE STATE OF TEXAS** §
§
**COUNTY OF** _Harris_ §

This Exclusive Power of Attorney and Mandate was acknowledged before me on the _18th_ day of June, 2002, by Howard Eugene Liner.

TRACY STECK
MY COMMISSION EXPIRES
February 3, 2004

_Tracy Steck_
Notary Public In And For
The State Of Texas

**EXCLUSIVE POWER OF ATTORNEY AND MANDATE**
Page 4

_HEL_
(Initial)

# EXHIBIT B

## COMPENSATION AGREEMENT

This Compensation Agreement (**"Agreement"**) is entered into on this the 3rd day of May, 2002, but shall be effective as of the 1st day of July, 2001 by and between Howard E. Liner (**"Liner"**), a resident of Rosenberg, Fort Bend County, Texas and E.P.D. Management Company, L.L.C. (**"EPD"**), a Texas limited liability company, with its principal place of business being 13726 Suntan, Corpus Christi, Texas 78418.

### WITNESSETH:

**WHEREAS,** Liner is the owner and holder of certain claims and causes of action against Mr. Christopher Patrick Heron (**"Heron"**), which arise as a result of Heron's breach of the terms of a certain Memorandum of Understanding dated July 18, 2000 between Heron, Liner and Hsin-Ming Chuo (**"Chuo"**);

**WHEREAS,** Liner caused to be filed on March 4, 2002 a bankruptcy petition asserting various claims against Heron in *Cause No. 1625 of 2002 styled In The High Court Of Justice In Bankruptcy RE: Christopher Patrick Heron* (**"Bankruptcy Claim"**);

**WHEREAS,** EPD by and through its managing manager, Mr. Larry Ewers has provided to Liner personal services and financial support in the investigation and prosecution of the Bankruptcy Claim; and

**WHEREAS,** Liner and EPD mutually desire to continue with the Bankruptcy Claim seeking a mutually satisfactory resolution of the Bankruptcy Claim;

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Liner and EPD hereby agree as follows:

1.    Liner does hereby assign, transfer, and convey to EPD, fifty percent (50%) interest in and to the Bankruptcy Claim, including, without limitation, fifty percent (50%) of all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the Bankruptcy Claim. Liner and EPD stipulate and agree that all sums to be received by Liner as a result of the compromise, settlement, resolution, execution, or collection of the



Bankruptcy Claim shall be deposited into the appropriate trust account of mutually agreeable legal counsel.   Designated legal counsel shall oversee the disbursal of all sums received in accordance with the terms of this Agreement.   Said legal counsel shall provide Liner and EPD with a full accounting of all fees incurred, interest earned and disbursements made.

2.    Liner agrees to reimburse EPD for all sums expended in the investigation and prosecution of the Bankruptcy Claim, which shall include without limitation, all legal fees, investigators fees, travel costs and/or other verifiable costs and expenses, with an offset to Liner for all sums expended in the investigation and prosecution of the Bankruptcy Claim.

3.    Liner hereby represents and warrants that the payment of sums hereunder by Liner to EPD relate solely to the claims and causes of action asserted by Liner in the above referenced Bankruptcy Claim. Liner further represents and warrants to EPD that he is the owner and holder of his claims asserted in the Bankruptcy Claim.

4.    Liner hereby agrees to defend, indemnify, save, and hold harmless EPD, its officers, directors, shareholders, members, or managers from and against any and all claims, demands, causes of action, and damages of any third parties (i) claiming an interest in the Bankruptcy Claim or any proceeds derived therefrom, (ii) any fees relating to this   Agreement, or (iii) claiming an interest in the underlying transaction set forth herein, together with any court costs, attorney's fees or other costs or expenses arising therefrom.

All   the   terms,   provisions,   covenants,   obligations,   indemnities, representations, warranties and conditions of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns.   Any assignment of the parties rights hereunder shall be made expressly subject to all of the terms, provisions, covenants, obligations, indemnities, representations, warranties and conditions of this Agreement.

Each Party hereto shall from time to time do and perform such further acts and execute and deliver such further instruments, assignments and documents as may be required or reasonably requested by the parties hereto to carry out and effect the intentions and purposes of this Agreement.

The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and this Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

This Agreement embodies the entire agreement between the parties, superseding all prior agreements, negotiations, letters of intent, arrangements and understandings related to the subject matter hereof either written or oral, and may only be supplemented, altered, amended, modified, or revoked by a writing signed by duly authorized representatives of all the parties hereto. Notwithstanding the provisions of this paragraph, no party shall be bound by, subject to, or deemed a party to, any agreement between the parties which have not been duly executed by, or on behalf of, such party.

Any of the terms, provisions, covenants, representations, warranties or conditions hereof may be waived only by a written instrument executed by the party waiving compliance. Except as otherwise expressly provided in this Agreement, the failure of any party at any time or times to require performance of any provision hereof shall in no manner affect such party's right to enforce the same.

This Agreement and the rights and obligations of the parties hereunder shall be governed by and interpreted, construed and enforced in accordance with the substantive and procedural laws of the State of Texas. The parties agree that the negotiation, offer and acceptance and performance of the Agreement shall be deemed to have occurred in Houston, Harris County, Texas.

This Agreement may be executed in one or more counterparts, all of which may be deemed to be an original document. A facsimile copy of this signed Agreement will be treated as an original for all purposes.

---

**COMPENSATION AGREEMENT**
**PAGE 3**

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written, to be effective as of the effective date set forth above.

**HOWARD E. LINER**                    **E.P.D. MANAGEMENT COMPANY, L.L.C.**

**"Liner"**                                      **"EPD"**

By: _H. E. Liner_                         By: _Larry Ewers_

Howard E. Liner                              Larry Ewers, President

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS, )<br><br>    Plaintiff, )<br><br>v. )<br><br>HOWARD EUGENE LINER, CREDITORS )<br>COMMITTEE OF THE BANKRUPTCY ESTATE )<br>OF CHRISTOPHER PATRICK HERON, AH PING )<br>BAN, FLAMECREST ENTERPRISES LIMITED )<br>TRUST, BALZ RUDOLPH WOLFENSBERGER )<br>TRUST, )<br><br>    Plaintiff-Intervenors, )<br><br>v. )<br><br>CHRISTOPHER PATRICK HERON, )<br>CORPORATION OF THE BANKHOUSE, INC. )<br>SOCIETE BANKHOUSE, AND )<br>JAMES F. POMEROY, II, )<br><br>    Defendants. )| CIVIL ACTION NO.<br>04-10024-RWZ |

AFFIDAVIT OF R. BRUCE BUCKLEY

    I, R. Bruce Buckley, being duly sworn, under the penalty of perjury, depose and say:

1.    I am over twenty-one years of age, have never been convicted of a felony, am a citizen of the United States residing in Harris County, Texas, and make the following statements of my own personal knowledge and recollection.

2.    I am duly licensed and in good standing to practice law in the State of Texas and a partner in the law firm of Buckley, Mathews, White & Howell, L.L.P. located in Houston, Texas.

3.    During the years 2000 through 2002, my law firm represented Howard Eugene Liner with respect to various transactions involving Larry Ewers. At no time during this period did I or any member of my law firm simultaneously represent Mr. Ewers during

this time period in any matter whatsoever, and have not represented Mr. Ewers in any matter since that time.

4.      My firm, in particular, represented Liner in the preparation of that certain Compensation Agreement dated May 22, 2002, between Liner and E.P.D. Management Company, L.L.C., and that certain Exclusive Power of Attorney and Mandate, dated May 22, 2002, effective as of January 11, 2002, from Liner to Larry Ewers. Both documents were prepared by my firm at Mr. Liner's direction, with his approval, and were signed by him in my presence.  To the best of my knowledge and belief, everyone involved in this transaction, including Mr. Liner, was very aware that E.P.D. Management Company, L.L.C. was owned by Mr. Ewers. On or about June 18, 2002, Liner instructed my firm to prepare another Exclusive Power Of Attorney And Mandate instrument to Larry Ewers for Liner's execution, said instrument to be dated June 18, 2002, and effective as of January 11, 2002.The June 18, 2002, Exclusive Power Of Attorney And Mandate was not executed in my presence, but was to be executed before a Notary Public in and for the State of Texas.

5.      As compensation for the legal services rendered to Liner by the firm, Liner executed and delivered to me that certain Fee Agreement dated November 9, 2000, and that certain Amendment to Contingent Fee Agreement effective May 9, 2002, between Liner and Buckley, Mathews, White & Howell, L.L.P.  These two (2) instruments are the only instruments which the firm has with regard to fees for legal services rendered to Liner. The firm has no fee agreement or arrangement with Larry Ewers for legal fees to be paid for legal services of any nature or kind rendered to Larry Ewers.

Date: October 27, 2004
Houston, Texas

_____
R. BRUCE BUCKLEY

STATE OF TEXAS          §
                                          §
COUNTY OF HARRIS     §

This instrument was acknowledged before me on October 27, 2004, by **R. Bruce Buckley**.



CHRIS T. LOVING
MY COMMISSION EXPIRES
February 9, 2007

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

# EXHIBIT D

# ALEX PLADOTT

20000 WINNETKA PLACE
WOODLAND HILLS, CA 91364 USA
(818) 710-0804   FAX: (818) 594-5735   E-MAIL: SS4RE@AOL.COM

Thursday, June 3, 2004

Mr. Malcolm Harris
Valentine & Co
London, UK
VIA FACSIMILE:  011-44-208-343-4486

RE:    CP Heron in Bankruptcy – Mr. Ewers' Power-of-Attorney

Dear Malcolm,

Mr. Ewers will provide you shortly with a conclusive legal opinion from a reputable UK solicitor related to any allegations of revocation of Mr. Ewers' "Exclusive Power-of-Attorney and Mandate" executed and notarized on June 18, 2002 by Howard Eugene Liner.

Per the legal advice that Mr. Ewers has already obtained in the US, Mr. Liner cannot legally revoke this power-of-attorney.

Thank you for your cooperation in the above matter.

Thank you.

Sincerely,


Alex Pladott

CC:   Larry Ewers

# EXHIBIT E

**lewers@stx.rr.com**

| | |
|---|---|
| **From:** | <Ss4re@aol.com> |
| **To:** | <lewers@stx.rr.com> |
| **Sent:** | Tuesday, June 22, 2004 8:16 PM |
| **Subject:** | Liner |

Mr. Ewers,

I propose that you ask your lawyers about the following idea considering:

A.   That you currently have a legal case against Liner in the court
B.   That you have an Exclusive Power-of-Attorney and Mandate dated 6/12/02
C.   The letter to you dated April 12, 2004 on behalf of Liner.

I propose you file an ex-parte motion with the court for a temporary injunction against Liner with a simple limited scope:  That Liner cannot directly or indirectly alter, modify or revoke your Power-of-Attorney prior to the final ruling in the case before the court.

That might work.

Regards,

Alex

6/24/2004

# EXHIBIT F

## AFFIDAVIT OF DON BUTLER

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Don Butler, a person whose identity is known to me. After I administered an oath to him, upon his oath, he said:

1.   My name is Don Butler. I am over the age of twenty-one (21) years, have never been convicted of a felony, and am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.   In 1998, I signed and filed with the Texas Secretary of State Articles of Organization to create E.P.D. Management Company, L.L.C. ("EPD") as a limited liability company under the laws of the State of Texas. On October 18, 1998, I met with Mr. Larry Ewers to organize EPD. I resigned as the Initial Manager in favor of Mr. Larry Ewers, who was, and was intended to be, the sole owner of EPD. I do not have, and have never had, an ownership interest or management role in EPD; I merely filed the paperwork as the Initial Manager.

3.   Other than Mr. Ewers and one of his attorneys, Mr. Charles Sharman, no one has ever contacted me to ask whether Mr. Ewers was the sole owner of EPD.

_____
Don Butler

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned notary public, this
20 day of May 2005.


_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



JOHN L. NETTUNO, SR.
MY COMMISSION EXPIRES
September 5, 2005

# EXHIBIT G

NO. 2003-33307

| | | |
|---|---|---|
| E.P.D. MANAGEMENT | § | IN THE DISTRICT COURT OF |
| COMPANY, L.L.C. AND LARRY EWERS | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| HOWARD EUGENE LINER | § | 151st JUDICIAL DISTRICT |

### PLAINTIFFS' FIRST AMENDED PETITION AND PETITION FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

E.P.D. Management Company, L.L.C. ("EPD") and Larry Ewers ("Ewers") (collectively "Plaintiffs") and file this their First Amended Petition and Petition for Declratory Judgment complaining of Howard Eugene Liner ("Liner" or "Defendant"), and, as grounds, would show the Honorable Court the following:

#### Discovery

I.

Pursuant to Rule 190 of the Texas Rules of Civil Procedure, discovery in this matter will be conducted under a Level 2 Discovery Control Plan.

#### Parties & Venue

II.

EPD is a Texas limited liability company with its principal place of business located in Corpus Christi, Nueces County, Texas.

Ewers is an individual resident in Corpus Christi, Nueces County, Texas.

Liner is an individual resident in Rosenburg, Fort Bend County, Texas, but is currently serving a federal sentence in Minnesota. Liner may be served with process in this action at Sherburne County Jail, 13880 Highway 10, Elk River, Minnesota 55330.

Venue is proper in this Honorable Court because the causes of action arose in Harris County, Texas and the contract between the parties expressly provides for venue in Harris County, Texas.

Facts

III.

On May 3, 2002, Plaintiffs entered into two related contracts with Liner. The first was a Compensation Agreement, a true and correct copy of which is attached as Exhibit A and incorporated as if fully set out herein (the "Compensation Agreement"); and the second was a Non-Disclosure Agreement, a true and correct copy of which is attached as Exhibit B and incorporated as if fully set out herein (the "Non-Disclosure Agreement.") In the Compensation Agreement, Liner conveyed to EPD a fifty percent interest in and to certain claims against Christopher Patrick Heron pending in a bankruptcy proceeding in the United Kingdom. The Non-Disclosure Agreement required the parties to keep all information concerning Mr. Heron and the bankruptcy proceeding confidential.

On June 18, 2002, Liner granted Ewers exclusive and irrevocable power of attorney coupled with an interest with respect to all matters pertaining to Mr. Heron and the bankruptcy proceedings. A true and correct copy of the power of attorney is attached as Exhibit C and incorporated as if fully set out herein.

IV.

Unbeknownst to Plaintiffs, the Lower Sioux Indian Community in Minnesota and the Upper Sioux Community sued Liner in the United States District Court for the District of Minnesota, alleging state and federal securities violations, RICO violations and common law fraud and conversion. Among the allegations raised by the Sioux, are misrepresentations by Liner that he

2

transferred their money to "a trader named Chris Patrick Heron" who stole the "trading profits." A true and correct copy of the Complaint is attached as Exhibit D and incorporated as if fully set out herein.

On March 6, 2003, the United States District Court for the District of Minnesota in a civil action brought by the United States against Liner on behalf of the Sioux, granted a Preliminary Injunction against Liner enjoining him from further fraudulent investment schemes and freezing his assets. A true and correct copy of the Preliminary Injunction Order is attached as Exhibit E and incorporated as if fully set out herein.

Liner was indicted in federal court in Minnesota on March 11, 2003. Included among numerous wire fraud and related allegations was one count of false statement to FBI Special Agent Drew Helms wherein Liner misrepresented that "he had been successful in a lawsuit in England and had recovered all investor's funds...." A true and correct copy of the Indictment is attached as Exhibit F and incorporated as if fully set out herein. Mr. Liner was convicted on numerous counts, including the count for false statement to an FBI agent. Mr. Liner is currently serving a federal sentence in Minnesota.

V.

Despite the preliminary injunction against him and in a transparent attempt to evade the injunction, by letter dated March 18, 2003, Liner wanted Ewers "to instruct the Bankruptcy Court to transmit" millions of dollars to an alleged "escrow account" in Kentucky of the law firm of Ware, Bryson, West & Kummer, P.L.L.C. Then, according to Liner's scheme, the monies would be disbursed by instruction from an attorney named Thomas L. Kummer (who apparently is not a member of that law firm), a resident of Reno, Nevada but licensed to practice law in North Carolina.

3

This Mr. Kummer is apparently related to a John R. Kummer, who is a member of Ware, Bryson, West & Kummer, P.L.L.C..

This convoluted request was supposedly triggered by Liner's "understanding" that "some or all of the Bankruptcy Estate will be disbursed to satisfy my claims in the near future." A true and correct copy of the Letter re Kummer is attached as Exhibit G and incorporated as if fully set out herein. Ewers also received a document entitled "Escrow Instructions" dated March 18, 2003 concerning Kummer. A true and correct copy of the Escrow Instructions is attached as Exhibit H and incorporated as if fully set out herein. These Escrow Instructions provide for $1 million payments to both Thomas Kummer and to a Mary Sheffield from whom Ewers would also receive a letter. In addition, the Escrow Instructions included an unsolicited attempt to bribe Ewers into cooperating with Liner by providing for a payment to Ewers of $100,000 "for legal fees."

Liner thus tried to persuade or bribe Ewers to get (nonexistent) money from the bankruptcy court in the United Kingdom transferred to a bank account of a law firm in Kentucky to be controlled by another lawyer halfway across the country in Nevada; all in direct violation of the Preliminary Injunction against Liner issued by the federal court in Minnesota where Liner was then under indictment for wire fraud and money laundering. Immediately upon receiving Liner's outrageous proposal, Ewers repudiated the Escrow Instructions and refuted Liner's false "understanding" that any proceeds would be distributed from the bankruptcy proceedings in the near future by letter of April 4, 2003. A true and correct copy of Ewers' April 4 letter to Liner is attached as Exhibit I and incorporated as if fully set out herein.  A true and correct copy of the certified receipt showing Liner's receipt of this letter is attached as Exhibit J and incorporated as if fully set out herein.

By yet another letter dated March 18, 2003, Liner wrote Ewers to "advise" him that he had

4

entered into General Powers of Attorney with a Denise Lorraine and a Sarah Calhoun to handle
funds transfers to Tom Kummer's account. A true and correct copy of the letter re Lorraine is
attached as Exhibit K and incorporated as if fully set out herein. A copy of a General Power of
Attorney granted to Denise Lorraine was also forwarded to Ewers. A true and correct copy of the
Lorraine Power of Attorney is attached as Exhibit L and incorporated as if fully set out herein.

Ewers also received yet another letter dated March 18, 2003, from Mary L. Sheffield, Trustee
of the Staatfield Trust, with an address in Eugene, Oregon, "regarding funds being transferred." A
true and correct copy of the Sheffield letter is attached as Exhibit M and incorporated as if fully set
out herein.

On March 19, 2003, Liner was arrested to face trial on the criminal indictment in federal
court in Minnesota. On March 21, 2003, Liner filed a Chapter 13 bankruptcy proceeding in the
United States Bankruptcy Court for the Southern District of Texas in Houston, again in violation of
the Preliminary Injunction issued by the federal court in Minnesota. The Chapter 13 proceeding was
dismissed with prejudice against any further filings by Liner by Order of the Bankruptcy Court on
March 31, 2003.

Also unbeknownst to Plaintiffs, in 2001 Liner was sued by a Mary Ann Knezek in Houston
in Cause No. 2001-16450 in the 157th Judicial District Court, Harris County, Texas. As with his
other victims, Liner fed Ms. Knezek and her attorney confidential information about Mr. Heron and
the bankruptcy proceedings mixed with lies and false promises of payment. Ms. Knezek obtained
judgment against Mr. Liner in 2003.

In December 2003, in violation of the federal injunction against him in Minnesota, Liner
entered into an agreement with a Thomas Hilberth, an attorney, "to pay to him on behalf of an

investment group the sum of $6,000,000.00" from Liner's alleged "entitlement" in the United

Kingdom bankruptcy action against Chris Heron. Liner wrote to the Trustee in the Heron bankruptcy,

Mr. Malcolm Harris, attempting to authorize him to recognize Mr. Hilberth. Mr. Hilberth, through

a United Kingdom solicitor, attempted to intervene in the bankruptcy proceedings. At the same time,

Mr. Liner attempted by correspondence to Mr. Ewers, copied to the Mr. Harris, the Trustee in the

Heron bankruptcy, to revoke Mr. Ewers' power of attorney from Liner.

Causes of Action - Breach of Contract

VI.

The Non-Disclosure Agreement states: "All information exchanged between the parties shall

be kept strictly confidential and shall not under any circumstances except where expressly authorized

herein be disclosed, revealed, reproduced or transmitted to any third party." Liner has breached the

Non-Disclosure Agreement by releasing information concerning Mr. Heron, Plaintiffs and the

bankruptcy proceeding in the United Kingdom on numerous occasions and to numerous third parties,

including the Sioux Indian Community and the five individuals from North Carolina to Oregon

named above, an FBI agent, Ms. Knezek and her attorney, Mr. Hilberth, his investment group and

his United Kingdom solicitor. Compounding these breaches, Liner has knowingly and intentionally

mixed false and fraudulent statements with the confidential information and has attempted to embroil

Plaintiffs in his own fraudulent conduct and violations of a federal injunction.

Liner's apparent involvement in Ponzi schemes to defraud investors and pocket their money

has nothing whatsoever to do with Plaintiffs or with the underlying dealings with Mr. Heron or the

currently pending claims in the Heron bankruptcy proceedings in the United Kingdom. No Sioux

funds, nor Ms. Knezek's funds, nor the funds of anyone else who ever invested with Liner were paid

6

to any of Plaintiffs or included in any dealings with Mr. Heron that underlie the claims against Mr. Heron in bankruptcy. No investor's monies have been recovered in the bankruptcy case as no investor's monies were ever invested with Mr. Heron by Liner. In fact, there have been no disbursements of any kind from the Heron bankruptcy proceedings and there are no disbursements pending in the near future. Liner has lied and misrepresented the status of the bankruptcy proceedings and his dealings with Plaintiffs to all of these parties in an attempt to divert attention from his criminal and fraudulent conduct and to foist his troubles onto the shoulders of the innocent Plaintiffs.

Plaintiffs have performed all conditions precedent under the contracts with Liner and Liner's breaches of contract have proximately caused damages to Plaintiffs. These damages are on-going and serious but difficult to quantify. Accordingly, under the terms of the contracts, Plaintiffs are entitled to liquidated damages for the breach of the confidentiality provisions. These liquidated damages are the full amount of the remaining fifty percent of Liner's claims presently pending in bankruptcy proceedings in the United Kingdom for which Plaintiffs now sue.

<u>Causes of Action - Breach of Contract</u>

VII.

Plaintiffs have diligently prosecuted the claims against Mr. Heron under the terms of the contracts between the parties and have expended at least $785,000 in travel costs, legal fees, court costs and professional time in the investigation and prosecution of the claims against Mr. Heron. Plaintiffs continue to expend sums in this effort. Under the terms of the contracts, Mr. Liner was to have reimbursed Plaintiffs for such expenses. Liner, in fact, has contributed absolutely nothing to the action against Mr. Heron. In an effort to excuse his breach of his promise to pay the expenses of

7

litigation, Liner misrepresented to Plaintiffs that he was formerly employed by the United States Central Intelligence Agency. Liner assured Plaintiffs that if Plaintiffs succeeded in placing Mr. Heron in bankruptcy, Liner's former colleague code named "Bill" (allegedly still with the CIA) would assist in locating Mr. Heron's assets. No such assistance has ever been forthcoming.

Liner's failure and refusal to reimburse Ewers' expenses is a breach of the contracts. Liner's failure to pay these expenses in breach of his obligation has proximately caused damages in the amount of at least $785,000 to Plaintiffs for which damages they now sue.

<u>Petition for Declaratory Judgment</u>

VIII.

Plaintiffs further seek declaratory judgment that the power of attorney coupled with an interest given to Mr. Ewers by Liner is irrevocable and that Liner's attempts to revoke the power of attorney are of no force or effect.

<u>Attorney's Fees</u>

IX.

As a result of the breaches of contract of Liner and the necessity to bring a declaratory judgment action, Plaintiffs have been forced to retain the services of counsel to enforce the contract. Accordingly, Plaintiffs are entitled to court costs and reasonable and necessary attorney's fees for which they now sue.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs E.P.D. Management Company, L.L.C. and Larry Ewers respectfully pray that Defendant Howard Eugene Liner be cited to appear and that, upon final hearing, that Plaintiffs have and recover a judgment against Liner vesting title in them of all of the remaining fifty percent interest of Liner in the claims against Mr. Heron pending

8

in the United Kingdom as liquidated damages, for the sum of $785,000.00 together with additional

sums proven by Plaintiffs as damages at the time of trial, a declaratory judgment that Ewers' power

of attorney is in full force and effect and cannot be revoked by Liner, and for Plaintiff's reasonable

and necessary attorney's fees and court costs, pre- and post-judgment interest on the sums awarded,

and such other and further relief, both general and specific, legal and equitable, to which Plaintiffs

may show themselves justly entitled.

Respectfully submitted,

Charles A. Sharman
SBOT No. 18114400
Nine Greenway Plaza, Suite 3040
Houston, Texas 77046

Tel. 713 655 1195
Fax 713 655 1197

ATTORNEY FOR PLAINTIFFS

9

# EXHIBIT H

NO. 2003-33307

| | | |
|---|---|---|
| E.P.D. MANAGEMENT | § | IN THE DISTRICT COURT OF |
| COMPANY, L.L.C. AND LARRY EWERS | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| HOWARD EUGENE LINER | § | 151ST JUDICIAL DISTRICT |

### ORDER GRANTING MOTION FOR NEW TRIAL

On ___March 21___, 2005, the Court considered Plaintiffs' Motion for New Trial

and finding that the Motion is meritorious and should be granted. It is therefore,

ORDERED that Plaintiffs' Motion for New Trial is GRANTED, and

It is further,

ORDERED that the Court's Order of January 10, 2005, dismissing Plaintifffs' claims

with prejudice, is VACATED, and

It is further,

ORDERED that Defendant's Motion to Dismiss is DENIED *at this time.*

SIGNED: ___March 21___, 2005.

_Caroline Baker_
JUDGE PRESIDING

FILED
CHARLES BACARISSE
District Clerk

FEB 14 2005

Harris County, Texas

By_____ Deputy



RECORDER'S MEMORANDUM
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of imaging.

# EXHIBIT I

NO. **2 0 0 4 - 4 3 3 5 4**



| | | |
|---|---|---|
| LARRY EWERS | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALEXANDER PLADOTT | § | 133 JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now Larry Ewers ("Ewers" or "Plaintiff") and files this his Original Petition complaining of Alexander Pladott ("Pladott" or "Defendant"), and, as grounds, would show the Honorable Court the following:

#### Discovery

#### I.

Pursuant to Rule 190 of the Texas Rules of Civil Procedure, discovery in this matter will be conducted under a Level 2 Discovery Control Plan.

#### Parties & Venue

#### II.

Ewers is an individual resident in Corpus Christi, Nueces County, Texas.

Pladott is an individual resident in Woodland Hills, California. Pladott may be served with process in this action at 20000 Winnetka Place, Woodland Hills, California 91364.

Venue is proper in this Honorable Court because the causes of action arose in Harris County, Texas.

1

Facts

III.

On or about July 2000, Christopher Patrick Heron ("Heron"), a resident of London, England, entered into a contract with Howard Eugene Liner ("Liner") and Hsin Ming Chuo also known as Alex Cho ("Cho"). Heron breached the contract. In 1998 and 1999, Heron entered into and then subsequently breached contracts with Ah Ping Ban ("Ban"), the Flamecrest Enterprises Limited Trust ("Flamecrest") and the Balz Rudolf Wolfensberger Discretionary Trust ("Wolfensberger").

In 2001, Pladott approached Ewers, who was acting on behalf of Cho and Liner, to suggest that the Heron creditors should act together to bring legal proceedings against Heron in England. Pladott represented that he and Anthony Feldman, a member of the English bar, were the Trustees of both Flamecrest and Wolfensberger. Pladott represented to Ewers that Flamecrest and Wolfensberger had previously sued Heron in England but their suit had been dismissed for technical reasons. Pladott suggested that Feldman would represent all of the parties in the proposed litigation against Heron and that each party would pay its pro rata share of the costs and expenses of the suit, including Feldman's legal fees. Pladott proposed that a proceeding under English law would entail two steps: the first called a "Statutory Demand" which would result in a judgment for the respective debt owed to each of the parties whose contract was breached by Heron followed by placing Heron in bankruptcy.

Ewers agreed to accept Pladott's proposal, and, accordingly, on September 3, 2001, Anthony Feldman, on behalf of these three creditors, filed Statutory Demand against Heron. Heron contested the Statutory Demand. Pladott, over the next several months, convinced Ewers to bring in Ban as another supporting creditor to enhance the claims against Heron despite the dilutive effect of adding

2

an additional creditor in respect to the original creditors. Accordingly, on December 14, 2001, Feldman filed a Statutory Demand on behalf of Ban against Heron. Unbeknownst to Ewers, Pladott secured an agreement with Ban that awarded Pladott and Feldman thirty percent of any funds collected attributable to Ban's claim.

On January 17, 2002, the four creditors entered into an agreement with Heron in an effort to settle the lawsuit. Heron breached the agreement, and according to the terms of the agreement, the four creditors were awarded judgments against Heron by the English court. Heron did not pay the judgments and was declared to be in bankruptcy under English law on June 18, 2002. A trustee was appointed, Mr. Malcolm Harris ("Harris" or "Trustee"), who was also represented by Pladottt's co-trustee, Anthony Feldman.

From June 2002, the parties have attempted to conduct discovery into the location of Heron's assets. Ewers has acted for Cho and Liner under irrevocable powers of attorney granted to him. The costs and expenses of the Trustee and the legal work continued to be funded by Ewers under the belief that he was funding only Cho/Liner's pro rata share.

In late 2002, Ewers was told that Anthony Feldman had been disbarred weeks earlier in November 2002 by the English bar and had sold his practice to another law firm, Garcia Martin. Ewers and Pladott, upon the recommendation of the Trustee, then arranged for a new law firm to represent the creditors and the Trustee: Butcher Burns of London. Feldman resigned as trustee of both Flamecrest and Wolfensberger, and Susan Stone, Pladott's girlfriend, was made trustee in Feldman's place. On January 2, 2003, Ewers and Pladott entered into a Memorandum of Understanding attached to and made a part of this pleading as Exhibit A. On January 29, 2003, another agreement was executed by Ewers and Pladott, attached to and made a part of this pleading

as Exhibit B. On April 24, 2003 and on May 5, 2003, Ewers and Pladott executed another agreement ( the latter version being notarized but otherwise identical ) attached to and made a part of this pleading as Exhibits C and D respectively.

Information from Heron revealed that he had assets under an account named "Syndicate 150" allegedly under the control of a Boston based company named Corporation of the Bankhouse, Inc. ("COB") which in turn was controlled by James Pomeroy ("Pomeroy"). Ewers and Pladott went to Boston and met with representatives of other creditors of COB and Pomeroy. Ewers decided to sue Pomeroy, COB and Heron in Boston and retained Mr. Alan Spiro of Edwards & Angell to do so. Ewers offered Pladott the opportunity to join the lawsuit against Heron and Pomeroy in Boston, subject to Pladott's paying his share of the expense of Edward & Angell.  Pladott refused to participate or pay any part of the expenses in the Boston litigation. Ewers filed in federal court in Boston against COB, Pomeroy and Heron. Throughout the Boston litigation, Ewers kept the Trustee, the Trustee's English lawyer and Pladott informed of the progress of that litigation. At considerable expense, Ewers obtained a ruling that Pomeroy and Heron were in default and filed for a final default judgment against them.  In July 2004, before the court ruled on the motion for default judgment, Pladott filed a *pro se* letter with the federal court followed by a motion to intervene in the Boston litigation wanting the court to include his claims as part of the judgments against Heron and Pomeroy and falsely accusing Ewers of attempting to defraud and conceal his actions from the Trusteee and Pladott.

In the English bankruptcy proceeding against Heron, Pladott inundated the lawyers for the Trustee and creditors with correspondence and email which significantly increased the costs as the Trustee's lawyer was required to review and respond to each of them. Ewers repeatedly asked Pladott

4

to stop hounding the lawyers because of the increased costs. Pladott ignored those requests. By the end of 2003 Butcher Burns withdrew and yet another English law firm had to be retained and brought up to speed on the case, Lawrence Graham. The same pattern of a barrage of Pladott emails ensued with the necessary consequence of driving up the legal fees. Lawrence Graham eventually decided that a conflict of interest prevented them from acting on behalf of both Pladott and the Trustee and therefore required the creditors to obtain other counsel. Once again Ewers was required to retain another English law firm and pay for their education in the case.

Pladott in the summer of 2004, insisted upon forming a creditor's committee in the Heron bankruptcy. By dividing his claim among his three controlled creditors, he stacked the creditors committee with his son, his girlfriend and himself, allegedly representing Ban, Flamecrest and Wolfensberger. This ensured Pladott of a majority of the members of the creditors committee. The Trustee has stated that unless the creditors committee advances large sums of money to cover the continuing costs of the bankruptcy, he will resign. Pladott, through his captive creditors commitee, has refused to pay any amount toward the expenses of the Trustee or the Trustee's lawyers effectively ending any progress toward discovery of Heron assets.

### Causes of Action - Breach of Contract

### IV.

The oral and written agreements between Ewers and Pladott constitute a single contract. The contract requires the parties to cooperate with one another and to pay the expenses of the investigation and prosecution of Heron and the recovery of Heron assets on a pro rata basis. Any Heron assets realized from these joint endeavors were also to be divided on a pro rate basis: 71.49% to Ewers and 28.51% to Pladott. Pladott has breached the contract by failing and refusing to pay his

5

share of the costs and expenses. On information and belief, Pladott has never paid any of the legal fees and costs of the English proceedings. Ewers has paid at least $785,000 in costs and expenses. Pladott has refused to cooperate with Ewers and has caused greatly increased legal fees which Ewers has had to pay. Pladott's breach of the contract has proximately caused damages to Ewers of at least $223,803.50 for which damages Ewers now sues.

<u>Causes of Action - Rescission</u>

### V.

In the alternative, Pladott fraudulently induced Ewers to enter into the contract by misrepresenting that he was paying his share of Feldman's legal fees and would continue to do so. Pladott paid nothing to Feldman and, on information and belief, has refused to pay any of the fees of Garcia Martin, Butcher Burns or Lawrence Graham. Pladott has paid nothing to Edwards & Angell and now seeks to force his way into the Boston action after all of the work and expense had been done. Pladott intended Ewers to rely on his false representations of payment and Ewers did rely on those false representations to his injury. Pladott's lack of payment and his lack of cooperation under the circumstances of continued litigation against Heron in Boston and England have proximately caused irreparable injury to Ewers for which there is no adequate remedy of monetary damages. Ewers seeks judgment that rescinds the contract and relieves him of any obligation to share any proceeds he may eventually realize as a result of his efforts to collect the debt he is owed by Heron.

<u>Attorney's Fees</u>

### VI.

As a result of the breaches of contract of Pladott, Plaintiff has been forced to retain the

6

services of counsel to enforce the contract. Accordingly, Plaintiff is entitled to court costs and reasonable and necessary attorney's fees for which he now sues.

Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff Larry Ewers respectfully prays that Defendant Alexander Pladott be cited to appear and that, upon final hearing, that Plaintiff has and recovers a judgment against Pladott for damages in the sum of $223,803.50.00 together with additional sums proven by Plaintiff as damages at the time of trial, or in the alternative for judgment that all agreements between Ewers and Pladott with respect to the Heron matters are rescinded and of no further force or effect, and for Plaintiff's reasonable and necessary attorney's fees and court costs, pre- and post-judgment interest on the sums awarded, and such other and further relief, both general and specific, legal and equitable, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

Charles A. Sharman
SBOT No. 18114400
Nine Greenway Plaza, Suite 3040
Houston, Texas 77046

Tel. 713 655 1195
Fax 713 655 1197

ATTORNEY FOR PLAINTIFF

7

**EXHIBIT A**

Received Fax :   Feb 24 2004 3:35PM    Fax Station :  Texas Standard Oil              p.  3

02/24/2004  04:31    0000000000                              PAGE  09
   Feb 24 04 03:17p    Larry Ewers              501 615 0801

# MEMORANDUM OF UNDERSTANDING

## January 2, 2003

We, the undersigned creditors in the Settlement Agreement dated January 17, 2002 with debtor Christopher (Chris) Heron, hereby appoint Alex Pladott to act for and on our behalf in order to:

1. Negotiate with Chris Heron in order to reach a settlement with him to conclude our bankruptcy case against him: #1625 of 2002 in the High Court of Justice in Bankruptcy, London, UK, and

2. Coordinate all legal activities related to our legal rights as creditors with the Trustee, Malcolm Harris, in case #1625 of 2002 in the High Court of Justice in Bankruptcy, London, UK.

The undersigned creditors have read, approved and executed this Memorandum of Understanding on the day and year first before written.

_Larry Ewers_

Howard Eugene Liner
By his attorney-in-fact, Larry Ewers


Benny Ah Ping Ban
By his attorney, Seng Fai Chan


Balz Rudolf Wolfensberger Discretionary Trust
By its Trustee, Alex Pladott


Flamecrest Enterprises Limited Discretionary Trust
By its Trustee, Alex Pladott

**EXHIBIT B**

02/24/2004  04:31    0000000000
     Feb 24 04 03:18p    Larry Ewers              361  949-9258           PAGE  04
                                                                          p.7

## AGREEMENT

This Agreement is entered into this 29 day of January, 2003, between Larry Ewers of 13726 Suntan Avenue, Corpus Christi, Texas 74818 (Mr. Ewers) and Alexander Pladott of 20000 Winnetka Place, Woodland Hills, California 91364 (Mr. Pladott).

### Recitals

A.    Mr. Ewers is acting pursuant to a power of attorney for certain creditors of Christopher Patrick Heron (Mr. Heron).

B.    Mr. Pladott is acting as Trustee of two trusts which are also creditors of Mr. Heron.

C.    Mr. Ewers and Mr. Pladott wish to cooperate regarding recovery of assets of Mr. Heron located outside the United Kingdom.

### Agreement

In consideration of the above Recitals, the mutual promises and agreements contained herein and other good and valuable consideration, receipt of which is acknowledged by all parties, the parties agree as follows:

1.    **Joint Bank Account.** The parties shall open a joint account at a bank in the United States to be arranged by Mr. Ewers (the Bank Account). The Bank Account shall be operated solely with the joint signatures and instructions of Mr. Ewers and Mr. Pladott.

2.    **Deposits.**    Monies recovered which may belong to Mr. Heron may be deposited in the Bank Account pending final determination by competent authority that they belong in fact to Mr. Heron and may be applied against the debts owed by Mr. Heron.

3.    **Division of Funds.** In the event that recovered monies may be applied against the indebtedness of Mr. Heron, all expenses of Mr. Ewers and Mr. Pladott, respectively, in recovering the monies shall first be paid. The balance of monies shall then be paid in the following proportions: 71.49% to Mr. Ewers and his group and 28.51% to Mr. Pladott and his group.

4.    **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.    **Interpretation.** This Agreement shall be interpreted and construed under the laws of the United States of America and under the laws of the State of Texas.

IN WITNESS WHEREOF, the parties have executed and acknowledged this Agreement as of the day and year first set forth above.


_____            _____
LARRY EWERS                              ALEXANDER PLADOTT

**EXHIBIT C**

Received Fax :          Feb 24 2004 3:35PM          Fax Station : Texas Standard Oil          p. 2

02/24/2004  04:31    0000000000                                          PAGE   02
     Feb 24 04 03:16p     Larry Ewers          361   949-8258            p. 4
                              Date: 02/23/2003  Time: 2:35:10 PM         Page 2 of 5

# AGREEMENT

This Agreement is entered into this 24 day of April, 2003, between Larry Ewers of 13726 Suntan, Corpus Christi, Texas 78418 (Mr. Ewers) and Alexander Pladott of 20000 Winnetka Place, Woodland Hills, California 91364 (Mr. Pladott).

## Recitals

A.   Mr. Ewers is acting pursuant to a power of attorney for certain creditors of Christopher Patrick Heron (Mr. Heron).

B.   Mr. Pladott is acting as Trustee of two trusts which are also creditors of Mr. Heron and pursuant to a power of attorney for AliPing Shan, another creditor of Mr. Heron.

C.   Mr. Ewers and Mr. Pladott wish to cooperate regarding recovery of assets of Mr. Heron.

## Agreement

In consideration of the above Recitals, the mutual promises and agreements contained herein and other good and valuable consideration, receipt of which is acknowledged by all parties, the parties agree as follows:

1.   Deposits.   Monies recovered, which may belong to Mr. Heron, frozen in a bank account pending final determination by a order of a Court of competent jurisdiction or qualified legal opinion authorizes they belong to Mr. Heron and may be applied against the debts owed by Mr. Heron will be dispersed in accordance to item number two (2) of this Agreement. Any funds which may be received from a settlement agreement with Mr Heron will be dispersed in accordance to item number two (2) of this Agreement.

2.   Division of Funds.   In the event that recovered monies may be applied against the indebtedness of Mr. Heron, all expenses without limitation of all legal fees, investigators fees, travel costs and/or other verifiable costs and expenses, with an offset to the parties for all sums expended in the investigation and prosecution of the Heron debt. After all expenses have been deducted and made payable to the parties the balance of monies shall then be paid in the following proportions: 71.49% to the Ewers Group and 28.51% to the Pladott Group per agreements each Group has in place between themselves. The two (2) signatories to this Agreement are not responsible for the dispersing of funds to any individual other than those in their respective Group.

Initials: _____     Initials: _____

Received Fax :        Feb 24 2004 3:35PM    Fax Station :   Texas Standard Oil        p. 3

02/24/2004  04:31   0000000000                          361   949-8258         PAGE  03
   Feb 24 04 03:17p    Larry Ewers                                              p.5
                                                                               Page 3 of 5

3.    Confidentiality.    The parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective family members, heirs, members in the Ewers Group, members in the Pladott Group, employees, officers and agents shall keep confidential) any information which it or they may acquire in relation to the Heron debt and shall not disclose such information except with the consent of the other party or parties to this Agreement or in accordance with the order of a Court of competent jurisdiction. The parties to this Agreement shall procure that family members, heirs, members of the Ewers Group, members of the Pladott Group, employees, officers, and agents of each of them observe a similar obligation of confidence in favour of the parties to this Agreement. The obligation of the parties shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement. For the purpose of this provision the expression (party) shall include the subsidiary companies or any party and any other company controlled by that party and family member, heirs, members of the Ewers Group, members of the Pladott Group, employees, officers or agents of that party and such subsidiary or controlled companies. Penalty for such breach of this Confidentiality clause shall be determine by a Court of competent jurisdiction under the laws of the State of Texas.

4.    Counterparts    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.    Interpretation.    This Agreement shall be interpreted and construed under the laws of the United States of America and under the laws of the State of Texas.

IN WITNESS WHEREOF, the parties have executed and acknowledged this Agreement as of the day and year set forth above.

LARRY EWERS                                                              )

In the presence of:                                                      )

                                                                         )

ALEXANDER PLADOTT                                                        )

In the presence of:                                                      )

                                                                         )

Initials: _____    Initials: _____

**EXHIBIT D**

Received Fax :        Feb 24 2004 3:55PM      Fax Station : Texas Standard Oil          p.  5

02/24/2004  04:31    8000000000                                              PAGE  05
   Feb 24 04 03:20p    Larry Ewers              381  849-8258                 P.5

# AGREEMENT

This Agreement is entered into this __5__ day of May, 2003, between Larry Ewers of 13726 Suntan, Corpus Christi, Texas 78418 (Mr. Ewers) and Alexander Pladott of 20000 Winnetka Place, Woodland Hills, California 91364 (Mr. Pladott).

## Recitals

A. Mr. Ewers is acting pursuant to a power of attorney for certain creditors of Christopher Patrick Heron (Mr. Heron).

B. Mr. Pladott is acting as Trustee of two trusts which are also creditors of Mr. Heron and pursuant to a power of attorney for Al Ping Ban, another creditor of Mr. Heron.

C. Mr. Ewers and Mr. Pladott wish to cooperate regarding recovery of assets of Mr. Heron.

## Agreement

In consideration of the above Recitals, the mutual promises and agreements contained herein and other good and valuable consideration, receipt of which is acknowledged by all parties, the parties agree as follows:

1. Deposits.   Monies recovered, which may belong to Mr. Heron, frozen in a bank account pending final determination by a order of a Court of competent jurisdiction or qualified legal opinion authorizes they belong to Mr. Heron and may be applied against the debts owed by Mr. Heron will be dispersed in accordance to item number two (2) of this Agreement. Any funds which may be received from a settlement agreement with Mr. Heron will be dispersed in accordance to item number two (2) of this Agreement.

2. Division of Funds.   In the event that recovered monies may be applied against the indebtedness of Mr. Heron, all expenses without limitation of all legal fees, investigators fees, travel costs and/or other verifiable costs and expenses, with an offset to the parties for all sums expended in the investigation and prosecution of the Heron debt. After all expenses have been deducted and made payable to the parties the balance of monies shall then be paid in the following proportions: 71.49% to the Ewers Group and 28.51% to the Pladott Group per agreements each Group has in place between themselves.  The two (2) signatories to this Agreement are not responsible for the dispersing of funds to any individual other than those in their respective Group.

Initials: __ℒ__     Initials: __A.P__

3.   **Confidentiality.**   The parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective family members, heirs, members in the Ewers Group, members in the Pladott Group, employees, officers and agents shall keep confidential) any information which it or they may acquire in relation to the Heron debt and shall not disclose such information except with the consent of the other party or parties to this Agreement or in accordance with the order of a Court of competent jurisdiction. The parties to this Agreement shall procure that family members, heirs, members of the Ewers Group, members of the Pladott Group, employees, officers, and agents of each of them observe a similar obligation of confidence in favour of the parties to this Agreement. The obligation of the parties shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement. For the purpose of this provision the expression (party) shall include the subsidiary companies or any party and any other company controlled by that party and family member, heirs, members of the Ewers Group, members of the Pladott Group, employees, officers or agents of that party and such subsidiary or controlled companies. Penalty for such breach of this Confidentiality clause shall be determine by a Court of competent jurisdiction under the laws of the State of Texas.

4.   **Counterparts.**   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.   **Interpretation.**   This Agreement shall be interpreted and construed under the laws of the United States of America and under the laws of the State of Texas.

IN WITNESS WHEREOF, the parties have executed and acknowledged this Agreement as of the day and year set forth above.

_Larry Ewers_
Larry Ewers

THE STATE OF TEXAS       {
COUNTY OF  Nueces        {

This Agreement was acknowledged before me on the 5th day of May, 2003, by Larry Ewers

_Leslie D. Light_
Notary Public In And For
The State Of Texas

Initials: ___   Initials: ___

LESLIE D. LIGHT
Notary Public
State of Texas
My Comm. Exp. 04-14-2007

Received Fax : Feb 24 2004 3:59PM Fax Station : Texas Standard Oil p. 7

02/24/2004 04:31 0000000000 PAGE 07

Feb 24 04 03:22p Larry Ewers 361 949-8258 p.11

_Alexander Pladott_

THE STATE OF CALIFORNIA
COUNTY OF _Los Angeles_

This Agreement was acknowledged before me on the _7_ day of May, 2003, by
Alexander Pladott.

Notary Public In and For
The State Of California

DANIEL GARRISON
COMM. #1345476
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. March 14, 2006

Initials: _____ Initials: _____