UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALEXANDER PLADOTT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-10356-RWZ |
| LARRY EWERS, | ) | |
| JOHN DOES 1 – 5 | ) | |
| JOHN DOES 6 – 10, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY TO THE OPPOSITION OF LARRY EWERS TO MOTION FOR A PRELIMINARY INJUNCTION

The Plaintiff, Alexander Pladott ("Pladott"), is seeking an order from this Court retraining and enjoining the Defendant, Larry Ewers, from representing to any court or third-party that he is a direct creditor of Christopher Patrick Heron ("Heron"), by way of a Compensation Agreement dated May 3, 2002 between E.P.D. Management Company, LLC and Howard Eugene Liner, or otherwise.

In the past, Ewers has made representations to this Court that he is a direct creditor of Heron, or at least has sought to create that false impression. For example, an Affidavit filed by Ewers in a related case [Ewers v. Heron, 04-10024-RWZ], states that "Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire ***$1,980,000.00 due and payable to Ewers*** on January 25, 2002." (emphasis added). A copy of the Affidavit is annexed hereto. Later in that same document, the

affiant speaks of "the full amount *owed by Heron to Ewers*, or $1,980,000.00" (emphasis added).

The reality, however, is that Heron owes $1,980,000.00 to Ewers' principal, Howard Eugene Liner ("Liner"), and *not* to Ewers, who is merely an agent of Liner. Thus, the debt is properly described as being owed *to Liner* and not to Ewers. Moreover, in all of his dealings with Pladott, Ewers has always represented himself and conducted himself as Liner's agent. At a hearing conducted before this Court on October 28, 2004 in the related case, however, the following colloquy occurred:

> THE COURT: The original complaint doesn't have Ewers suing in any representative capacity?
>
> MR. SPIRO: Excuse me. Ewers is not suing in any representative capacity, your Honor.
>
> THE COURT: Yeah, Ewers is suing as Ewers.
>
> MR. SPIRO: Yes, your Honor.

Indeed, the Judgment which Ewers sought to obtain in the related case is in his own name, and not in his capacity as attorney-in-fact for his principal, Howard Eugene Liner ("Liner"). Certainly, any court or third-party presented with that Judgment would assume that Ewers is a direct creditor of Heron.

This is an important distinction. Pladott believes that Ewers wishes to establish himself as a direct creditor of Heron because it will enable him to circumvent any undertaking that Ewers has agreed to with Pladott's creditors on behalf of Liner. It would also enable him to avoid any constraints imposed upon him by the Power of Attorney granted to him by Liner, the January 17, 2002 Settlement Agreement in which Heron's debt to Liner was acknowledged, and/or the Compensation Agreement between Liner and

2

E.P.D. The fact is that *Liner* has an undisputed obligation to share any recovery from Heron with Pladott's creditors. Ewers does not dispute this fact. See Complaint and Answer, ¶ 33. If Ewers convinces another court or some third party that Heron owes him money directly, he can argue that he is not bound, as Liner's agent, to share any recovery from Heron's assets with Pladott's creditors since he does not derive his rights from his status as Liner's agent. This would enable him, of course, to recover assets for his sole benefit, to the exclusion of Pladott's creditors. Ewers has already filed lawsuits in Texas in which he seeks a judicial declaration that he is not obligated to share any recovery with Liner or Pladott -- representing that Heron is directly indebted to him is a logical extension of that very same position. This is why Pladott is requesting this Court to restrain him from making any such further representations.

In his Opposition, Ewers states that Pladott "has no standing to challenge Liner's assignment of Heron's debt to Liner". On the contrary, the January 17th Agreement specifically states that "none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to the Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement." Thus, Pladott's creditors do have a right to challenge any assignment by Liner of his rights under the January 17th Agreement to Ewers if the assignment was not approved by them in writing, which it was not.

Lastly, Pladott wishes to bring to the attention of this Court the fact that he has submitted a Proposed Judgment to Ewers, and that the Court of Appeals for the First Circuit has stayed any decision in the related case until the parties have had an

3

opportunity to negotiate the terms of this Proposed Judgment. A copy of the Proposed Judgment is annexed hereto.

ALEXANDER PLADOTT

By his Attorney,

/s/
Isaac H. Peres, BBO #545149
50 Congress Street
Boston, MA 02109
(617) 722-0094

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2005, I served a copy of this Motion, by hand delivery, upon Alan Spiro in the United States District Court for the District of Massachusetts.

/s/
Isaac H. Peres

#14

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY EWERS,
    Plaintiff,

v.

CHRISTOPHER PATRICK HERON,
CORPORATION OF THE BANKHOUSE, INC.,
SOCIETE BANKHOUSE, and
JAMES F. POMEROY, II,
    Defendants.

CIVIL ACTION
NO. 04-10024-RWZ

### AFFIDAVIT OF ALAN M. SPIRO IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHRISTOPHER PATRICK HERON

I, Alan M. Spiro, on oath depose and state as follows:

1. I am a partner of Edwards & Angell, LLP. I am lead counsel in this case for plaintiff Larry Ewers ("Ewers").

2. Defendant Christopher Patrick Heron ("Heron") is a citizen of the Republic of Ireland, who resides at 21 Dale House, Boundary Road, London, NW8, in the United Kingdom. Heron is not an infant or incompetent person, is not in military service, and is not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940.

3. Process was served on Heron on April 7, 2004, pursuant to Article 5(b) and 6 of The Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters.

4. Service of the Complaint was effected on Heron at his residence, 21 Dale House, Boundary Road, London, United Kingdom, by delivery in hand on Heron, who,

according to the Process Server's Certificate of Service, "accepted it voluntarily" on April 7, 2004.

5. Proof of Service was filed in this Court on April 20, 2004, including the originals of:

(A.) Certificate of Service, stamped by the Central London County Court;

(B.) Certificate of Compliance with the Hague Convention, sworn before John Leonard, Solicitor.

6. Heron's response to the Complaint was due on April 27, 2004.

7. Upon application of the Plaintiff, Notice of Default against Heron was entered on June 4, 2004, for failure to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure.

8. As of the present date, no response to the Complaint has been served on the plaintiff or reported as filed with the Court.

9. As of the present date, no response to the Notice of Default has been served on the plaintiff or reported as filed with the Court.

10. Plaintiff seeks entry of judgment seeking a sum certain of $1,980,000,000 on each of Counts II – IV of the Complaint (but without duplication), trebled to $5,940,000,000 under Count V. These sums are calculated as follows.

11. In an Agreement dated January 17, 2002, a true copy of which is attached hereto as Exhibit A (the "Agreement"), Heron admitted to his debt, defined as the "Cho/Liner Debt," in the amount of $1,980,000,000. See Exhibit A at § 1.15. Heron admitted in § 3.3 of the Agreement that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt."

12. Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became, and remains, the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all of Liner's rights under the Agreement. A true copy of the Power of Attorney is attached as Exhibit B. Pursuant to the Power of Attorney, the $1,980,000,000 Cho/Liner Debt is payable to Ewers.

13. In the Agreement, Heron agreed to pay "the Settlement Sum," defined in § 1.19 of the Agreement as "Seventy percent of the liquidated value of the Heron Net Worth." Heron agreed in § 4.1 of the Agreement to remit the Settlement Sum by "the Payment Date," defined in § 1.18 of the Agreement as January 24, 2002. The parties further agreed that "time shall be of the essence." § 4.1.

14. Heron did not pay the Settlement Sum by the Payment Date, nor has he paid the Settlement Sum at any time thereafter.

15. Heron agreed that the Settlement Sum would extinguish the debt currently owed to Ewers only if "the Settlement Sum is paid by Mr. Heron on or before the Payment Date." Agreement § 6. Other conditions were also imposed, and were not fulfilled by Mr. Heron, but Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire $1,980,000,000 due and payable to Ewers on January 25, 2002.

16. Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the courts of the United States and the United Kingdom. Furthermore, the Trustee of the Heron Bankruptcy Proceedings has been informed of, and consented to,

BOS_451808_1/ASPIRO

the prosecution of this action by Ewers. Therefore, there is no bar to maintaining the present action to judgment.

17.  On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, again admitting under oath the debt that is the subject of this lawsuit.

18.  Count II of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for fraud and conspiracy to commit fraud. With respect to Heron, the damages have been established: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that his debt to Ewers is $1,980,000,000. Judgment should be entered in favor of Ewers and against Heron in the amount of $1,980,000,000, plus interest as provided by law.

19.  Count III of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for constructive trust. In summary, the Complaint alleges that if COB and Pomeroy maintain "any benefit from assets transferred from Heron," they "will be unjustly enriched" (Complt. ¶ 48), and the Complaint seeks a constructive trust in favor of Ewers (Complt. ¶ 49). With respect to Heron, the amount of this claim has been liquidated: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt is $1,980,000,000, and a constructive trust should be imposed on all funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, up to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided by law.

20.  Count IV of the Complaint states a claim against Heron (and against Defendants COB and Pomeroy) in the nature of an action to reach and apply. In

summary, the Complaint alleges that "Heron transferred assets to the Defendants without consideration, and with the intent to hinder, delay and defraud" Ewers. With respect to Heron, the amount of this claim has been established: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt is $1,980,000,000, and the Court should (a) permanently enjoin Heron, COB and Pomeroy from using, selling, conveying, transferring, assigning, pledging, encumbering, hypothecating or otherwise disposing of any funds or assets held or obtained by any of them from Heron, directly or indirectly, up to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided by law, and (b) apply any funds or assets held by Heron or obtained by any of the Defendants from Heron, directly or indirectly, up to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided by law.

21.     Count V of the Complaint states a claim against Heron under G.L. c. 93A for treble damages and attorneys' fees. Because of the substantial amount of the claim, and in order to simplify this application for entry of final judgment, the Plaintiff waives his claim to attorneys' fees, and seeks the amount of his acknowledged damages, $1,980,000,000, trebled pursuant to G.L. c. 93A to $5,940,000,000, plus interest as provided by law.

22.     I make this Affidavit solely in connection with Plaintiff's Application for a Default Judgment. I neither intend nor expect to be a witness in this case.

Signed under the penalties of perjury this 9th day of July, 2004.

Alan M. Spiro   BBO # 471650

- 5 -

BOS_451808_1/ASPIRO