UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALEXANDER PLADOTT,           )
     Plaintiff,              )
                             )
v.                           )          CIVIL ACTION
                             )          NO. 05-10356-RWZ
LARRY EWERS, et al.,         )
     Defendants.             )
_____)

## MOTION FOR SANCTIONS
## AGAINST PLAINTIFF ALEXANDER PLADOTT

### Introduction

Defendant Larry Ewers moves for sanctions against Plaintiff Alexander Pladott, for two reasons: first, because Pladott's Motion for a Preliminary Injunction ("Motion") sought unprecedented relief that was not remotely "warranted by existing law or by a nonfrivolous argument" with respect thereto, within the meaning of Fed.R.Civ.P. 11(b)(2); and second, because after hearing on the Motion, Pladott attempted to get his way by extortion, and when denied, carried out his extortionate threat and engaged in the misuse of discovery in a Texas case (to which he was not a party) so as to damage and defame Ewers among his business partners, thereby demonstrating an "improper purpose, such as to harass," within the meaning of Fed.R.Civ.P. 11(b)(1).

### I. Pladott's Motion for a Preliminary Injunction Was Frivolous.

Pladott sought an extraordinary "order restraining and enjoining ... Ewers ... from representing to any court or third-party that he is a direct creditor of Christopher Patrick Heron...." Motion, p. 1. In so doing, Pladott not only took statements from pleading utterly out of context so as to create a false impression that Ewers was mischaracterizing his status to the Court, but more fundamentally, challenged contracts to which he was not a party, and with

respect to which he had and has no standing. He sought an order prohibiting a *bona fide* party to those contracts – Ewers – from asserting his rights under those contracts, even in Court. He proceeded in the absence of the other party to the contracts – Liner – purporting to assert Liner's rights, without any proffer whatsoever that he had any authority to do so, and when on other occasions he had taken the opposite position and recommended that Ewers seek an injunction against Liner. Finally, Pladott sought this extraordinary gag order, restricting what Ewers could argue even to a Judge, in Court, on a preliminary basis – before any witness was called, before a trial on the merits, before any possible full and fair adjudication, without the presence of the other party to the contract. Indeed, the gag order that Pladott sought would literally have precluded a full and fair adjudication, because Ewers would have been precluded even from asserting his view of his rights under his contracts with Liner. In short, Pladott presumed to speak for Liner; Liner would not be present as a party; and Ewers would be prohibited from stating his case. This is not litigation as we know it: it is a man trying to control and manipulate people as to matters in which he has no direct interest in the absence of the real party in interest.

Moreover, this was Pladott's second attempt to make precisely the same arguments. He had made those arguments in the course of his Motion to Intervene in Ewers v. Heron et al., No. 04-10024-RWZ (D. Mass, Jan. 7, 2004) (the "Ewers vs. Heron Litigation"). In that case, at least the actual party to the relevant contracts – Liner – was a named party, represented by counsel. The Court heard the arguments, and denied Liner's (and Pladott's) intervention. Undeterred, Pladott simply took a second bite at the apple, this time proceeding without Liner.

Ewers will not repeat the detailed arguments made in his Opposition to Pladott's Motion for a Preliminary Injunction, which Opposition is incorporated herein by reference. Ewers will address only one new argument raised at oral argument on the Motion for Preliminary Injunction

and in a Reply Brief dated June 16, 2005 (the "Reply"): the argument that Pladott has standing

to assert Liner's rights under Liner's contracts with Ewers, because:

> "the January 17th Agreement specifically states that 'none of the Parties ...
> shall be entitled to assign this Agreement or any of its rights and
> obligations ... except as may be otherwise approved in writing by the
> other parties to the Agreement...."

Reply at p. 3. This new argument is frivolous, for at least three reasons.

First, the January 17th Agreement itself recites:

> "As Witness the hands of Larry Ewers in exercise of a Power of Attorney
> under the hand of the said Howard Eugene Liner dated the 11th day of
> January 2002."

See Pladott Aff. Ex. A at p. 8. Thus, Ewers signed the January 17th Agreement for Liner, as

Liner's attorney in fact. Any suggestion by Pladott that Liner's Power of Attorney to Ewers

somehow violated the January 17th Agreement, or that the "non-assignment" provision of the

January 17th Agreement prohibited the Power of Attorney or gave Pladott any standing to assert

Liner's alleged rights with respect thereto, is absurd. Ewers had his power of attorney *ab initio*.[1]

In addition, Ewers, through E.P.D. Management Company, L.L.C. ("EPD"), had entered

into a Fee Agreement with Liner dated November 9, 2000, long before the January 17, 2002

Agreement. The Compensation Agreement, although dated May 3, 2002, was "effective as of

the 1st day of July 2001." Again, to suggest that Pladott has standing to assert Liner's rights

against Ewers under the January 17, 2002 Agreement, with respect to a pre-existing agreements

between Liner and Ewers, that Liner himself ratified a few months later, is absurd.

The Compensation Agreement itself recites:

> "Whereas, EPD by and through its manager, Mr. Larry Ewers has
> provided to Liner personal services and financial support in the

---

[1] Liner signed three other Powers of Attorney in Ewers' favor, dated January 11, 2002, May 21, 2002 and June 18, 2002. The June 18, 2002 Power of Attorney recited that "This Exclusive Power of Attorney and Mandate ... is irrevocable, and coupled with an interest...." Answer, Ex. D.

> investigation and prosecution of the Bankruptcy Claim … Liner does
> hereby assign, transfer, and convey to EPD, fifty percent (50%) interest in
> and to the Bankruptcy Claim, including, without limitation, fifty percent
> (50%) of all sums to be received by Liner as a result of the compromise,
> settlement, resolution, execution or collection of the Bankruptcy Claim."

Thus, Pladott's arguments that, e.g., the Compensation Agreement was not with

Ewers but with EPD, or did not constitute a genuine assignment, are utterly

unmeritorious: Liner explicitly recognized both Larry Ewers' personal contributions, and

the connection between Ewers and EPD, and knowingly gave Ewers – in return for his

"personal services and financial support," a beneficial interest in any proceeds recovered

in connection with Liner's contract rights and claims against Heron. Even more

fundamentally, however, Pladott's arguments cannot be litigated by a stranger to the

relevant contracts, in the absence of the real party in interest – Liner.

Second, in the agreements upon which Pladott himself relies to assert his rights – i.e.,

Pladott's several contracts with Ewers – Pladott himself acknowledged that "Mr. Ewers is acting

pursuant to a power of attorney," and in each of the agreements Pladott agreed, with respect to

the "division of funds," that:

> "After all expenses have been deducted and made payable to the parties
> the balance of monies shall then be paid in the following proportions:
> 71.49% to the Ewers Group and 28.51% to the Pladott Group *per*
> *agreements each Group has in place between themselves*. The two
> signatories to this Agreement are not responsible for the dispersing of
> funds to any individual other than those in their respective group."

*See both* Opp. Ex. C (Pladott/Ewers Agreement dated April 24, 2003), Opp. Ex. D

(Pladott/Ewers Agreement dated May 5, 2003). Thus, Pladott knew and agreed, from the

beginning, that Ewers and Liner had "*agreements … in place between themselves*." Pladott

cannot be heard to argue belatedly, for the first time in mid-2005, that these agreements – the Fee

Agreement dated November 9, 2000 and the Compensation Agreement dated May 3, 2002 –

　　　　　　　　　　　　　　　　　　　　　　　BOS_496683_1/KNOURSE

each signed by Liner himself, somehow violated the non-assignment clause of the January 17,
2002 Agreement. These pre-existing agreements were the whole basis for the subsequent
agreements between Pladott and Ewers. Pladott ratified these agreements, acquiesced in them,
and knowingly waived any objection he might have had.

Moreover, because Pladott agreed in his contracts with Pladott that the "two signatories
to this Agreement (Pladott and Ewers) are not responsible for the dispersing of funds to any
individual other than those in their respective group," Pladott cannot presume to speak for Liner
with respect to Liner's rights of distribution from Ewers. But that is precisely what Pladott does:
he repeatedly argues Liner's rights.[2]

Third, the prohibition on assignment is not the basis upon which Pladott is proceeding in
his underlying claims. To the contrary, Pladott wants a judgment to enter in the Ewers v. Heron
Case: he simply wants a piece of that judgment for himself. Therefore, Pladott's position is
utterly hypocritical: on the one hand, Pladott recognizes Ewers' right to proceed against Heron,
and wants to piggy-back on that right and obtain a stake in the outcome; and on the other hand,
Pladott argues – based on contracts to which he is not a party – that Ewers has no rights.[3]

Thus, Pladott's position is profoundly hypocritical; it has been repeatedly waived; and
Pladott has no standing to seek what amounts to a final judgment in Liner's favor against Ewers.

_____

[2] To take only a few examples, in Pladott's Reply he argues: "Heron owes $1,980,000.00 to Ewers' principal,
Howard Eugene Liner ('Liner'), and not to Ewers, who is merely an agent of Liner. Thus, the debt is properly
described as being owed to Liner and not to Ewers" (Reply, p. 2); "the judgment which Ewers sought to obtain in
the related case is in his own name, and not in his capacity as attorney-in-fact for his principal, … Liner" (id.);
"Ewers wishes to … avoid any constraints imposed upon him by the Power of Attorney granted to him by Liner…"
(id.). Who is Pladott to make these arguments? Where is Liner?

[3] Pladott's hypocrisy is compounded by his previous admissions, squarely contrary to his current position. Pladott
has known about the irrevocability of Liner's Power of Attorney for years. Indeed, Pladott has himself previously
agreed, in writing, that the Power of Attorney is irrevocable. By letter dated June 3, 2004, Pladott himself stated:
"Per the legal advice that Ewers has already obtained in the U.S., Liner cannot legally revoke this power-of-
attorney." (Opp. Ex. D). On June 22, 2004, Pladott e-mailed Ewers: "I propose you file an ex-parte motion with
the court for a temporary injunction against Liner with a simple limited scope: that Liner cannot directly or
indirectly alter, modify or revoke your Power-of-Attorney prior to the final ruling in the case before the court."
(Opp. Ex. E). Pladott clearly does not, and cannot, consistently represent Liner's interests. He has no standing.

## II. **Pladott's Post-Hearing Attempted Extortion Shows Bad Faith.**

The Court held a hearing on Pladott's Motion for Preliminary Injunction on June 16.

Perhaps the hearing did not go as Pladott wished: one week later, on June 23, Pladott's attorney,

Isaac Peres, sent Ewers' attorney a letter attaching a scurrilous document. *See* Exhibit A. Just

as, in this litigation, Pladott has presumed to assert Liner's rights, in the June 23 letter, Pladott

presumed to speak for Mr. Ewers' investors and partners in EPD, with whom Pladott has

absolutely no connection. The letter states:

> "My client, Alexander Pladott, has recently obtained banking
> records from the Bank of America in Houston, Texas for E.P.D.
> Management co., LLC. These records appear to identify persons
> who have invested in E.P.D. and reflect *what your client, Larry
> Ewers, did with the investors' monies.* I have attached a report
> related to these records...."

> "Please be advised that *if your client, Larry Ewers, does not settle*
> the above mentioned case within the time parameters designated
> by Judge Zobel ... *my client intends to follow up on the leads*
> provided by these banking records to the fullest extent possible,
> including conducting the depositions of the persons involved."

The underlying records on which Pladott's scurrilous summary was based were obtained

in a Texas case to which Pladott was not a party.[4] More fundamentally, Pladott is not an investor

in EPD or in Emery Resources, Inc. He has no colorable or cognizable interest in relations

between Ewers and those investors. He has as little standing to ride in on his white horse to their

defense, as he does to assert Liner's rights. Nor was that his true intention.

Pladott's real threat was to send scurrilous information to Mr. Ewers' business partners if

Mr. Ewers did not accede to Pladott's settlement proposal. On the date that this Court (Zobel, J.)

had set as a deadline for the parties to agree upon a judgment (and on which, in fact, a settlement

counter-proposal was sent to his attorney), Pladott followed through on his extortionate threat:

---

[4]   The records were obtained by subpoena in the case <u>E.P.D. Management Company, L.L.C. and Larry Ewers v.</u>
<u>Liner</u>, Cause No. 2003-33307 in the 151st Judicial District Court of Harris County, Texas. Pladott is not a party.

BOS_496683_1/KNOURSE

he sent a copy of the defamatory document attached to Mr. Peres' letter to one Donald H. Wiese,

a business associate of Mr. Ewers identified on page 13 of the document as "the Secretary and

Vice President of Emery Resources Inc." ("Emery") – a company with which, again, Pladott has

absolutely no connection. *See* Exhibit B.

The document contains many *unsupported, false and defamatory statements*. For

example, in addition to listing "deposits from major private investors" (and getting these

purported facts themselves wrong), the document adds scurrilous commentary:

- "The EPD bank account records also detail how … $82,259 of *investors' money was used to pay for Ewers' personal lifestyle and debt related to his bankruptcy.*" (p. 2).

- "The EPD bank account records show that Ewers spend {*sic*} approximately $81,002 during this period of time from his investor-funded EPD bank account *to support his lifestyle*." (p. 3).

- "The EPD bank account records show that Ewers spent $128,122 from private investors' funds during this period *to support his lavish lifestyle, including child support payments required by a paternity judgment against him*." (p. 6).

- "The EPD bank account records show that Ewers spent $312,455 from private investors' funds during this period *to support his lavish lifestyle*." (p. 10).

- "The EPD bank account records show that Ewers spent $135,335 from private investors' funds during this period *to support his lavish lifestyle, including child support payments required by a paternity judgment against him*." (p. 12).

- "The first four parties [including one major Texas law firm, one of Ewers' private attorneys in Texas, a longstanding Ewers business partner and friend, and that friend's company] …. actions permitted Ewers to create the *false impression that he was a Heron creditor*." (p. 13).

- "Amount Ewers spent to support his lifestyle: $738,173." (p. 14)

Pladott's spurious 'methodology' for calculating the amounts of money that Ewers

purportedly used "to support his lavish lifestyle" was merely to add the payments that Pladott

- 7 -                                                    BOS_496683_1/KNOURSE

identified as legal fees and investigations into Heron, subtract this number from total "investments," and then simply *assume* and *speculate* that all other EPD disbursements were used "to support [Ewers'] lavish lifestyle."

In fact, Pladott, because he is not a shareholder, investor, partner, member or anything else in respect of EPD or Emery, has no idea what the various businesses of EPD or Emery are. He has no idea what EPD actually used its money for, and therefore only speculates as to how its funds were spent. Pladott simply *fabricated* his claims about Ewers' "lavish lifestyle" out of thin air. Pladott *falsely stated* – to a business associate of Mr. Ewers with whom Pladott has no connection whatsoever – that Ewers used EPD funds to pay "*child support payments required by a paternity judgment against*" Ewers. In fact Ewers made no such "child support payments," and Pladott cannot and does not offer any evidence to support his scandalous, impertinent, vile and outrageous libel.

Pladott obviously has no standing to meddle into the intra-corporate affairs of EPD or Emery. He obviously does not represent Ewers' old friends, partners and attorneys. Pladott was merely maliciously and officiously interfering – threatening to make scurrilous statements, to persons with whom he had and has no legitimate legal relationship whatsoever, for the wholly improper purpose of extorting Ewers to accede to his demands to settle an infirm lawsuit.

When Pladott's extortion did not work, he actually sent the document to Mr. Wiese and, in his cover letter (*see* Exhibit B), added calumny to calumny:

> "As you will see in the report, EPD used the {*sic*} most of the funds to pay for Mr. Ewers' personal expenses."

*See* Exhibit B. Pladott's threat to interfere in Ewers' business if Ewers did not settle on Pladott's terms was extortion, pure and simple. Pladott's publication to Ewers' business associate was defamation, pure and simple.

- 8 -                                        BOS_496683_1/KNOURSE

Since the time of Pladott's original attempt to intervene in the Ewers v. Heron litigation, we have attempted to convey to the Court that Pladott is something of a loose cannon, someone who refused to help fund Ewers' attempts to locate and collect Heron's assets, but who would likely interfere with those efforts if he were given any toehold to do so. The Court can now see for itself the ugly stuff of which Pladott is made: not content with the legal process, he employs reprehensible tactics including threats, intimidation, and defamation; he sends improper communications to persons with whom he has no legitimate relationship; and he interferes where he has no warrant to do so and without regard to the veracity of his statements.

The First Circuit has continued to recognize the "unarguable proposition" that:

> "courts cannot effectively administer justice unless they are accorded the right to establish orderly processes and manage their own affairs.... The authority to order sanctions in appropriate cases is a necessary component of that capability."

Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003). Pladott's tactics – asserting the rights of a person who is not a party to the case, seeking what would in essence be a final adjudication of the rights of a real party in interest and indispensable party who is absent, seeking such adjudication as a "preliminary" remedy, attempting extortion when his efforts appear unlikely to succeed, and employing defamation when his attempted extortion is unsuccessful – are wholly improper, reckless and malicious. They richly deserve the imposition of sanctions.

## CONCLUSION

At the conclusion of Ewers' Opposition to Pladott's Motion for a Preliminary Injunction, Ewers requested that he "be awarded his costs, including the reasonable attorneys' fees he incurred in defending against an unfounded, unauthorized, redundant, frivolous motion." Ewers now formally requests that he be awarded the costs and attorneys' fees he has incurred in

opposing Pladott's Motion for a Preliminary Injunction, dealing with Pladott's extortionate

threats and preparing the instant motion.

LARRY EWERS

By his attorneys,

Alan M. Spiro (BBO No. 475650)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts 02110
Direct Phone: 617.951.2204
Direct Fax: 888.325.9124
E-mail: aspiro@EdwardsAngell.com

Dated: July 19, 2005

## CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that on July 19, 2005, I served a true copy of the above
document by first class mail, postage pre-paid, upon:

Isaac H. Peres
50 Congress Street
Boston, Massachusetts 02109

Alan M. Spiro (BBO No. 475650)

- 10 -

# EXHIBIT A

# LAW OFFICE OF ISAAC H. PERES

50 Congress Street
Boston, Massachusetts 02109
Phone (617) 722-0094
Fax (617) 367-8840

June 23, 2005

BY FAX

Alan M. Spiro
Edwards & Angell, LLP
101 Federal Street
Boston, MA 02110

      Re:   Alexander Pladott v. Larry Ewers,
           United States District Court, Docket No. 05-CV-10356-RWZ

Dear Attorney Spiro:

My client, Alexander Pladott, has recently obtained banking records from the Bank of America in Houston, Texas for E.P.D. Management Co., LLC. These records appear to identify persons who have invested in E.P.D. and reflect what your client, Larry Ewers, did with the investors' monies. I have attached a report related to these records to this correspondence.

Please be advised that if your client, Larry Ewers, does not settle the above-mentioned case within the time parameters designated by Judge Zobel and the Court of Appeals for the First Circuit, my client intends to follow up on the leads provided by these banking records to the fullest extent possible, including conducting the depositions of the persons involved and further requests for production of documents.

Thank you for your attention to this matter.

Sincerely,

Isaac H. Peres

cc:   Charles Sharman, Esquire (713) 655-1197
     Kevin Michaels, Esquire (281) 496-4211

# REPORT

## SUMMARY OF BANK RECORDS
## EPD MANAGEMENT COMPANY LLC
## Bank of America Account No. 0057 7844 6713, Houston, Texas
## Obtained by Subpoena to Bank of America Dated 04/22/05

### DEPOSITS FROM MAJOR PRIVATE INVESTORS
### August 2001 – May 2002

1. August 2001
   a. Invisi-Bank Marketing (Lawrence Marchman)    $ 7,500
   b. Emery Resources (Lawrence Marchman)    $ 2,500
2. September 2001
   a. Buckley, Mathews, White & Howel LLP    $ 2,500
3. October 2001
   a. Ralph S. Sharman, MD    $ 3,250
   b. Lawrence Marchman    $ 3,000
4. November 2001
   a. Lawrence Marchman    $ 9,750
   b. Charles Sharman, attorney-IOLTA    $ 3,000
5. January 2002
   a. Lawrence Marchman    $ 15,000
6. February 2002
   a. Lawrence Marchman    $ 22,450
7. March 2002
   a. Reimbursement from Anthony Feldman    $ 7,358
8. April 2002
   a. Lawrence Marchman    $ 3,500
   b. Buckley Mathews, White & Howel LLP    $ 5,000
9. May 2002
   a. Lawrence Marchman    $ 14,200
   b. Mark A. Mathews P.C.    $ 2,500

Total Amount of Private Investors' Deposits for this Period:    $101,508

## Total Payments by EPD for Legal Fees Related to Heron
### August 2001 – May 2002

| | |
|---|---|
| 1. August 2001 – Anthony Feldman (UK Attorney) | $ 2,500 |
| 2. October 2001 – Anthony Feldman (UK Attorney) | $ 5,060 |
| 3. February 2002 – Anthony Feldman (UK Attorney) | $ 10,700 |
| 4. March 2002 – Anthony Feldman (UK Attorney) | |
| Reimbursement for overpayment | ($ 7,358) |
| Total Net Payments to Feldman: | $ 10,902 |

### SUMMARY FOR THE PERIOD OF AUGUST 2001 - MAY 31, 2002

| | |
|---|---|
| Beginning Balance as of 8/01/01: | $      398 |
| Balance of EPD Bank Account as of May 31, 2002 | $   8,745 |
| Total deposits by EPD Private Investors | $ 101,508 |
| Total payments from EPD to Feldman for Legal Fees | $  10,902 |

The EPD bank account records show that during the period beginning in
August 2001 and ending in May 2002, Ewers spent a total of $82,259 from
his investor-funded EPD account. The EPD bank account records also detail
how this $82,259 of investors' money was used to pay for Ewers' personal
lifestyle and debt related to his bankruptcy.

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
## IN EPD BANK ACCOUNT
### July 2002 – December 2002

1. July 2002
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 11,975
2. August 2002
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 12,700
3. September 2002
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 34,000
4. October 2002
   a. Emery Resources, Inc. (Lawrence Marchman)        $  6,400
5. November 2002
   a. Charles Sharman, Attorney-IOLTA                  $ 21,000
6. December 2002
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 10,000
   b. Private Investor – Cash Deposit                  $  2,500

Total Amount of Private Investors' Deposits for this Period:   $ 98,575


### Total Payments by EPD for Legal Fees for This Period Related to Heron

1. August 2002      - Anthony Feldman (UK Attorney)        $  5,650


### Summary for July 2002 – December 2002

| | |
|---|---|
| Beginning Balance as of 7/01/02 | $  5,678 |
| Deposits From Investors: | $ 98,575 |
| August 2002 - Anthony Feldman (UK Attorney) | $  5,650 |
| Ending Balance as of 12/31/2002 | $ 17,601 |

The EPD bank account records show that Ewers spend approximately
$81,002 during this period of time from his investor-funded EPD bank
account to support his lifestyle.

# DEPOSITS FROM MAJOR PRIVATE INVESTORS IN EPD BANK ACCOUNT

## January 2003 – December 2003

1. January 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $  3,000
2. February 2003
   a. Olga L. Estrada                                  $  1,495
3. March 2003
   a. Olga L. Estrada                                  $  5,000
4. April 2003
   a. Paradime Resources                               $ 18,000
   b. Emery Resources, Inc. (Lawrence Marchman)        $  8,450
5. June 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 10,750
6. July 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 54,800
7. August 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $  8,700
8. September 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 18,644
9. October 2003
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 22,050
10. November 2003
    a. Emery Resources, Inc. (Lawrence Marchman)       $ 20,900
11. December 2003
    a. Emery Resources, Inc. (Lawrence Marchman)       $ 22,044

Total Amount of Private Investors' Deposits for this Period:    $ 193,833

### Total Payments by EPD for Legal Fees Related to Heron
### January 2003 – December 2003

1.  February 2003
    a.  Birgitta S. Meyer, UK      $    966
2.  March 2003
    a.  Butcher Burns, UK      $   2,450
3.  April 2003
    a.  Butcher Burns, UK      $   2,450
4.  May 2003
    a.  Butcher Burns, UK      $ 11,500
5.  June 2003
    a.  Charles Sharman (Liner)      $   1,500
6.  July 2003
    a.  Butcher Burns, UK      $   5,900
    b.  Charles Sharman (Liner)      $   1,500
7.  August 2003
    a.  Butcher Burns, UK      $   3,500
    b.  Charles Sharman (Liner)      $   1,500
8.  September 2003
    a.  Specialist Private Investigators, UK      $   1,550
    b.  Edwards Angell LLP      $   5,000
    c.  Charles Sharman (Liner)      $   3,500
9.  October 2003
    a.  Butcher Burns, UK      $   3,237
    b.  Charles Sharman (Liner)      $   1,500
    c.  Edwards Angell LLP      $   1,633
10. November 2003
    a.  Butcher Burns, UK      $   2,110
    b.  Edwards Angell LLP      $   4,447
11. December 2003
    a.  Lawrence Graham UK      $   6,322
    b.  Edwards Angell LLP      $ 22,752

Total Payments by EPD for legal fees related to Heron for this period:
$   75,407

## SUMMARY FOR THE PERIOD OF JANUARY 2003 – DECEMBER 2003

| | |
|---|---|
| Beginning Balance as of 01/01/03: | $ 17,601 |
| Ending Balance as of 12/31/03 | $ 8,905 |
| Total deposits by EPD Private Investors | $ 193,833 |
| Total payments for Legal Fees | $ 75,407 |

The EPD bank account records show that Ewers spent $127,122 from private investors' funds during this period to support his lavish lifestyle, including child support payments required by a paternity judgment against him.

6

# DEPOSITS FROM MAJOR PRIVATE INVESTORS
## IN EPD BANK ACCOUNT

### January 2004 – December 2004

1. January 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 36,390
2. February 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 43,150
3. March 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 29,755
4. April 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 29,284
5. May 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 31,668
6. June 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 37,550
7. July 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 113,254
8. August 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 56,363
9. September 2004
   a. Emery Resources, Inc. (Lawrence Marchman)     $ 20,475
10. October 2004
    a. Emery Resources, Inc. (Lawrence Marchman)    $ 74,965
11. November 2004
    a. Emery Resources, Inc. (Lawrence Marchman)    $ 76,670
12. December 2004
    a. Emery Resources, Inc. (Lawrence Marchman)    $ 48,330

Total Amount of Private Investors' Deposits for this Period:     $ 597,854

## Total Payments by EPD for Legal Fees Related to Heron
### January 2004 – December 2004

1. January 2004
   a. Edwards & Angell LLP ........................................... $      300
   b. Lawrence Graham (UK Attorney) ...................... $   1,200
2. February 2004
   a. Edwards & Angell LLP ........................................... $ 14,958
3. March 2004
   a. Edwards & Angell LLP ........................................... $   2,324
   b. Lawrence Graham (UK Attorney) ...................... $      950
   c. Lawrence Graham (UK Attorney) ...................... $   6,850
4. April
   a. Specialist Private Investigators, UK ................. $      540
5. May 2004
   a. Edwards & Angell LLP ........................................... $ 13,359
6. June 2004
   a. Edwards & Angell LLP ........................................... $   1,278
   b. Valentine & Co (Heron's UK Trustee) .............. $   2,670
7. July 2004
   a. Wragg & Co. (UK Attorney) ............................... $ 10,500
8. August 2004
   a. Edwards & Angell LLP ........................................... $   2,287
   b. Wagg & Co. (UK Attorney) ................................ $   7,000
9. September 2004
   a. Edwards & Angell LLP ........................................... $   6,547
   b. Edwards & Angell LLP ........................................... $   1,657
10. October 2004
   a. Edwards & Angell LLP ........................................... $ 31,272
   b. Edwards & Angell LLP ........................................... $   3,929
11. December 2004
   a. Edwards & Angell LLP ........................................... $   7,437

Total Payments for legal fees related to Heron for this period:    $ 115,058

## Total Payments by EPD for Fees Related to Locating, Freezing And Concealing Heron's Bank Accounts

### January 2004 – December 2004

1. February 2004
   a. Kermit V. Bjorge                          $  2,500
2. March 2004
   a. Kermit V. Bjorge                          $     521
   b. Kermit V. Bjorge                          $  1,106
3. April 2004
   a. Kermit V. Bjorge                          $     545
   b. Kermit V. Bjorge                          $  1,297
   c. Tom Moss                                  $  1,300
   d. Robert E. Howell                          $     980
   e. Kermit V. Bjorge                          $  1,263
4. May 2004
   a. Kermit V. Bjorge                          $  1,292
   b. Robert E. Howell                          $     960
   c. Tom Moss                                  $  1,165
5. July 2004
   a. Robert E. Howell                          $  1,280
   b. Tom Moss                                  $  1,349
   c. Kermit V. Bjorge                          $  1,250
   d. Kermit V. Bjorge                          $     647
   e. Tom Moss                                  $  1,100
   f. Robert E. Howell                          $  1,020
   g. Kermit V. Bjorge                          $  1,250
   h. Phoenix Mining & Mineral LLC              $  1,000
      San Antonio, Texas – Texas Capital Bank
   i. Bart International LLC                     $  3,000
   j. Bart International LLC                     $  1,500
   k. Phoenix Mining & Mineral                  $ 42,500
6. August 2004
   a. Robert E Howell                           $  1,644
   b. Tom Moss                                  $  1,650
   c. Kermit V. Bjorge                          $  1,250
   d. Phoenix Mining & Mineral LLC              $  6,000
   e. Bart International LLC                     $  5,207

7. October 2004
    a. Kermit V. Bjorge                                 $ 1,250
    b. Robert E. Howell                             $ 1,900
    c. Tom Moss                                        $ 2,440
    d. Bart International LLC                       $ 2,500
    e. Phoenix Mining & Mineral LLC         $ 16,000
8. November 2004
    a. Tom Moss                                        $ 1,780
    b. Kermit V. Bjorge                               $ 1,250
    c. Robert E Howell                              $ 1,520
    d. Phoenix Mining & Mineral LLC         $ 15,000
    e. Phoenix Mining & Mineral LLC         $ 3,000
    f. Kermit V. Bjorge                                $ 1,250
9. December 2004
    a. Robert E Howell                              $ 1,360
    b. Kermit V. Bjorge                               $ 2,980
    c. Phoenix Mining & Mineral LLC         $ 5,000
    d. Robert E. Howell                             $ 1,240
    e. Tom Moss                                      $ 1,800
    f. Kermit V. Bjorge                              $ 1,920
                                      TOTAL    $146,766

The total amount paid by EPD for this time period to five (5) entities
(Former US Government Employees) related to locating, freezing and
concealing Heron's bank accounts was $146,766.

## SUMMARY FOR THE PERIOD OF JANUARY 2004 – DECEMBER 2004

Beginning Balance as of 01/01/04:                   $    8,905
Ending Balance as of 12/31/04                     $  32,480
Total deposits by EPD Private Investors         $ 597,854
Total payments for Legal Fees                    $ 115,058
Total payments related to Heron's concealed funds   $ 146,766

The EPD bank account records show that Ewers spent $312,455 from
private investors' funds during this period to support his lavish lifestyle.

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
## IN EPD BANK ACCOUNT

### January 2005 – December 2005

1. January 2005
   a. Emery Resources, Inc. (Lawrence Marchman)         $ 41,835
2. February 2005
   a. Emery Resources, Inc. (Lawrence Marchman)         $ 55,700
3. March 2005
   a. Emery Resources, Inc. (Lawrence Marchman)         $ 52,735
4. April 2005
   a. Emery Resources, Inc. (Lawrence Marchman)         $ 32,220

Total Amount of Private Investors' deposits for this period:    $ 182,440

### Total Payments by EPD for Legal Fees Related to Heron
### January 2005 – April 2005

1. January 2005
   a. Wragge & Co. (Ian Weatherall, UK Attorney)        $ 20,000
2. March 2005
   a. Edwards & Angell LLP                              $ 15,224

   Total payments by EPD for legal fees related to
   Heron for this period:                               $ 35,224

## Total Payments by EPD for Fees Related to Locating, Freezing And Concealing Heron's Bank Accounts

### January 2005 – April 2005

1. February 2005
   - a. Carlton Energy Group LLC ............................ $ 15,000
   - b. Robert E. Howell ....................................... $  1,590
2. March 2005
   - a. Tom Moss ............................................... $  1,280
   - b. Robert E. Howell ....................................... $  1,140
   - c. Phoenix Mining & Mineral LLC ....................... $  3,500
   - d. Tom Moss ............................................... $  1,760
   - e. Robert E. Howell ....................................... $  1,440

The total amount paid by EPD for this time period related
to Heron's concealed bank accounts: ........................ $ 25,660

### SUMMARY FOR THE PERIOD OF JANUARY 2005 – APRIL 2005

| | |
|---|---:|
| Beginning Balance as of 01/01/05: | $ 32,480 |
| Ending Balance as of 12/31/05 | $ 18,751 |
| Total deposits by EPD Private Investors | $ 182,490 |
| Total payments for Legal Fees | $ 35,224 |
| Total payments related to Heron's concealed funds | $ 25,660 |

The EPD bank account records show that Ewers spent $135,335 from
private investors' funds during this period to support his lavish lifestyle,
including child support payments required by a paternity judgment against
him.

## SUMMARY OF FACTS RELATED TO THE HERON DEBT LITIGATION AS DOCUMENTED BY EPD'S BANK RECORDS

EPD's official records and the EPD Band of America ("BOA") records show that since its inception in 1998 until the end of April 2005, EPD has not employed a CPA and has not filed any Federal tax or Texas State tax returns.

It is important to note that Ewers has not invested any of his own money in EPD.

EPD stared a financial venture to secure the collection of the Heron debt in August 2001 with the following parties:

1. The Texas law firm of Buckley, Mathews, White & Powell, LLP ($10,000)
2. Charles Sharman, attorney ($24,000)
3. Lawrence Marchman ("Larry Marchman")
4. Emery Resources Inc. (Larry Marchman is a Director)
5. Larry Ewers
6. EPD Management Company LLC (EPD)

The first four parties contributed approximately $100,000 in seed money for the Heron venture between August 2001 and June 2002. All four actively participated at that time in preparing the legal background needed to secure the collection of the Heron debt by Ewers. Their actions permitted Ewers to create the false impression that he was a Heron creditor.

Beginning in August 2001, Larry Marchman put together his company to provide financial support to EPD.

> Emery Resources Inc.
> 1023 Lodgehill Lane
> Houston, Texas 77090
> Tel: 713-857-1747

Marchman raised money from private investors through Emery Resources Inc. promising them a share of what "Heron owed to Ewers" as soon as Ewers collected it.

Donald Wiese, 6318 Cherry Hill, Houston, TX 77069, is the Secretary and Vice President of Emery Resources Inc.

In 2004, EPD made 41 deposits in its BOA bank account from Emery Resources Inc. The average deposit was approximately $15,000.

## EPD FINANCIAL SUMMARY FOR AUGUST 2001 – APRIL 2005

| | |
|---|---|
| Deposits from investors: | $1,174,210 |
| Payments for legal fees: | $ 232,241 |
| Payments for locating, freezing and concealing Heron's bank accounts: | $ 172,426 |
| Amount Ewers spent to support his lifestyle: | $ 738,173 |

### Additional Information

1. EPD Management Company LLC          Tax ID: 32001034357
   13726 Suntan Ave.
   Corpus Cristi, TX 78413
   Tel: 361-949-8258
   Larry W. Ewers, Director, SS#: 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
2. Emery Resources Inc.                          Tax ID: 32002659616
   1023 Lodgehill Lane
   Houston, TX 70090
   Tel: 713-857-1747
   Lawrence M. Marchman, Director, SS#: ___-__-9815
   Donald H. Wiese Jr., Secretary
3. Charles A. Sharman
   Nine Greenway Plaza, Suite 3040
   Houston, TX 77046
   Tel: 713-655-1195

# EXHIBIT B

8185945735;

BY ALEX

# ALEX PLADOTT
### 20000 WINNETKA PLACE
### WOODLAND HILLS, CA 91364 USA
(818) 710-0504   FAX: (818) 504.5735   E-MAIL: ALEX@PLADOTT.COM

Tuesday, June 28, 2005

Mr. Donald H. Wiese
Vice President
Emery Resources, Inc.
6318 Cherry Hills
Houston, TX 77069
VIA FACSIMILE:  281-583-4044

RE:   Emery Resources, Inc.

Dear Mr. Wiese:

Attached via facsimile is a 14-page report related to funds raised by Emery
Resources, Inc. from private investors which were then invested with EPD
Management Company LLC.

As you will see in the report, EPD used the most of the funds to pay for Mr.
Ewers' personal expenses.

If you would like further information or the documentation supporting the
findings in this report, please do not hesitate to call me.

Thank you.

Sincerely,

Alex Pladott



JUN 28·05 11:57j

# ALEX PLADOTT
20000 WINNETKA PLACE
WOODLAND HILLS, CA 91364 USA
(818) 710-0804    FAX: (818) 594-5735    E-MAIL: ALEX@PLADOTT.COM

Tuesday, June 28, 2005

Mr. Donald H. Wiese
Vice President
Emery Resources, Inc.
6318 Cherry Hills
Houston, TX 77069
VIA FACSIMILE: 281-583-4044

RE:   Emery Resources, Inc.

Dear Mr. Wiese:

Attached via facsimile is a 14-page report related to funds raised by Emery
Resources, Inc. from private investors which were then invested with EPD
Management Company LLC.

As you will see in the report, EPD used the most of the funds to pay for Mr.
Ewers' personal expenses.

If you would like further information or the documentation supporting the
findings in this report, please do not hesitate to call me.

Thank you.

Sincerely,

Alex Pladott

8185045735;

Jun-28-05 11:57;



# REPORT

## SUMMARY OF BANK RECORDS
### EPD MANAGEMENT COMPANY LLC
Bank of America Account No. 0057 7844 6713, Houston, Texas
Obtained by Subpoena to Bank of America Dated 04/22/05
Federal Tax ID Number that Ewers gave Bank of America
on the Date Ewers Opened the Account: # 760580859

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
### August 2001 – May 2002

1. **August 2001**
   a. Invisi-Bank Marketing (Lawrence Marchman)        $ 7,500
   b. Emery Resources (Lawrence Marchman)              $ 2,500
2. **September 2001**
   a. Buckley, Mathews, White & Howel LLP              $ 2,500
3. **October 2001**
   a. Ralph S. Sharman, MD                             $ 3,250
   b. Lawrence Marchman                                $ 3,000
4. **November 2001**
   a. Lawrence Marchman                                $ 9,750
   b. Charles Sharman, attorney-IOLTA                  $ 3,000
5. **January 2002**
   a. Lawrence Marchman                                $ 15,000
6. **February 2002**
   a. Lawrence Marchman                                $ 22,450
7. **March 2002**
   a. Reimbursement from Anthony Feldman               $ 7,358
8. **April 2002**
   a. Lawrence Marchman                                $ 3,500
   b. Buckley Mathews, White & Howel LLP               $ 5,000
9. **May 2002**
   a. Lawrence Marchman                                $ 14,200
   b. Mark A. Mathews P.C.                             $ 2,500

**Total Amount of Private Investors' Deposits for this Period:**    $101,508

6/14/2005 9:29 AM                          1

## Total Payments by EPD for Legal Fees Related to Heron
### August 2001 – May 2002

| | |
|---|---|
| 1. August 2001 – Anthony Feldman (UK Attorney) | $ 2,500 |
| 2. October 2001 – Anthony Feldman (UK Attorney) | $ 5,060 |
| 3. February 2002 – Anthony Feldman (UK Attorney) | $ 10,700 |
| 4. March 2002 – Anthony Feldman (UK Attorney)<br>Reimbursement for overpayment | ($ 7,358) |
| Total Net Payments to Feldman: | $ 10,902 |

## SUMMARY FOR THE PERIOD OF AUGUST 2001 - MAY 31, 2002

| | |
|---|---|
| Beginning Balance as of 8/01/01: | $ 398 |
| Balance of EPD Bank Account as of May 31, 2002 | $ 8,745 |
| Total deposits by EPD Private Investors | $ 101,508 |
| Total payments from EPD to Feldman for Legal Fees | $ 10,902 |

The EPD bank account records show that during the period beginning in August 2001 and ending in May 2002, Ewers spent a total of $82,259 from his investor-funded EPD account. The EPD bank account records also detail how this $82,259 of investors' money was used to pay for Ewers' personal lifestyle and debt related to his bankruptcy.

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
### IN EPD BANK ACCOUNT
### July 2002 – December 2002

1. July 2002
   a. Emery Resources, Inc. (Lawrence Marchman)            $ 11,975
2. August 2002
   a. Emery Resources, Inc. (Lawrence Marchman)            $ 12,700
3. September 2002
   a. Emery Resources, Inc. (Lawrence Marchman)            $ 34,000
4. October 2002
   a. Emery Resources, Inc. (Lawrence Marchman)            $  6,400
5. November 2002
   a. Charles Sharman, Attorney-IOLTA                      $ 21,000
6. December 2002
   a. Emery Resources, Inc. (Lawrence Marchman)            $ 10,000
   b. Private Investor – Cash Deposit                      $  2,500

Total Amount of Private Investors' Deposits for this Period:   $ 98,575


## Total Payments by EPD for Legal Fees for This Period Related to Heron

1. August 2002    - Anthony Feldman (UK Attorney)          $ 5,650


## Summary for July 2002 – December 2002

| | |
|---|---|
| Beginning Balance as of 7/01/02 | $ 5,678 |
| Deposits From Investors: | $ 98,575 |
| August 2002 - Anthony Feldman (UK Attorney) | $ 5,650 |
| Ending Balance as of 12/31/2002 | $ 17,601 |

The EPD bank account records show that Ewers spend approximately
$81,002 during this period of time from his investor-funded EPD bank
account to support his lifestyle.

6/24/2005 9:29 AM                          2

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
## IN EPD BANK ACCOUNT

### January 2003 – December 2003

1. January 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 3,000
2. February 2003
   a. Olga L. Estrada                                    $ 1,495
3. March 2003
   a. Olga L. Estrada                                    $ 5,000
4. April 2003
   a. Paradime Resources                                 $ 18,000
   b. Emery Resources, Inc. (Lawrence Marchman)          $ 8,450
5. June 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 10,750
6. July 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 54,800
7. August 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 8,700
8. September 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 18,644
9. October 2003
   a. Emery Resources, Inc. (Lawrence Marchman)          $ 22,050
10. November 2003
    a. Emery Resources, Inc. (Lawrence Marchman)         $ 20,900
11. December 2003
    a. Emery Resources, Inc. (Lawrence Marchman)         $ 22,044

Total Amount of Private Investors' Deposits for this Period:   $ 193,833

## Total Payments by EPD for Legal Fees Related to Heron
### January 2003 – December 2003

1. **February 2003**
   a. Birgitta S. Meyer, UK                        $      966
2. **March 2003**
   a. Butcher Burns, UK                            $    2,450
3. **April 2003**
   a. Butcher Burns, UK                            $    2,450
4. **May 2003**
   a. Butcher Burns, UK                            $   11,500
5. **June 2003**
   a. Charles Sharman (Liner)                      $    1,500
6. **July 2003**
   a. Butcher Burns, UK                            $    5,900
   b. Charles Sharman (Liner)                      $    1,500
7. **August 2003**
   a. Butcher Burns, UK                            $    3,500
   b. Charles Sharman (Liner)                      $    1,500
8. **September 2003**
   a. Specialist Private Investigators, UK         $    1,550
   b. Edwards Angell LLP                           $    5,000
   c. Charles Sharman (Liner)                      $    3,500
9. **October 2003**
   a. Butcher Burns, UK                            $    3,237
   b. Charles Sharman (Liner)                      $    1,500
   c. Edwards Angell LLP                           $    1,633
10. **November 2003**
    a. Butcher Burns, UK                           $    2,110
    b. Edwards Angell LLP                          $    4,447
11. **December 2003**
    a. Lawrence Graham UK                          $    6,322
    b. Edwards Angell LLP                          $   22,752

Total Payments by EPD for legal fees related to Heron for this period:
$  75,407

6/24/2005 9:29 AM                                    5

## SUMMARY FOR THE PERIOD OF JANUARY 2003 – DECEMBER 2003

| | |
|---|---|
| Beginning Balance as of 01/01/03: | $ 17,601 |
| Ending Balance as of 12/31/03 | $  8,905 |
| Total deposits by EPD Private Investors | $ 193,833 |
| Total payments for Legal Fees | $ 75,407 |

The EPD bank account records show that Ewers spent $127,122 from
private investors' funds during this period to support his lavish lifestyle,
including child support payments required by a paternity judgment against
him.

## DEPOSITS FROM MAJOR PRIVATE INVESTORS IN EPD BANK ACCOUNT

### January 2004 – December 2004

1. January 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  36,390
2. February 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  43,150
3. March 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  29,755
4. April 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  29,284
5. May 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  31,668
6. June 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  37,550
7. July 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $ 113,254
8. August 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  56,363
9. September 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  20,475
10. October 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  74,965
11. November 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  76,670
12. December 2004
   a. Emery Resources, Inc. (Lawrence Marchman)        $  48,330

Total Amount of Private Investors' Deposits for this Period:    $ 597,854

## Total Payments by EPD for Legal Fees Related to Heron
### January 2004 – December 2004

1.  January 2004
    a.  Edwards & Angell LLP                              $     300
    b.  Lawrence Graham (UK Attorney)                     $   1,200
2.  February 2004
    a.  Edwards & Angell LLP                              $  14,958
3.  March 2004
    a.  Edwards & Angell LLP                              $   2,324
    b.  Lawrence Graham (UK Attorney)                     $     950
    c.  Lawrence Graham (UK Attorney)                     $   6,850
4.  April
    a.  Specialist Private Investigators, UK              $     540
5.  May 2004
    a.  Edwards & Angell LLP                              $  13,359
6.  June 2004
    a.  Edwards & Angell LLP                              $   1,278
    b.  Valentine & Co (Heron's UK Trustee)               $   2,670
7.  July 2004
    a.  Wragg & Co. (UK Attorney)                         $  10,500
8.  August 2004
    a.  Edwards & Angell LLP                              $   2,287
    b.  Wagg & Co. (UK Attorney)                          $   7,000
9.  September 2004
    a.  Edwards & Angell LLP                              $   6,547
    b.  Edwards & Angell LLP                              $   1,657
10. October 2004
    a.  Edwards & Angell LLP                              $  31,272
    b.  Edwards & Angell LLP                              $   3,929
11. December 2004
    a.  Edwards & Angell LLP                              $   7,437

Total Payments for legal fees related to Heron for this period:    $ 115,058

6/24/2005 9:29 AM                              •

# Total Payments by EPD for Fees Related to Locating, Freezing And Concealing Heron's Bank Accounts

## January 2004 – December 2004

1. February 2004
   a. Kermit V. Bjorge ..................... $ 2,500
2. March 2004
   a. Kermit V. Bjorge ..................... $   521
   b. Kermit V. Bjorge ..................... $ 1,106
3. April 2004
   a. Kermit V. Bjorge ..................... $   545
   b. Kermit V. Bjorge ..................... $ 1,297
   c. Tom Moss ............................. $ 1,300
   d. Robert E. Howell .................... $   980
   e. Kermit V. Bjorge ..................... $ 1,263
4. May 2004
   a. Kermit V. Bjorge ..................... $ 1,292
   b. Robert E. Howell .................... $   960
   c. Tom Moss ............................. $ 1,165
5. July 2004
   a. Robert E. Howell .................... $ 1,280
   b. Tom Moss ............................. $ 1,349
   c. Kermit V. Bjorge ..................... $ 1,250
   d. Kermit V. Bjorge ..................... $   647
   e. Tom Moss ............................. $ 1,100
   f. Robert E. Howell .................... $ 1,020
   g. Kermit V. Bjorge ..................... $ 1,250
   h. Phoenix Mining & Mineral LLC ....... $ 1,000
      San Antonio, Texas – Texas Capital Bank
   i. Bart International LLC .............. $ 3,000
   j. Bart International LLC .............. $ 1,500
   k. Phoenix Mining & Mineral ........... $ 42,500
6. August 2004
   a. Robert E Howell .................... $ 1,644
   b. Tom Moss ........................... $ 1,650
   c. Kermit V. Bjorge .................. $ 1,250
   d. Phoenix Mining & Mineral LLC ...... $ 6,000
   e. Bart International LLC ............. $ 5,207

6/24/2005 9:29 AM                          Ω

7. October 2004
   a. Kermit V. Bjorge                          $ 1,250
   b. Robert E. Howell                          $ 1,900
   c. Tom Moss                                  $ 2,440
   d. Bart International LLC                     $ 2,500
   e. Phoenix Mining & Mineral LLC              $ 16,000
8. November 2004
   a. Tom Moss                                  $ 1,780
   b. Kermit V. Bjorge                          $ 1,250
   c. Robert E Howell                           $ 1,520
   d. Phoenix Mining & Mineral LLC              $ 15,000
   e. Phoenix Mining & Mineral LLC              $ 3,000
   f. Kermit V. Bjorge                          $ 1,250
9. December 2004
   a. Robert E Howell                           $ 1,360
   b. Kermit V. Bjorge                          $ 2,980
   c. Phoenix Mining & Mineral LLC              $ 5,000
   d. Robert E. Howell                          $ 1,240
   e. Tom Moss                                  $ 1,800
   f. Kermit V. Bjorge                          $ 1,920
                                    TOTAL       $146,766

The total amount paid by EPD for this time period to five (5) entities
(Former US Government Employees) related to locating, freezing and
concealing Heron's bank accounts was $146,766.

## SUMMARY FOR THE PERIOD OF JANUARY 2004 – DECEMBER 2004

| | |
|---|---|
| Beginning Balance as of 01/01/04: | $ 8,905 |
| Ending Balance as of 12/31/04 | $ 32,480 |
| Total deposits by EPD Private Investors | $ 597,854 |
| Total payments for Legal Fees | $ 115,058 |
| Total payments related to Heron's concealed funds | $ 146,766 |

The EPD bank account records show that Ewers spent $312,455 from
private investors' funds during this period to support his lavish lifestyle.

## DEPOSITS FROM MAJOR PRIVATE INVESTORS
## IN EPD BANK ACCOUNT

### January 2005 – December 2005

1. January 2005
   a. Emery Resources, Inc. (Lawrence Marchman)      $ 41,835
2. February 2005
   a. Emery Resources, Inc. (Lawrence Marchman)      $ 55,700
3. March 2005
   a. Emery Resources, Inc. (Lawrence Marohman)      $ 52,735
4. April 2005
   a. Emery Resources, Inc. (Lawrence Marchman)      $ 32,220

Total Amount of Private Investors' deposits for this period:      $ 182,440


## Total Payments by EPD for Legal Fees Related to Heron
### January 2005 – April 2005

1. January 2005
   a. Wragge & Co. (Ian Weatherall, UK Attorney)      $ 20,000
2. March 2005
   a. Edwards & Angell LLP                            $ 15,224

   Total payments by EPD for legal fees related to
   Heron for this period:                             $ 35,224

## Total Payments by EPD for Fees Related to Locating, Freezing And Concealing Heron's Bank Accounts

### January 2005 – April 2005

1. February 2005
   a. Carlton Energy Group LLC                      $ 15,000
   b. Robert E. Howell                              $  1,590
2. March 2005
   a. Tom Moss                                      $  1,280
   b. Robert E. Howell                              $  1,140
   c. Phoenix Mining & Mineral LLC                  $  3,500
   d. Tom Moss                                      $  1,760
   e. Robert E. Howell                              $  1,440

   The total amount paid by EPD for this time period related
   to Heron's concealed bank accounts:              $ 25,660

## SUMMARY FOR THE PERIOD OF JANUARY 2005 – APRIL 2005

| | |
|---|---|
| Beginning Balance as of 01/01/05: | $ 32,480 |
| Ending Balance as of 12/31/05 | $ 18,751 |
| Total deposits by EPD Private Investors | $ 182,490 |
| Total payments for Legal Fees | $ 35,224 |
| Total payments related to Heron's concealed funds | $ 25,660 |

The EPD bank account records show that Ewers spent $135,335 from
private investors' funds during this period to support his lavish lifestyle,
including child support payments required by a paternity judgment against
him.

JUN-28-05 12:09

## SUMMARY OF FACTS RELATED TO THE HERON DEBT
## LITIGATION AS DOCUMENTED BY EPD'S BANK RECORDS

EPD's official records and the EPD Bank of America ("BOA") records show that since its inception in 1998 until the end of April 2005, EPD has not employed a CPA and has not filed any Federal tax or Texas State tax returns.

It is important to note that Ewers has not invested any of his own money in EPD.

EPD stared a financial venture to secure the collection of the Heron debt in August 2001 with the following parties:
1. The Texas law firm of Buckley, Mathews, White & Powell, LLP ($10,000)
2. Charles Sharman, attorney ($24,000)
3. Lawrence Marchman ("Larry Marchman")
4. Emery Resources Inc. (Larry Marchman is a Director)
5. Larry Ewers
6. EPD Management Company LLC (EPD)

The first four parties contributed approximately $100,000 in seed money for the Heron venture between August 2001 and June 2002. All four actively participated at that time in preparing the legal background needed to secure the collection of the Heron debt by Ewers. Their actions permitted Ewers to create the false impression that he was a Heron creditor.

Beginning in August 2001, Larry Marchman put together his company to provide financial support to EPD.

Emery Resources Inc.
1023 Lodgehill Lane
Houston, Texas 77090
Tel: 713-857-1747

Marchman raised money from private investors through Emery Resources Inc. promising them a share of what "Heron owed to Ewers" as soon as Ewers collected it.

Donald Wiese, 6318 Cherry Hill, Houston, TX 77069, is the Secretary and Vice President of Emery Resources Inc.

In 2004, EPD made 41 deposits in its BOA bank account from funds provided by Emery Resources Inc. The average deposit was approximately $15,000.

## EPD FINANCIAL SUMMARY FOR AUGUST 2001 – APRIL 2005

| | |
|---|---|
| Deposits from investors: | $ 1,174,210 |
| Payments for legal fees: | $   232,241 |
| Payments for locating, freezing and concealing Heron's bank accounts: | $   172,426 |
| Amount Ewers spent to support his lifestyle: | $   738,173 |

Additional Information

1. EPD Management Company LLC          State Tax ID: 32001034357
   13726 Suntan Ave.                   Federal Tax ID: 760589859
   Corpus Cristi, TX 78418
   Tel: 361-949-8258
   Larry W. Ewers, Director, SS#: 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
2. Emery Resources Inc.               Tax ID: 32002659616
   1023 Lodgehill Lane
   Houston, TX 70090
   Tel: 713-857-1747
   Lawrence M. Marchman, Director, SS#: ___-__-9815
   Donald H. Wiese Jr., Secretary
3. Charles A. Sharman
   Nine Greenway Plaza, Suite 3040
   Houston, TX 77046
   Tel: 713-655-1195