UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEXANDER PLADOTT )<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>LARRY EWERS, et al., )<br>    Defendants. )<br>) | CIVIL ACTION<br>NO. 05- 10356-RWZ |

## OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE
## ENTRY OF JUDGMENT IN C.A. NO. 04-10024-RWZ

### I.    INTRODUCTION

Plaintiff Alexander Pladott ("Pladott"), having failed in his attempt to intervene in C.A.

No. 04-10024-RWZ (the "Ewers Case") at both the District Court and First Circuit, now attempts

to interfere with the outcome of that case by means of a Motion filed in this case, styled as a

"Motion to Preclude Entry of Judgment in C.A. No. 04-10024-RWZ" ("Motion to Preclude").

For fear that "if Ewers obtains the default judgment and manages to free up [Christopher Patrick]

Heron's frozen assets, he will secrete or waste them" (Motion to Preclude, p. 2) – Pladott's

declared motive for filing his Motion to Preclude – Pladott seeks to prevent entry of final

judgment in the Ewers Case, and alleges certain misrepresentations concerning the circumstances

of service of process on Heron in that action.

Pladott's tactics must fail, as the issue of entry of judgment is not ripe, and he has no

standing to move to preclude entry of judgment in the Ewers Case.  In addition, even if Pladott's

challenge to entry of judgment were permitted, Pladott does not proffer adequate "clear and

convincing evidence" to substantiate his allegation that Ewers obtained an entry of default

against Heron through misrepresentations.  Finally, Heron's inequitable evasion of service of

process on multiple occasions prevents Pladott from raising insufficiency of process or service of

process on Heron's behalf to prevent entry of default judgment against Heron. Pladott's latest

maneuver must be seen for what it is – an impermissible attempt to influence and interfere with

the Ewers Case after his stab at intervention proved unsuccessful. Accordingly, Pladott's Motion

to Preclude should be denied.

## II.    ARGUMENT

### A.    The issue of entry of judgment in the Ewers Case is not ripe.

Pladott's Motion to Preclude challenges an issue that is not ripe: entry of judgment in the

Ewers Case. The Court, from the bench, has requested a new form of judgment. No submission

has yet been made, in part because of repeated attempts by Ewers' and Pladott's counsel, on

numerous occasions, to agree on a form of judgment. Only when those attempts finally

collapsed did Pladott raise the issues detailed in his Motion to Preclude, of which Ewers had

previously been unaware. As a result, because there is no proposed form of judgment currently

before the Court in the Ewers Case, the issue is not ripe and Pladott's Motion to Preclude should

be denied.

### B.    Pladott lacks standing to request the preclusion of entry of judgment in the Ewers Case.

Pladott moves this Court for relief concerning the Ewers Case, a wholly separate matter

involving Ewers as plaintiff and several named defendants, none of whom is Pladott. Because

Pladott lacks standing to raise allegations concerning any aspect of the Ewers Case, his Motion

to Preclude should be denied.

#### 1.    Pladott is not a party to the Ewers Case; Pladott failed in his attempt to intervene in the Ewers Case.

It is beyond question that Pladott is not a party to the Ewers Case, yet he attempts to

sidestep his failed effort to intervene in that case by raising allegations concerning that case in

this case. Pladott's permissible interference with the course of the Ewers Case ended when the First Circuit upheld the District Court's denial of his motion to intervene in that Case. Importantly, directly addressing Pladott's fear that Ewers will either secrete or waste assets recovered in the Ewers Case, the First Circuit noted that the District Court in the Ewers Case fashioned an "admirable order protecting the claimants should there be mischief[.]" Ewers v. Heron, 419 F.3d 1, 3 (1st Cir. 2005). In spite of that resounding endorsement of the District Court's effort to craft an order that would protect against "mischief," Pladott continues to reiterate his unfounded fears (Pladott Aff., ¶ 21). Unfounded fears, however, which may be adequately addressed in any well-crafted judgment, do not confer on Pladott standing sufficient to challenge entry of judgment in the Ewers Case.

Even if the Ewers Case had progressed to a final judgment, Pladott still would not have been permitted to relieve Heron from that final judgment based on allegations of misrepresentation. Under Fed. R. Civ. P. 60(b), such relief is ordinarily available only to "a party or a party's legal representative," neither of which Pladott may claim to be. On the contrary, Pladott sought to intervene in the Ewers Case as a party adverse to Heron.[1]

Furthermore, under Fed. R. Civ. P. 60(b), a nonparty does not have standing to challenge a final judgment even when alleging fraud on the court, unless "that nonparty's rights were directly compromised by the final judgment." Kem Manufacturing Corp. v. Wilder, 817 F.2d 1517, 1521 (11th Cir. 1987). Rather than compromising Pladott's interest as a nonparty in the

---

[1] At the other hand, Pladott has focused his energies so exclusively on the disruptive task of interfering with Ewers' efforts against Heron, making no constructive effort whatsoever to obtain any judgment against Heron himself, that one must wonder whose side Pladott is really on. His efforts more befit an ally of Heron than someone with a bona fide good faith interest in obtaining relief against Heron. Pladott has done absolutely nothing to obtain any such relief. Pladott could have joined in the Ewers Case from the beginning, merely by splitting the costs of that case! Instead, Pladott has opted to waste unfathomably more money, his own and Ewers', and to waste precious judicial resources, in pursuit of no end but disruption, delay and intimidation.

BOS_501781_4/KNOURSE

Ewers Case, the formulation of an appropriate form of judgment in the Ewers Case would protect Pladott's interest, if any, to funds recovered by Ewers.

Because Pladott, as a nonparty, does not have standing to request the preclusion of entry of judgment in the Ewers Case, Pladott's Motion to Preclude should be denied.

### 2.    Pladott does not have standing to raise defenses personal to Heron to preclude entry of judgment in the Ewers Case.

Viewed another way, Pladott's Motion to Preclude amounts to the assertion, on behalf of Heron, of the defenses of insufficiency of process and insufficiency of service of process afforded a party pursuant to Fed. R. Civ. P. 12(b)(4) and (5), respectively. As established above, Pladott is not a party to the Ewers Case. As such, Pladott may not avail himself of a challenge to process or service of process on behalf of an individual who is a party to the Ewers Case to preclude entry of judgment. A nonparty claiming an interest aligned with that of a plaintiff must not be permitted to interfere with the course of a suit by raising personal defenses that accrue only to a defendant party to the litigation. For this additional reason, Pladott's Motion to Preclude should be denied.

### C.    Pladott has not met his burden of producing "clear and convincing evidence" of material misrepresentations in connection with service of process on Heron to preclude entry of judgment in the Ewers Case.

If this Court does decide to consider Pladott's unusual nonparty Motion to Preclude in the Ewers Case, Pladott's motion should be denied because Pladott fails to meet his burden of producing "clear and convincing" evidence of material misrepresentations in connection with service of process on Heron.

1. **Pladott's allegation concerning misrepresentation of service by a solicitor is immaterial.**

First, Pladott's allegation that Ewers misrepresented that service on Heron was done by a solicitor in conformity with the Hague Convention (Motion to Preclude, ¶4), does not raise a material issue concerning service of process on Heron. In Plaintiff's Verified Motion for Entry of Default Against Defendant Christopher Patrick Heron (attached as Exh. A), the representation was made that "4. Proof of Service was filed in this Court on April 20, 2004, including the originals of: ... (B) Certificate of Compliance with the Hague Convention, sworn before John Leonard, Solicitor." That representation was reiterated in the Affidavit of Alan M. Spiro in Support of Plaintiff's Motion for Entry of Default Judgment Against Defendant Christopher Patrick Heron, ¶ 5 (attached as Exh. B).

As mentioned in the Motion to Preclude, ¶ 10, in the Opposition of Larry Ewers to Motion to Dismiss for Lack of Jurisdiction and Motion to Vacate Default filed by Christopher Patrick Heron, p. 13, the argument was made that "[b]ecause service was made on Heron in person in the United Kingdom by a solicitor in conformity with The Hague Convention, Heron's claim of a failure of 'adequate service of process' fails." Whether or not the service of process was done "by a solicitor" is not material to the question of whether Heron was served with process instituting the Ewers Case. To the extent Pladott's request to preclude entry of judgment in the Ewers Case turns on that alleged immaterial and unintentional "misrepresentation," his motion should be denied.

2. **Pladott does not proffer "clear and convincing evidence" that Heron was not served with process in the Ewers Case.**

Pladott also alleges that Ewers "obtained an entry of default by misrepresenting to this Court that he had caused the Complaint and Summons issued in C.A. No. 04-10024-RWZ to be

served on the Defendant in that case, … when in fact, he caused a document from another case, C.A. No. 02-10532-RWZ, *and only that document*, to be served on Heron." Motion to Preclude, p. 1 (emphasis in original).

If Pladott, as a nonparty, is permitted to assert fraud or misrepresentation by Ewers in connection with service of process on Heron, then, Pladott has the burden of proffering "clear and convincing evidence" of such fraud or misrepresentation. See Longden v. Sunderman, 979 F.2d 1095, 1103 (5th Cir. 1992) (articulating standard of proof and burden applied under Fed. R. Civ. P. 60(b) for relief from judgment on grounds of fraud or misrepresentation); West v. Love, 776 F.2d 170, 176 (7th Cir. 1985); Simmons v. Gorsuch, 715 F.2d 1248, 1253 (7th Cir. 1983) ("[Under Rule 60(b), the burden of establishing fraud or misrepresentation is upon the moving party and must be established by clear and convincing evidence.").

In support of his allegations, Pladott points to the Affidavit of Mark Parfitt ("Parfitt Aff."), whom Pladott and Ewers hired to serve Heron with the Complaint and Summons in the Ewers Case. Motion to Preclude, ¶¶ 3, 4; Ewers Aff., ¶ 9. Parfitt's employee ultimately was successful at serving documents on Heron at 21 Dale House, Boundary Road, London ("21 Dale House Address"). Parfitt Aff., ¶ 6.

Parfitt states that on April 2, 2004, he received a package from Ewers containing a document related to C.A. No. 02-10532-RWZ, that on April 7, 2004, his employee served a document from C.A. No. 02-10532-RWZ on Mr. Heron, and that his employee "did not serve any documents from C.A. No. 04-10024-RWZ on Mr. Heron because Mr. Ewers did not provide [him] with any such documents." Parfitt Aff., ¶¶4, 6, 7. However, Parfitt confirmed both in a telephone conversation and in writing that he made these statements without the benefit of

BOS_501781_4/KNOURSE

referring to a copy of the documents served on Heron because he did not retain a copy. Nourse Aff., ¶¶ 3,9, Exh. A.

Given that seventeen (17) months have passed since Parfitt received documents from Ewers for service on Heron (see Parfitt Aff., ¶ 4; Ewers Aff., ¶ 10), Parfitt's statements, based on his memory alone, concerning the number and identity of documents received from Ewers do not rise to the level of "clear and convincing evidence" that Heron was not served with the proper documents. Furthermore, Ewers counters that on March 30, 2004, he forwarded documents instituting the Ewers Case, C.A. No. 04-10023-RWZ, not those related to C.A. No. 02-10532-RWZ, to Parfitt for service on Heron. Ewers Aff., ¶ 10, Exh. C.

Although Parfitt informed Pladott, via telephone, and Ewers, in an email dated April 19, 2004, that "Certificate of Service was stamped by the clerk at the Central London County Court … They retained a copy of the papers that were served and will have a record of issuing the certificate of service" (Ewers Aff, ¶ 14, Exh. E), counsel for Ewers was unable to retrieve those documents from the Central London County Court despite numerous attempts. Nourse Aff, ¶¶ 12-14. Because the burden rests squarely on Pladott to produce "clear and convincing evidence" substantiating his claim of misrepresentation, Pladott should be required to produce a copy of the document from the Central London County Court as "clear and convincing evidence" that Heron was not served with the documents from the Ewers Case. For this reason, as well, Pladott's motion should be denied.

### 3.  Parfitt's Certificate of Service and Certificate of Compliance with the Hague Convention were submitted in good faith as evidence of service of process in the Ewers Case.

Prior to hiring Parfitt to serve Heron in connection with the Ewers Case, Ewers twice arranged to have Heron served with process at 21 Dale House, Boundary Road, London ("21 Dale House Address"), but Heron evaded service on at least two occasions.

Counsel for Ewers first hired APS International, Ltd. / The Civil Action Group ("APS") in January 2004 to serve Heron with process and, to that end, forwarded "3. Three original Summons in a Civil Case issued by the US District Court for the District of Massachusetts; 4. Three certified copies of the Complaint filed with the US District Court for the District of Massachusetts as Civil Docket no. 04-10024 RWZ." A copy of the January 8, 2004 letter to APS is attached as Exh. C.

Unable to effect service on Heron because APS' agent was told that "the defendant has left the address given," which was the 21 Dale House Address, APS returned a Certificate stating that the Complaint and Summons were not served. A copy of the APS Certificate dated February 25, 2004 is attached as Exh. D.

On March 9, 2005, counsel for Ewers again contacted APS and forwarded "1. Two original Summonses in a Civil Case issued by the US District Court for the District of Massachusetts, Civil Docket No. 04-10024 RWZ; and 2. Two certified copies of the Complaint." A copy of the March 9, 2005 letter to APS is attached as Exh. E. An investigator retained by Ewers confirmed that Heron still resided at the 21 Dale House Address, where APS attempted to serve Heron earlier. Ewers Aff., ¶ 6.

On March 29, 2004, dissatisfied with APS' failure to serve Heron, Ewers also hired Parfitt to serve Heron with process related to the Ewers Case. Ewers Aff., ¶¶ 8-9, Exh. B. As

stated above, on March 30, 2004, Ewers forwarded documents instituting the Ewers Case to Parfitt for service on Heron at the 21 Dale House address. Following service of those documents on Heron on April 7, 2004, Parfitt sent Ewers a copy of the papers served and a completed Certificate of Service and Certificate of Compliance with the Hague Convention on April 16, 2004. Ewers Aff., ¶ 12, Exh. D. Believing the claim number listed on those certificates completed by Parfitt or Parfitt's employee to be a clerical error, counsel for Ewers submitted them in good faith as proof of service on Heron of the Complaint and Summons in the Ewers Case. A copy of the proof of service submitted to the Court is attached as Exh. F. *Most importantly*, the Complaint sent by Parfitt to Ewers and forwarded for submission was the Complaint instituting the Ewers Case. See Exh. F; Ewers Aff., ¶ 13.

Following service by Parfitt, APS' agent again attempted service on Heron, but failed and returned a Certificate, dated June 17, 2004, stating that the Ewers Case document had not been served on Heron at the 21 Dale House address because "[w]e are unable to ascertain whether the defendant resides at the address given." A copy of the APS Certificate dated June 17, 2004 is attached as Exh. G. However, just one month after APS returned the second Certificate, Heron submitted a letter, filed on July 29, 2004, to the Court in C.A. 04-10024-RWZ concerning Ewers' pending motion for entry of default judgment, signed "Chris Heron, 21 Dale House, Boundary Road, London NW8 0JB". A copy of Heron's July 29, 2004 letter to the Court is attached as Exh. H. In the end, APS attempted to serve Heron on at least two occasions at the 21 Dale House address, but were unable to do so because Heron evaded service of process. And, in the end, all of this has been a colossal waste of resources, because Heron has had actual notice of this case since before July 29, 2004, well over a year ago.

**D.    Heron waived service of process requirements through inequitable conduct.**

As discussed in Section C, above, Heron evaded service of the Ewers Case Complaint and Summons by APS on at least two occasions. Such inequitable conduct bars Heron from asserting defenses related to service of process; Pladott should not be allowed to invoke those defenses on Heron's behalf to request the preclusion of entry of judgment in the Ewers Case and therefore his motion should be denied.

## III.    CONCLUSION

For any or all of the foregoing reasons, Pladott's Motion to Preclude should be denied.

LARRY EWERS

By his attorneys,

Alan M. Spiro  (BBO No. 475650)
Kenneth V. Nourse (BBO No. 655781)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 439-4444

Dated:  October 7, 2005

### CERTIFICATE OF SERVICE

I, Kenneth V. Nourse, hereby certify that on October 7, 2005, I served a true copy of the above document by electronic filing on counsel of record for Plaintiff Alexander Pladott.

Kenneth V. Nourse  (BBO No. 655781)

BOS_501781_4/KNOURSE

A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br>        Plaintiff,<br><br>        v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and<br>JAMES F. POMEROY, II,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION
NO. 04- 10024-RWZ

## PLAINTIFF'S VERIFIED MOTION FOR ENTRY OF DEFAULT
## AGAINST DEFENDANT CHRISTOPHER PATRICK HERON

Pursuant to Fed. R. Civ. P. 55(a), plaintiff Larry Ewers moves for the entry of default

against defendant Christopher Patrick Heron ("Heron"), for failure to respond to the Complaint.

In support of this Motion, plaintiff states the following:

1.  The Complaint in this case was filed on January 5, 2004.

2.  Process was served on Heron on April 7, 2004, pursuant to Article 5(b) and 6 of The

Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or

Commercial Matters.

3.  Service of the Complaint was effected on Heron at his residence, 21 Dale House,

Boundary Road, London, United Kingdom, by delivery in hand on Heron, who, according to the

Process Server's Certificate of Service, "accepted it voluntarily" on April 7, 2004.

4.  Proof of Service was filed in this Court on April 20, 2004, including the originals of:

    (A)    Certificate of Service, stamped by the Central London County Court;

    (B)    Certificate of Compliance with the Hague Convention, sworn before John
           Leonard, Solicitor.

True copies of these documents are attached as Exhibits A and B, respectively.

5.  Heron's response to the Complaint was due on April 27, 2004.

6.  As of the date of this motion, no response to the Complaint has been served on the

plaintiff or reported as filed with the Court.

WHEREFORE, plaintiff Larry Ewers requests that a default be entered against defendant

Christopher Patrick Heron.

LARRY EWERS

By his attorneys,

Alan M. Spiro  (BBO No. 475650)
Christopher P. Silva (BBO No. 45191)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 439-4444

## VERIFICATION

I, Alan M. Spiro, attorney for the plaintiff Larry Ewers, hereby certify that the foregoing statements are true to the best of my knowledge, information and belief.

Signed under the penalties of perjury this 11th day of May, 2004.

Alan M. Spiro  (BBO No. 475650)

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2004, I served a true copy of the above document upon the defendant Christopher Patrick Heron by first class mail addressed to his residence at 21 Dale House, Boundary Road, London, NW8, United Kingdom.

Alan M. Spiro (BBO No. 475650)

- 2 -

# EXHIBIT A

| Claim No. | 02-10532 RWZ |
|---|---|
| Claimant | LARRY EWERS |
| Defendant | CHRISTOPHER PATRICK HERON |

On the .... 7th APRIL 2004 ........................................................ (*insert date*)

the ..................................................................................... (*insert title or description of documents served*)

a copy of which is attached to this notice was served on (*insert name of person served, including position i.e. partner, director if appropriate*)

.........................................................................................................

**Tick as appropriate**

☐ by first class post                    ☐ by Document Exchange

☐ by delivering to or leaving           ☐ by handing it to or leaving it with

☐ by fax machine (...................time sent)    [          ]
(*you may want to enclose a copy of the transmission sheet*)

                                        ☐ by e-mail

☑ by other means (*please specify*)    BY HAND

at (*insert address where service effected, include fax or DX number or e-mail address*)

21 DALE HOUSE
BOUNDARY ROAD.
LONDON
ENGLAND.

being the defendant's:

☑ residence                    ☐ registered office

☐ place of business            ☐ other (*please specify*) ........................................

The date of service is therefore deemed to be ... 7th APRIL 2004 ... (*insert date - see over for guidance*)

I confirm that at the time of signing this Certificate the document has not been returned to me as undelivered.

Signed .............................................
(Claimant)(Defendant)('s solicitor)('s litigation friend)

Position or ...........................................
office held
(*if signing on behalf of firm or company*)

Date  7th APRIL 2004

# EXHIBIT B

## CERTIFICATE

The undersigned authority has the honour to certify, in conformity with Article 6 of the Hague Convention

That the document hereby described:  Civil Court Action 02-10523-RWZ District of Massachusetts Plaintiff Larry Ewers vs Defendant Christopher Patrick Heron

was served on:                         April 07, 2004 08.18
   (Date)

to:                                    **Christopher Patrick Heron**
                                        (Name)

at:                                     21 Dale House, Boundary Road,
                                        London, NW8
         (Place)
                                        (Address)

by the follow method authorized by Article 5:  By personal delivery to Christopher Patrick Heron at the above address who accepted it voluntarily. The document referred to above was delivered and served to Christopher Patrick Heron, whom the Server knew previously, at his residence at the above the address.

Attached is the document establishing the service.
Description of the document:    Certificate of Service

_____          _15/0₹/0₹___
(Name and Title)                  (Place at Date)

_JOHN LEONARD_ (SOLICITOR)

STAMP or Seal

FINERS STEPHENS INNOCENT
Solicitors
179 Great Portland Street
London W1N 6LS

B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
LARRY EWERS,                        )
      Plaintiff,                    )
                                    )
      v.                            )       CIVIL ACTION
                                    )       NO. 04- 10024-RWZ
CHRISTOPHER PATRICK HERON,          )
CORPORATION OF THE BANKHOUSE, INC., )
SOCIETE BANKHOUSE, and             )
JAMES F. POMEROY, II,               )
      Defendants.                   )
                                    )
```

### AFFIDAVIT OF ALAN M. SPIRO IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT CHRISTOPHER PATRICK HERON

I, Alan M. Spiro, on oath depose and state as follows:

1.     I am a partner of Edwards & Angell, LLP. I am lead counsel in this case for plaintiff Larry Ewers ("Ewers").

2.     Defendant Christopher Patrick Heron ("Heron") is a citizen of the Republic of Ireland, who resides at 21 Dale House, Boundary Road, London, NW8, in the United Kingdom. Heron is not an infant or incompetent person, is not in military service, and is not entitled to the benefits of the Soldiers' and Sailors' Civil Relief Act of 1940.

3.     Process was served on Heron on April 7, 2004, pursuant to Article 5(b) and 6 of The Convention On The Service Abroad Of Judicial And Extrajudicial Documents In Civil Or Commercial Matters.

4.     Service of the Complaint was effected on Heron at his residence, 21 Dale House, Boundary Road, London, United Kingdom, by delivery in hand on Heron, who,

according to the Process Server's Certificate of Service, "accepted it voluntarily" on April 7, 2004.

     5.     Proof of Service was filed in this Court on April 20, 2004, including the originals of:

     (A)     Certificate of Service, stamped by the Central London County Court;

     (B)     Certificate of Compliance with the Hague Convention, sworn before John Leonard, Solicitor.

     6.     Heron's response to the Complaint was due on April 27, 2004.

     7.     Upon application of the Plaintiff, Notice of Default against Heron was entered on June 4, 2004, for failure to plead or otherwise defend as provided by Rule 55(a) of the Federal Rules of Civil Procedure.

     8.     As of the present date, no response to the Complaint has been served on the plaintiff or reported as filed with the Court.

     9.     As of the present date, no response to the Notice of Default has been served on the plaintiff or reported as filed with the Court.

     10.     Plaintiff seeks entry of judgment seeking a sum certain of $1,980,000,000 on each of Counts II – IV of the Complaint (but without duplication), trebled to $5,940,000,000 under Count V.   These sums are calculated as follows.

     11.     In an Agreement dated January 17, 2002, a true copy of which is attached hereto as Exhibit A (the "Agreement"), Heron admitted to his debt, defined as the "Cho/Liner Debt," in the amount of $1,980,000,000. *See* Exhibit A at § 1.15.  Heron admitted in § 3.3 of the Agreement that "Mr. Heron is indebted to Mr. Liner for the Cho/Liner Debt."

BOS_451808_1/ASPIRO

12.    Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became, and remains, the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all of Liner's rights under the Agreement. A true copy of the Power of Attorney is attached as Exhibit B. Pursuant to the Power of Attorney, the $1,980,000,000 Cho/Liner Debt is payable to Ewers.

13.    In the Agreement, Heron agreed to pay "the Settlement Sum," defined in § 1.19 of the Agreement as "Seventy percent of the liquidated value of the Heron Net Worth." Heron agreed in § 4.1 of the Agreement to remit the Settlement Sum by "the Payment Date," defined in § 1.18 of the Agreement as January 24, 2002. The parties further agreed that "time shall be of the essence." § 4.1.

14.    Heron did not pay the Settlement Sum by the Payment Date, nor has he paid the Settlement Sum at any time thereafter.

15.    Heron agreed that the Settlement Sum would extinguish the debt currently owed to Ewers only if "the Settlement Sum is paid by Mr. Heron on or before the Payment Date." Agreement § 6. Other conditions were also imposed, and were not fulfilled by Mr. Heron, but Heron's failure to pay the Settlement Sum by the Payment Date, without more, rendered the entire $1,980,000,000 due and payable to Ewers on January 25, 2002.

16.    Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the courts of the United States and the United Kingdom. Furthermore, the Trustee of the Heron Bankruptcy Proceedings has been informed of, and consented to,

BOS_451808_1/ASPIRO

the prosecution of this action by Ewers. Therefore, there is no bar to maintaining the present action to judgment.

17.    On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, again admitting under oath the debt that is the subject of this lawsuit.

18.    Count II of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for fraud and conspiracy to commit fraud. With respect to Heron, the damages have been established: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that his debt to Ewers is $1,980,000,000. Judgment should be entered in favor of Ewers and against Heron in the amount of $1,980,000,000, plus interest as provided by law.

19.    Count III of the Complaint states a claim against Heron (as well as against Defendants COB and Pomeroy) for constructive trust. In summary, the Complaint alleges that if COB and Pomeroy maintain "any benefit from assets transferred from Heron," they "will be unjustly enriched" (Complt. ¶ 48), and the Complaint seeks a constructive trust in favor of Ewers (Complt. ¶ 49). With respect to Heron, the amount of this claim has been liquidated: Heron has admitted, both in the Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt is $1,980,000,000, and a constructive trust should be imposed on all funds held by COB and Pomeroy for the benefit of Heron and his creditor, Ewers, up to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided by law.

20.    Count IV of the Complaint states a claim against Heron (and against Defendants COB and Pomeroy) in the nature of an action to reach and apply. In

BOS_451808_1/ASPIRO

summary, the Complaint alleges that "Heron transferred assets to the Defendants without
consideration, and with the intent to hinder, delay and defraud" Ewers.  With respect to
Heron, the amount of this claim has been established:  Heron has admitted, both in the
Agreement and on his List of Creditors in the United Kingdom proceedings, that the debt
is $1,980,000,000, and the Court should (a) permanently enjoin Heron, COB and
Pomeroy from using, selling, conveying, transferring, assigning, pledging, encumbering,
hypothecating or otherwise disposing of any funds or assets held or obtained by any of
them from Heron, directly or indirectly, up to the full amount owed by Heron to Ewers,
or $1,980,000,000, plus interest as provided by law, and (b) apply any funds or assets
held by Heron or obtained by any of the Defendants from Heron, directly or indirectly, up
to the full amount owed by Heron to Ewers, or $1,980,000,000, plus interest as provided
by law.

    21.    Count V of the Complaint states a claim against Heron under G.L. c. 93A
for treble damages and attorneys' fees.  Because of the substantial amount of the claim,
and in order to simplify this application for entry of final judgment, the Plaintiff waives
his claim to attorneys' fees, and seeks the amount of his acknowledged damages,
$1,980,000,000, trebled pursuant to G.L. c. 93A to $5,940,000,000, plus interest as
provided by law.

    22.    I make this Affidavit solely in connection with Plaintiff's Application for a
Default Judgment.  I neither intend nor expect to be a witness in this case.

    Signed under the penalties of perjury this 9th day of July, 2004.

                                                  Alan M. Spiro   BBO # 471650

- 5 -

## CERTIFICATE OF SERVICE

I, Alan M. Spiro, hereby certify that on July 9, 2004, I served a true copy of the above document upon the upon the defendant Christopher Patrick Heron by first class mail addressed to his residence at 21 Dale House, Boundary Road, London, NW8, United Kingdom, upon the defendant Corporation of the BankHouse, Inc. by first class mail to James F. Pomeroy, as President of Corporation of the BankHouse, and upon the defendant James F. Pomeroy, individually, at 11 Meadow Haven Drive, Mashpee, MA 02649.

Alan M. Spiro  (BBO No. 475650)

BOS_451808_1/ASPIRO

# EXHIBIT A

DATED    17th January    2002

**(1) H E LINER ESQ**

**(2) A P BAN ESQ**

**(3) A PLADOTT ESQ**

**(4) A S FELDMAN ESQ**

**(5) C P HERON ESQ**

# AGREEMENT

**Anthony Feldman & Co**
**40 Manchester Street**
**London W1U 7LL**

**Tel: 020-7935 2718**
**Ref: 30.KB.1451/1452/1756/1799**

**AN AGREEMENT** made the **17th** day of    January    **2002 BETWEEN**

(1)    **HOWARD EUGENE LINER** of 21403 Crystal Greens, Katy, Texas 77450 USA ("Mr Liner")

(2)    **AH PING BAN** of 231 Outram Road, 01-01 Tamg Chem Building, Singapore 169040 ("Mr Ban")

(3)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Flamecrest Enterprises Limited Trust ("Flamecrest")

(4)    **ALEXANDER PLADOTT** of 20000 Winnetka Place, Woodland Hills, California 91364 USA and **ANTHONY STEPHEN FELDMAN** of 40 Manchester Street, London W1U 7LL the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust ("Wolfensberger")

(5)    **CHRISTOPHER PATRICK HERON** of 21 Dale House, Boundary Road, St John's Wood, London NW8 0JB ("Mr Heron")

**IT IS HEREBY AGREED** as follows:

**1.    Definitions**

| | | |
|---|---|---|
| 1.1 | "the Ban Contract" | An agreement in writing dated 25th November 1998 and made between Mr Heron (1) and Mr Ban (2) as amended firstly by an undated addendum to the said agreement and secondly by a further addendum to the said agreement dated 24th December 1998 |
| 1.2 | "the Ban Debt" | US$500,000,000 payable pursuant to the Ban Contract by Mr Heron together with interest thereon from 3rd December 1999 |
| 1.3 | "the Ban Petition" | A bankruptcy petition to be issued by Mr Ban |

|      |                            | Chancery Division, In Bankruptcy, for non-payment by Mr Heron of the Ban Debt |
|------|----------------------------|---|
| 1.4  | "the Clients Account"      | The United States Dollar Clients Account of the Creditors' Solicitors at Barclays Bank Plc, Barclays Business Centre, Baker Street Branch, 93 Baker Street, London W1A 4SD Sort Code 20-30-19 SWIFT Code BARC GB 22 Account No. 83590699 |
| 1.5  | "the Creditors"            | Mr Liner, Mr Ban, Flamecrest and Wolfensberger |
| 1.6  | "the Creditors' Solicitors"| Messrs. Anthony Feldman & Co of 40 Manchester Street, London W1U 7LL |
| 1.7  | "the Financial Statement"  | A statement evidencing the amount of the Heron Net Worth as at 15th January 2002 containing full and precise particulars of Mr Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles |
| 1.8  | "the Flamecrest Contract"  | An agreement in writing dated 14th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Flamecrest Enterprises Limited Discretionary Trust (2) |
| 1.9  | "the Flamecrest Debt"      | US$100,000,000 payable pursuant to the Flamecrest Contract by Mr Heron together with Interest thereon from 14th April 2000 |
| 1.10 | "the Flamecrest Petition"  | A bankruptcy petition to be issued by Flamecrest against Mr Heron in the High Court of Justice. |

|       |                           | Chancery Division, In Bankruptcy, for payment by Mr Heron of the Flamecrest Debt |
|-------|---------------------------|---------------------------------------------------------------------------------|
| 1.11  | "the Heron Net Worth"     | The sum of US$6,000,000 approximately                                            |
| 1.12  | "Interest"                | Interest at the Interest Rate accruing from the respective dates from which Interest is payable under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract until payment by Mr Heron of the amounts due under the Cho/Liner Contract the Ban Contract the Flamecrest Contract and the Wolfensberger Contract respectively |
| 1.13  | "the Interest Rate"       | 8% per annum                                                                     |
| 1.14  | "the Cho/Liner Contract"  | An agreement in writing dated 18th July 2000 and made between Hsin-Ming Chuo and Mr Liner (1) and Mr Heron (2) |
| 1.15  | "the Cho/Liner Debt"      | US$1,980,000,000 payable pursuant to the Cho/Liner Contract by Mr Heron together with Interest thereon from 18th July 2001 |
| 1.16  | "the Liner Petition"      | A bankruptcy petition to be issued by Mr Liner against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Cho/Liner Debt |
| 1.17  | "the Parties"             | The parties to this agreement                                                    |
| 1.18  | "the Payment Date"        | The 24th day of January 2002                                                     |
| 1.19  | "the Settlement Sum"      | Seventy percent of the liquidated value of the Heron Net Worth                  |

| 1.20 | "the Statutory Demands" | The Statutory Demands issued against Mr Heron by the Creditors in respect of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt |
|------|------------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------|
| 1.21 | "the Wolfensberger Contract" | An agreement in writing dated 15th April 1999 made between Mr Heron (1) and Anthony Stephen Feldman Gabriel Frances MacEnroe and Alexander Pladott, the Trustees of the Balz Rudolf Wolfensberger Discretionary Trust (2) |
| 1.22 | "the Wolfensberger Debt" | US$110,000,000 payable pursuant to the Wolfensberger Contract by Mr Heron together with Interest thereon from 15th April 2000 |
| 1.23 | "the Wolfensberger Petition" | A bankruptcy petition to be issued by Wolfensberger against Mr Heron in the High Court of Justice, Chancery Division, In Bankruptcy, for payment by Mr Heron of the Wolfensberger Debt |

## 2.  Interpretation

2.1  References to a Clause where the context so admits are to a Clause of this Agreement

2.2  The clause and paragraph headings in this Agreement are for ease of reference only and are not to be taken into account in the interpretation of the clause or paragraph to which they refer

2.3  Words importing the singular meaning where the context so admits include the plural meaning and vice versa

2.4  Words of one gender include both other genders and words denoting natural persons include corporations and firms and all such words are to be construed interchangeably in that manner

2.5   Words denoting an obligation on a party to do any act matter or thing include an
      obligation to procure that it be done and words placing a party under a restriction
      include an obligation not to permit infringement of the restriction

3.    **Recitals**

3.1   Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the
      Flamecrest Enterprises Limited Trust

3.2   Alexander Pladott and Anthony Stephen Feldman are the present Trustees of the
      Balz Rudolf Wolfensberger Discretionary Trust

3.3   Mr Heron is indebted to Mr Liner for the Cho/Liner Debt

3.4   Mr Heron is indebted to Mr Ban for the Ban Debt

3.5   Mr Heron is indebted to Flamecrest for the Flamecrest Debt

3.6   Mr Heron is indebted to Wolfensberger for the Wolfensberger Debt

3.7   The Parties have agreed to compromise and settle the amounts due respectively to
      the Creditors on the terms and conditions hereinafter appearing

4.    **Mr Heron's Obligations**

4.1   On or before the Payment Date Mr Heron shall remit or cause to be remitted to the
      Clients Account the Settlement Sum with a value date being on or before the
      Payment Date and in respect of this sub-clause time shall be of the essence of this
      agreement

4.2   On or before the 1st February 2002 Mr Heron shall provide the Financial Statement
      of the Heron Net Worth and certified copies of the sale notes evidencing the
      liquidated amount(s) thereof to the Creditors' Solicitors and in respect of this sub-
      clause time shall be of the essence of this agreement

4.3     Forthwith upon the signing of this agreement Mr Heron shall sign Consent Orders in the forms annexed hereto dismissing his applications to the Court to set aside the Statutory Demands

4.4     If and when served by the Creditors' Solicitors with any or all of the Liner Petition the Ban Petition the Flamecrest Petition and the Wolfensberger Petition Mr Heron will not on any grounds whatsoever oppose the making by the Court of a Bankruptcy Order against him and will not appeal the same

## 5.     Enforcement of the Contracts

If actual assets and/or liabilities of Mr Heron as at 15th January 2002 including any assets in the names of or under the control of nominees agents or servants increase Mr Heron's actual net worth after taking into consideration only those liabilities listed on the Financial Statement are in excess of the amount of the Heron Net Worth or are not listed in the Financial Statement then (but not otherwise) the amounts due under the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt shall immediately become due and payable credit being given by the Creditors for the Settlement Sum (if received)

## 6.     Full and Final Settlement

Provided that pursuant to the terms of this agreement the Settlement Sum is paid by Mr Heron on or before the Payment Date and the Financial Statement is delivered on or before 1st February 2002 then (but not otherwise) and provided further that the actual net worth of Mr Heron as at 15th January 2002 does not exceed the net worth of Mr Heron as disclosed in the Financial Statement and there are no assets of Mr Heron in his name or in the names of or under the control of his nominees agents or servants not listed in the Financial Statement the Settlement Sum shall be in full and final settlement and extinction of the Cho/Liner Debt the Ban Debt the Flamecrest Debt and the Wolfensberger Debt

## 7.     Confidentiality

7.1     Each of the Parties to this Agreement shall at all times use its best endeavours to keep confidential (and to procure that its respective employees and agents shall keep confidential) any information which it or they may acquire in relation to the terms of this Agreement and shall not use or disclose such information except with

the consent of the other party to this Agreement or in accordance with the Order of a Court of competent jurisdiction

7.2 The Parties to this Agreement shall procure that the officers employees and agents of each of them observe a similar obligation of confidence in favour of the Parties to this Agreement

7.3 The obligations of each of the Parties contained in clause 7.1 shall continue without limit in point of time but shall cease to apply to any information coming into the public domain otherwise than by breach by any such party of its said obligations Provided that nothing contained in this clause 7 shall prevent any party from disclosing any such information to the extent required in or in connection with legal proceedings arising out of this Agreement

7.4 For the purposes of this clause 7 the expression "party" shall include the subsidiary companies of any party and any other company controlled by that party and the employees or agents of that party and of such subsidiary or controlled companies

7.5 This clause 7 shall survive expiry or termination of this Agreement

8. **Miscellaneous Provisions**

8.1 <u>Whole agreement</u>
This Agreement contains the whole agreement between the Parties and supersedes any prior written or oral agreement between them relating to it and the Parties confirm that they have not entered into this Agreement on the basis of any representations that are not expressly incorporated in it

8.2 <u>Discretion</u>
No decision exercise of discretion judgment opinion or approval of any matter mentioned in this Agreement or arising from it shall be deemed to have been made by the Parties except if in writing

8.3 <u>No modification</u>
This Agreement may not be modified except by an instrument in writing signed by all of the Parties or their duly authorised representatives

8.4 <u>Force and effect</u>

This Agreement shall be binding upon the Parties to this Agreement and their respective successors and permitted assigns Provided that none of the Parties to this Agreement shall be entitled to assign this Agreement or any of its rights and obligations under this Agreement except as may be otherwise approved in writing by the other parties to this Agreement and on terms that the transferee shall covenant with the other parties to perform all the obligations of the transferor under this Agreement

**8.5**    <u>No waiver</u>

No exercise or failure to exercise or delay in exercising any right power or remedy vested in any party under or pursuant to this Agreement shall constitute a waiver by that party of that or any other right power or remedy

**8.6**    <u>Publicity</u>

No party shall be entitled to make or permit or authorise the making of any press release or other public statement or disclosure concerning this Agreement or any of the transactions contemplated in it without the prior written consent of the other party

**8.7**    <u>Governing law</u>

This Agreement shall be governed by the law of England and Wales in every particular including formation and interpretation and shall be deemed to have been made within England and Wales and the Parties agree to submit to the exclusive jurisdiction of the Courts of England and Wales

**AS WITNESS** the hands of **LARRY EWERS** in exercise of a Power of Attorney under the hand of the said **HOWARD EUGENE LINER** dated the 11th day of January 2002 and of the said **ANTHONY STEPHEN FELDMAN** as Solicitor and Agent for the said **AH PING BAN** and of the other parties hereto the day and year first before written

**SIGNED** by the above named **LARRY EWERS**) HOWARD EUGENE LINER by his Attorney

as the Attorney and in the name of the above   )

named HOWARD EUGENE LINER in the   )    *Larry Ewers*

presence of:            )

*4227 San Felipe, No. SF25*
*Houston, Texas 77027*

SIGNED by the said **ALEXANDER**  )
**PLADOTT** in the presence of        )

AS ABOVE

SIGNED by the said **ANTHONY**  )
**STEPHEN FELDMAN** in the presence of )

AS ABOVE

SIGNED by the said **CHRISTOPHER**  )
**PATRICK HERON** in the presence of  )

AS ABOVE

# EXHIBIT B

## EXCLUSIVE POWER OF ATTORNEY AND MANDATE

THAT HOWARD EUGENE LINER, being one and the same person as H.E. Liner, Howard E. Liner, and Gene Liner, a resident of Rosenberg, Fort Bend County, Texas, United States of America, has made, constituted, and appointed, and by these presents does make constitute, mandate, and appoint LARRY EWERS a resident of Corpus Christi, Nueces County, Texas, United States of America as his sole, exclusive, true, and lawful Attorney-In-Fact and Mandate for me and to act in my place, and stead for the purpose of doing any and every act, and exercise any and every power, that I might or could do, and that may be reasonably necessary regarding the following contracts and matters:

That certain Memorandum of Understanding, dated July 18, 2000 by and between Chris Heron, Hsin-Ming Chuo, and Howard E. Liner;

That certain Agreement dated January 17, 2002 by and between Howard Eugene. Liner, AH Ping Ban. Alexander Pladott, Anthony Stephen Feldman, and Christopher Patrick. Heron;

Cause No. 384-SD-2001; In the High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron and Hsin-Ming Chuo and Howard Eugene Liner; and

Cause No. 1625 of 2002; In The High Court Of Justice In Bankruptcy; RE: Christopher Patrick Heron

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 1

> To do any and every act, and exercise any and every power, that
> I may have that the Attorney-In-Fact and Mandate shall deem
> proper or advisable, intending hereby to unconditionally vest in
> the Attorney-In-Fact and Mandate the sole and exclusive power
> of attorney for conducting any and all business transactions of
> every nature and kind relating to the contracts, litigation, claims,
> and causes of action asserted by me against Christopher Patrick
> Heron before the Court in the above referenced matters,
> including without limiting the generality of the powers granted
> herein, the full exclusive right and authority to compromise and
> settle said matters.

This Exclusive Power Of Attorney And Mandate shall not terminate on my disability,

is irrevocable, and coupled with an interest, and shall only terminate upon the full and final

adjudication, resolution, settlement, and disposal of the referenced matters and contracts.

I agree that anyone dealing with said Attorney-In-Fact and Mandate may rely upon the

statement(s) of such Attorney-In-Fact and Mandate, that this Exclusive Power Of Attorney

and Mandate has not been revoked or modified in any manner.

Any action so taken, unless otherwise invalid or unenforceable, shall be binding upon

me and my heirs or assigns. An affidavit, executed by the Attorney-In-Fact and Mandate

stating that he does not have, at the time of doing an act pursuant to this Exclusive Power Of

Attorney and Mandate, actual knowledge of the revocation or termination of this Exclusive

Power Of Attorney and Mandate is, in the absence of fraud, conclusive proof of the non-

revocation and non-termination of the power at that time.

I hereby ratify and confirm that my sole and exclusive Attorney-In-Fact and Mandate

shall lawfully do, or cause to be done by virtue of this Exclusive Power Of Attorney and

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 2

_(Initial)_

Mandate along with the rights and powers granted herein, all acts necessary in the protection of the claims asserted in the referenced matter and the rights granted under said contracts. Said Attorney-In-Fact and Mandate shall have the powers set forth herein to the exclusion of all other persons or entities, including myself, my heirs and assigns. I hereby indemnify and hold harmless, and I further authorize said Attorney-In-Fact and Mandate to indemnify and hold harmless any third party who accepts and acts under this Exclusive Power Of Attorney and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which such third party may incur in connection with his reliance on this Exclusive Power Of Attorney and Mandate.

I hereby bind myself to indemnify and hold harmless said Attorney-In-Fact and Mandate against any and all claims, demands, losses, damages, actions and causes of action, including expenses, costs, and reasonable attorneys' fees which its attorney, at any time, may sustain or incur directly with carrying out the authority granted to him in this Power Of Attorney and Mandate:

This Power Of Attorney and Mandate shall be construed pursuant to the laws of the State of Texas.

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 3

(initial)

IN WITNESS WHEREOF, Howard Eugene Liner executes this Power Of Attorney and Mandate on this the 15th of June, 2002, which shall become effective as of the 11th day of January, 2002 for all purposes.



**Howard Eugene Liner**

THE STATE OF TEXAS

COUNTY OF _Harris_

This Exclusive Power of Attorney and Mandate was acknowledged before me on the 18th day of June, 2002, by Howard Eugene Liner.

Notary Public In And For
The State Of Texas

TRACY STECK
MY COMMISSION EXPIRES
February 3, 2004

EXCLUSIVE POWER OF ATTORNEY AND MANDATE
Page 4

C

# Edwards & Angell LLP

101 Federal Street   Boston, MA 02110   617.439.4444   *fax* 617.439.4170

**Leslie Crossley, Paralegal**
*Telephone:* 617 .951 3384
*Fax:*   617 439 4170
lcrossley@EdwardsAngell.com

January 8, 2004

**VIA FEDERAL EXPRESS**

Glenda Fichtner
APS International, Ltd. / The Civil Action Group
APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

> RE:   APS File No. 240184
>       Edwards & Angell File No. 50112.0001
>       Larry Ewers v. Christopher Patrick Heron, Corporation of the Bankhouse, Inc.,
>       Societe Bankhouse, and James F. Pomeroy, II
>       U.S. District Court for the District of Massachusetts (Boston)
>       Case No. 04-10024 RWZ

Dear Ms Fichtner:

Per your telephone conversation with Alan Spiro, Esq., our office has retained APS International,
Ltd / The Civil Action Group to effectuate formal service of a U.S. District Court Summons and
Complaint in a Civil Case upon Christopher Patrick Heron in London, England.

The following documents are enclosed:
1.   Check in the amount of $300.00 delivered in payment of APS processing fees for
     service;
2.   APS service request cover sheet;
3.   Three original Summons in a Civil Case issued by the US District Court for the
     District of Massachusetts;
4.   Three certified copies of the Complaint filed with the US District Court for the
     District of Massachusetts as Civil Docket no. 04-10024 RWZ

We are requesting formal service via the Hague Convention.

Per the US District Court rules, service must be completed by May 4, 2004 (120 days from the
filing date of the complaint). If this service deadline cannot be met, please contact me
immediately and we will petition the Court for an extension of time in which to complete
service.

# Edwards & Angell LLP

Glenda Fichtner, APS International, Ltd.
January 8, 2003
Page 2

The summons form instructs that the defendant's response be served to Alan M. Spiro, Esq., Edwards & Angell LLP, 101 Federal Street, Boston, MA 02110, USA.

Please forward the original return of service to my attention at 101 Federal Street, Boston, Massachusetts 02110.

Please contact me at 617-951-3384 if you have any questions regarding the enclosed. If you wish to consult with the responsible attorney for this matter, please contact Alan Spiro, Esq. at his direct dial number 617-951-2204.

Thank you very much for your assistance with this matter.

Very truly yours,

*Leslie Crossley*

Leslie A. Crossley
Paralegal

enclosures

D

SFP 2004-493

## CERTIFICATE - ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention
L'autorite soussignee a l'honneur d'attester conformenent a l'article 6 de ladite Convention.

1) that the document has been served  the (date)
que le demande a ete executee  le (date)

-at (place, street, number)
-a (localite, rue, numero)


- in one of the following methods authorised by article 5:
-dans une des formes suivantes prevues a l'article 5:
a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the convention
selon les formes legales (article 5, alinea premier, lettre a)

b) in accordance with the following particular method
selon la forme particuliere suivante

c) by delivery to the addressee, who accepted it voluntarily
par remise simple
The documents referred to in the request have been delivered to:

Les documents mentionnes dans la demande ont ete remis a:
- (identity and description of person)
- (identite et qualite de la personne)

- relationship to the addressee (family, business or other)
- liens de parente de subordination ou autres avec
le desinataire de l'acts

2) **that the document has not been served, by reason of the following facts:**
que la demande n'a pas ete executee en ra
que la demande n'a pas ete executee, en raison des faits suivants:

**The defendant has left the address given.**


in conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay the expenses details in the attached statement.
Conformement a l'article 12, alinea 2 de ladite Convention, le requerant est prie de payer ou de rembourser les frais dont le detail figure au memoire ci-joint

Annexes
Documents returned
Pieces renvoyees

in appropriate cases, documents establishing the service:
le cas echeant, les documents justicatifs de l'execution:

Done at London
fait a

the
le

Signature and/or stamp:
Signature et/ou cachet:



E

# Edwards & Angell LLP

101 Federal Street   Boston. MA 02110   617.439.4444   *fax* 617.439.4170

Alan M. Spiro
Direct Dial: 617.951.2204
Direct Fax: 888.325.9124
E-Mail: aspiro@EdwardsAngell.com

March 9, 2004

**VIA FEDERAL EXPRESS**

Josh Cobb
APS International, Ltd. / The Civil Action Group
APS International Plaza
7800 Glenroy Road
Minneapolis, MN 55439-3122

> RE:   APS File No. 240184
>       Larry Ewers v. Christopher Patrick Heron et al.
>       U.S. District Court Case No. 04-10024 RWZ

Dear Josh:

Thank you for our telephone conversations yesterday and today. As I informed you, an investigator retained by my client, Mr. Ewers, confirmed in London yesterday (Monday March 8) that Mr. Heron still resides at the given address, 21 Dale House, Boundary Road, London NW8 OJB. Enclosed please find copies of photographs of Mr. Heron, in case they might be of assistance to the Bailiff. As you suggested, I re-enclose the materials that were returned to me:

1.   Two original Summonses in a Civil Case issued by the US District Court for the District of Massachusetts, Civil Docket no. 04-10024 RWZ; and

2.   Two certified copies of the Complaint.

Thank you very much for your prompt assistance with this matter. Please ensure that Mr. Heron is served as soon as humanly possible.

Very truly yours,

Alan M. Spiro

cc:   Larry Ewers
      Leslie Crossley

BOS_437320_1/LCROSSLEY

F

# Edwards & Angell LLP

101 Federal Street   Boston, MA 02110   617.439.4444   *fax* 617.439.4170

Alan M. Spiro
Partner
Direct Phone:  617.951.2204
*Direct Fax*  888.325.9124
aspiro@EdwardsAngell.com

April 20, 2004

***BY HAND***

Office of the Clerk
United States District Court
    for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
One Courthouse Way
Boston, MA 02210

Re:    Larry Ewers v. Christopher Patrick Heron et al.  04-10024-RWZ

Dear Sir or Madam:

Enclosed for filing in the above-referenced matter, please find the original PROOF OF SERVICE on Defendant Christopher Patrick Heron, including:

(1)    Certificate of Service, stamped by the Central London County Court;

(2)    Certificate of Compliance with the Hague Convention, sworn before John Leonard, Solicitor.

Sincerely,

Alan M. Spiro

Enclosures

cc:  Larry Ewers
     Leslie Crossley

BOS_428998_3/ASPIRO

| Claim No. | 02-10532 RWZ. |
|-----------|---------------|
| Claimant | LARRY EWERS. |
| Defendant | CHRISTOPHER. PATRICK HERON. |

*(stamp: A/C NO. 242006  07 APR 2004)*

On the ..... 7th APRIL 2004 ......................................................... *(insert date)*

the ............................................................................................... *(insert title or description of documents served)*

a copy of which is attached to this notice was served on *(insert name of person served, including position i.e. partner, director if appropriate)*

..............................................................................................................................

**Tick as appropriate**

☐ by first class post                    ☐ by Document Exchange

☐ by delivering to or leaving        ☐ by handing it to or leaving it with

☐ by fax machine (..................time sent)
   *(you may want to enclose a copy of the transmission sheet)*

                                                  ☐ by e-mail

☑ by other means *(please specify)*  | BY HAND |

**at** *(insert address where service effected, include fax or DX number or e-mail address)*

| 21  DALE HOUSE |
| BOUNDARY ROAD. |
| LONDON |
| ENGLAND . |

being the defendant's:

☑ residence          ☐ registered office

☐ place of business  ☐ other *(please specify)* ...............................................

The date of service is therefore deemed to be   7th APRIL 2004 ............ *(insert date - see over for guidance)*

---

I confirm that at the time of signing this Certificate the document has not been returned to me as undelivered.

Signed ....................................................
   (Claimant)(Defendant)('s solicitor)('s litigation friend)

Position or ....................................................
office held
*(if signing on behalf of firm or company)*

Date   7th APRIL 2004 .....................................

## CERTIFICATE

The undersigned authority has the honour to certify, in conformity with
Article 6 of the Hague Convention

That the document hereby described:  Civil Court Action 02-10523-RWZ
District of Massachusetts Plaintiff Larry Ewers vs Defendant Christopher
Patrick Heron

was served on:                          April 07, 2004 08.18
    (Date)

to:                                     Christopher Patrick Heron
                                  (Name)

at:                                     21 Dale House, Boundary Road,
                                        London, NW8

      (Place)
                                  (Address)

by the follow method authorized by Article 5:  By personal delivery to
Christopher Patrick Heron at the above address who accepted it voluntarily.
The document referred to above was delivered and served to Christopher
Patrick Heron, whom the Server knew previously, at his residence at the
above the address.

Attached is the document establishing the service.
Description of the document:    Certificate of Service

_(signature)_ _____          _15/04/04_ _____
(Name and Title)                        (Place at Date)

_(signature)_  JOHN LEONARD  (SOLICITOR)

STAMP or Seal

FINERS STEPHENS INNOCENT
Solicitors
179 Great Portland Street
London W1N 6LS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY EWERS,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER PATRICK HERON,<br>CORPORATION OF THE BANKHOUSE, INC.,<br>SOCIETE BANKHOUSE, and JAMES F. POMEROY, II,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)   NO.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### Nature of the Action

1.    This case arises out of a trans-national investment fraud resulting in a debt, admitted in signed writings, in the principal amount of $1,980,000,000.

### Parties

2.    Plaintiff Larry Ewers ("Ewers") is a U.S. citizen residing in Corpus Christi, Texas.

3.    Defendant Christopher Patrick Heron ("Heron") is, on information and belief, an individual citizen of Ireland, who resides at 21 Dale House, Boundary Road, London, England.

4.    Defendant Corporation of the BankHouse, Inc. ("COB") is, on information and belief, a corporation incorporated and existing under the laws of Delaware, with a principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

5.    Defendant Societe BankHouse ("Societe") is, on information and belief, a merchant banking entity with its principal place of business at 30 Rowe's Wharf, Boston, Massachusetts.

6.    Defendant James F. Pomeroy, II ("Pomeroy") is, on information and belief, an individual who resides at 11 Meadow Haven Drive, Mashpee, Massachusetts. On information and belief, Pomeroy is the principal owner and chief executive officer of both COB and Societe.

### Jurisdiction and Venue

7.    This Court has jurisdiction over this action pursuant to 18 U.S.C. § 1332 because it is an action between citizens of different states and nations and the amount in controversy exceeds the value of $75,000, exclusive of interest and costs.

8.    Venue in this district is proper pursuant to 28 U.S.C. § 1391 (a) (2).

### Facts

9.    On information and belief, Heron is a sophisticated con artist who represents to investors that he will generate substantial profits from trans-national trading in debt instruments of large denomination. On information and belief, Heron has defrauded numerous individuals.

10.    On January 17, 2002, Heron entered into a Settlement Agreement with four such defrauded creditors, including Howard Eugene Liner ("Liner") (the "Heron Settlement Agreement.")

11.    In the Heron Settlement Agreement, Heron acknowledged his debt to Liner in the principal amount of $1,980,000,000.

_428232_1/

12.    Also in the Heron Settlement Agreement, Heron represented his net worth to be approximately $6,000,000.00. Heron agreed to liquidate this net worth, and to pay the creditors seventy (70%) percent of the liquidated value of his net worth on or before January 24, 2002.

13.    In addition, Heron agreed to provide a financial statement "evidencing the amount of the Heron Net Worth as at 15[th] January 2002 containing full and precise particulars of Mr. Heron's assets and liabilities supported by documents evidencing the same and prepared in accordance with generally accepted accounting principles."

14.    The "financial statement" tendered by Heron stated that Heron's net worth consisted entirely of his ownership interest in what was eventually identified as Syndicate 150, an account Heron claimed to be under the exclusive management of COB, an entity controlled and directed by Pomeroy.

15.    On January 29, 2002, Heron wrote to the then solicitor for the creditors: "The schedule of assets will be contained in my financial statement, that schedule should be furnished today and include an estimate of the further time needed to liquidate the assets. I will not know the nature of the assets until I receive the schedule. The assets are under management of a third party with complete discretion with the proviso that the capital is not to be depleted."

16.    The "third party" referred to by Heron in this correspondence was COB, an entity with its principal place of business in Boston, Massachusetts, which at all times material hereto was directed and controlled by Pomeroy, a citizen of Massachusetts.

17.    On January 31, 2002, Pomeroy, the President of COB, replied to Heron. Pomeroy attached an "Interim Review" to his letter and cautioned that the report "states

- 3 -

value for only the remaining Participation Interests in the COB Syndicate 150. It does not value current or accrued coupons, partnership interests, rights or attachments of interests in underlying transactions." Heron's "Interim Review" stated: "Effective 15 January 2002, the syndicate holds remaining participation amounts of USD 1,814,158.25 in accordance with our internal cash flow detail for Syndicate 150. These participation amounts take the form of corporate note obligations exclusive of current and/or accrued coupons, rights or attachments in underlying transaction interests." No value was provided for the excluded items, and they were not otherwise described.

18.     In the same January 31, 2002 correspondence, Pomeroy reported that: "We are negotiating with the South African partnerships at your [Heron's] direction, the sale of the current participation amounts in Syndicate 150. This group valued the potential purchase of Syndicate 150 remaining interests at approximately USD $4.48 Million during our last working session."

19.     On his financial statement of February 1, 2002, Heron described his asset as "Corporate note obligations held through Syndicate 150 Societe BankHouse (net of any outstanding liabilities and charges) Current Sale Value $4,480,000 USD…. 70% of the net balance above equates to $3,135,000."

20.     Heron made repeated fraudulent promises to pay the 70% of his net worth to his creditors, but failed ever to do so and, on information and belief, never had any intention to do so.

21.     No other information concerning Syndicate 150 or the assets held in that name has ever been furnished by COB, Societe or Pomeroy. On information and belief,

- 4 -

Syndicate 150 has never been liquidated. No funds have been released from Pomeroy or Pomeroy-controlled entities to date.

22.    Pursuant to an Exclusive Power of Attorney dated January 11, 2002, Ewers became and remains the sole and exclusive attorney-in-fact for Liner with respect to, among other matters, all rights of Liner under the Heron Settlement Agreement.

23.    Based on an application dated March 3, 2002, Heron was adjudged bankrupt in the United Kingdom on June 18, 2002. However, Ewers is informed and believes that there is no "automatic stay" of actions against such persons, and that no reciprocity applies between the United States and United Kingdom courts. Therefore, there is no bar to maintaining the present action.

24.    On his List of Creditors in the United Kingdom proceedings, Heron listed the Liner debt, for which Ewers is attorney-in-fact, as "U.S. $ 1.980" Billion Dollars, thereby acknowledging and admitting the debt that is the subject of this lawsuit.

25.    On his Schedule of Assets in the United Kingdom proceedings, Heron listed as his only significant asset: "Private Investment Syndicate held and managed on a full discretionary basis by Corporation of the Bankhouse, Incorporated, 30 Rowes Wharf, Boston, Mass. U.S.A."

26.    On information and belief, Heron's representation that his investment in Syndicate 150 was his only significant asset was false and fraudulent. By way of examples only, shortly after he made such representation, on May 3, 2002, Heron communicated with Boston attorney Robert Masud concerning a "Letter of Guarantee" in the amount of $20 million dollars, of which, Heron represented, "I am to be the First Beneficiary of the instrument...." On February 27, 2003, Heron executed an Affidavit

- 5 -

stating "I ... hereby confirm under penalty of perjury that funds are readily available for the completion of the transaction per the attached [Letter of Intent], being an Intent to Purchase Bank Guarantee in the amount of $200,000,000. On March 11, 2003, Heron transmitted a letter of "intent to purchase ... Bank Guarantees ... Amount of $10 Billion USD, First Tranche $100 Million USD." On information and belief, Heron has continued substantial investment activities, while at the same time falsely and fraudulently claiming that he has no liquid assets.

27.    On information and belief, Heron maintains millions of dollars of funds in accounts which he has claimed to be "outside the jurisdiction" of the United Kingdom Bankruptcy Court and "out of reach" of creditors.

28.    On April 3, 2003, Heron was charged with contempt in the United Kingdom proceedings and incarcerated for 60 days.

29.    On July 8, 2003, Ewers' representative requested Pomeroy in writing to identify the Syndicate 150 assets and to voluntarily produce the relevant documents. Pomeroy never responded.

30.    COB, Societe and BankHouse have been named as defendants in a number of related lawsuits filed in the United States District Court for the District of Massachusetts, including, without limitation, International Strategies Group, Ltd. v. Corporation of the BankHouse, Inc., Societe BankHouse and James F. Pomeroy, II, Civil Action No. 02-10532-RWZ, and St. Frederikslund Holding A/S v. SB Global, Inc., Societe BankHouse, James F. Pomeroy, II, and Corporation of the BankHouse, Inc., Civil Action No. 01-11968-RWZ. Each of these cases alleged a pattern of fraud against investors.

## COUNT I
### (Tortious Interference with Contract)

31.     Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

32.     Defendants were in full and absolute possession and control of Syndicate 150 and the assets held in the name of or for the benefit of Syndicate 150, all for the benefit of Heron, the true owner of the Syndicate 150 assets.

33.     Defendants owed Heron a fiduciary duty to account for and deliver the Syndicate 150 assets to Heron.

34.     Defendants knew of the existence and terms of the Heron Settlement Agreement and Heron's obligations thereunder.

35.     Defendants intentionally and wrongfully interfered with the consummation of the Heron Settlement Agreement by refusing to account for (or even minimally to describe) the Syndicate 150 assets, by refusing to return control of those assets, and by refusing to liquidate the assets and deliver the proceeds, all in breach of their fiduciary obligations.

36.     Defendants' tortious interference with the Heron Settlement Agreement has proximately caused actual damages to Ewers in the amount of his proportionate share of the value of the Syndicate 150 assets.  On information and belief such damages exceed Three Million ($3,000,000.00) Dollars.

37.     Defendants' actions were wrongful, willful and malicious, and/or were undertaken with reckless disregard for the rights of Ewers.

_428232_1/

## COUNT II
### (Fraud and Conspiracy to Commit Fraud)

38.    Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 37 as though fully set forth herein.

39.    In the alternative, Pomeroy and Heron entered into a conspiracy to fraudulently conceal and preserve for their benefit the assets of Syndicate 150 from Heron's creditors, including Ewers.

40.    In furtherance of the conspiracy, Heron misrepresented Pomeroy's willingness to perform his fiduciary duties and identify, account for and liquidate Syndicate 150 assets.

41.    In furtherance of the conspiracy, Pomeroy, COB and Societe falsely represented that Syndicate 150 was being liquidated by a private sale to the "South Africans."

42.    In furtherance of the conspiracy, Heron, Pomeroy and related entities continue to act in concert to conceal Syndicate 150 assets and evade their obligations.

43.    Defendants intended for Ewers to rely on their false representations.

44.    Ewers reasonably relied upon Defendants' false representations.

45.    The fraud and conspiracy to commit fraud of Defendants has proximately caused damage to Ewers.

46.    The actions of the Defendants were undertaken intentionally, willfully and with reckless disregard for Ewers' rights, entitling Ewers to recover punitive damages.

_428232_1/

## COUNT III
### Constructive Trust

47.    Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 as though fully set forth herein.

48.    If the Defendants receive any benefit from assets transferred from Heron, Defendants will be unjustly enriched.

49.    A constructive trust in favor of Ewers should be imposed upon any assets received by Defendants from Heron.

## COUNT IV
### (Reach and Apply)

50.    Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.    Heron transferred assets to the Defendants without consideration, and with the intent to hinder, delay and defraud creditors, including Ewers.

## COUNT V
### (G.L. c. 93A)

52.    Ewers repeats, realleges and incorporates by reference the allegations contained in paragraphs 1 through 51 as though fully set forth herein.

53.    Defendants' conduct constituted fraudulent, unfair and deceptive practices in violation of G.L. c. 93A § 2.

54.    Defendants' conduct took place in trade or commerce.

55.    Ewers is entitled to double or treble damages pursuant to G.L. c. 93A § 11, together with his costs including attorneys fees.

WHEREFORE, Plaintiff-Intervenor Ewers prays that this Court:

- 9 -

1) Enter judgment for Ewers against each defendant on Counts I and II of the Complaint;

2) On Count III of the Complaint, impose a constructive trust on behalf of Ewers on any assets held in the name of or for the benefit of Syndicate 150;

3) On Count IV of the Complaint, temporarily and, after hearing, permanently enjoin all defendants from using, selling, conveying, transferring, assigning, pledging, encumbering, hypothecating or otherwise disposing of any funds or assets held or obtained by them, directly or indirectly from Heron, for the benefit of Syndicate 150;

4) Award pre- and post-judgment interest to Ewers;

5) Award attorneys fees and costs of court to Ewers;

6) Provide such other and further relief to which Ewers may show himself to be justly entitled.

## JURY DEMAND

Plaintiff-Intervenor demands a trial by jury on all issues so triable.

LARRY EWERS

By his attorneys,

Alan M. Spiro  BBO #475650
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, Massachusetts  02110
(617) 439-4444

Dated:  January 5, 2004

_428232_1/

G

SFP 2004-2106

## CERTIFICATE - ATTESTATION

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention
L'autorite soussignee a l'honneur d'attester conformenent a l'article 6 de ladite Convention.

1) that the document has been served  the (date)
que le demande a ete executee          le (date)

-at (place, street, number)
-a (localite, rue, numero)


- in one of the following methods authorised by article 5:
-dans une des formes suivantes prevues a l'article 5:
a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the convention
selon les formes legales (article 5, alinea premier, lettre a)

b) in accordance with the following particular method
selon la forme particuliere suivante

c) by delivery to the addressee, who accepted it voluntarily
par remise simple
The documents referred to in the request have been delivered to:
Les documents mentionnes dans la demande ont ete remis a:
- (identity and description of person)
- (identite et qualite de la personne)

- relationship to the addressee (family, business or other)
- liens de parente de subordination ou autres avec
le desinataire de l'acts

**2) that the document has not been served, by reason of the following facts:**
que la demande n'a pas ete executee, en raison des faits suivants:

**We are unable to ascertain whether the defendant resides at the address given.**


in conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay the expenses details in the attached statement.
Conformement a l'article 12, alinea 2 de ladite Convention, le requerant est prie de payer ou de rembourser les frais dont le detail figure au memoire ci-joint

Annexes
Documents returned
Pieces renvoyees

in appropriate cases, documents
establishing the service:
le cas echeant, les documents
justicatifs de l'execution:

Done at London
fait a

the **17 June, 2004**
le

Signature and/or stamp:
Signature et/ou cachet:

17 JUN 2004

QBD

H

22nd July 2004

Edwards & Angell, LLP
101 Federal Street
Boston, Massachusetts 02110

Attn: Alan M. Spiro
      Christopher P. Silva

RE:    Your Client Larry Ewers and Civil Action # 04 - 10024-RWZ.


Dear Sirs,

I am in receipt of your service of the notice to obtain final judgement by default
kindly note for the record I was not served by you, Ewers or your agents in respect of
this complaint #04-10024-RWZ.

By the evidence attached to your affidavit for the court you have confirmed that
Ewers was not empowered to sign the agreement in January 2002 upon which his
claim is based. Notwithstanding which you have emphasised the fact that the subject
settlement sum was in respect of the "liquidated value" of the assets. On the day
established by the plaintiff that sum was zero and the plaintiff together with the other
claimants in bankruptcy, was not prepared to accept the asset directly and resolutely
rejected same repeatedly. The subject agreement is voided by Ewers' unauthorised
engagement and criminal misrepresentation in furtherance of his and Liner's criminal
frauds in the U.S. for which Liner is now serving time.

It should be noted that Liner's claim in respect of the Cho/Liner claim was not
accepted during his trial for fraud. Additionally re-examination of the POA from Cho
to Liner as submitted to the courts here, has shown that his authority was limited to a
specified account in the Bank of Taiwan, Taipei which was not the account holding
the alleged subject fund of USD 220 million. Further his authority was limited to
acting in Alex Cho's name. Therefore the agreement he engaged in from which the
figure of USD 1,980 million was extrapolated, is void.

To my knowledge the matter of fees to the professionals in London remains
unresolved. Ewers submitted himself to the jurisdiction of the English courts in
respect of this claim, I require you to evidence to me the consent granted by Malcolm
Harris the Trustee in Bankruptcy. The absence of such evidence compounds Ewers'
fraudulent actions and the existence of such evidence is further evidence of the
Trustee's complicity in the false claims in bankruptcy.


1/2

I therefore demand a stay of execution of the entry for final judgement pending receipt and testing of your evidence of the following documents:

Trustee's consent to Ewers' litigation in the U.S.A. ---

Bank of Taiwan's confirmation of the statements of account submitted by Liner to me evidencing the sum of USD 220 million on account ---

Liner's authority in respect of the operative account in Bank of Taiwan ---

Establish the sum certain referred to as the "liquidated value" which I allegedly failed to remit in breach of the January 2002 agreement ---

Kindly forward the requisite documents to my address below.

Sincerely,

Chris Heron
21 Dale House
Boundary Road,
London NW8 0JB

CC:    United States District Court for the District Of Massachusetts
       James F. Pomeroy, II

22nd. July 2004

FILED
IN CLERK'S OFFICE

2004 JUL 29  P 12: 24

U.S. DISTRICT COURT
DISTRICT OF MASS

United States District Court
For the District of Massachusetts
John Joseph Moakley U.S. Courthouse
One Court House Way
Boston, MA 02210

RE    : Larry Ewers v. Christopher Patrick Heron
         Civil Action No. 04-100240RWZ

Dear Sir/Madam,

Please find enclosed for filing my response to the notice served on me by mail in
London, U.K. by Alan Spiro for the Plaintiff of a Motion for Entry of Final
Judgement against me and the affidavit of Alan Spiro in respect of same.

Thank you for your attention in this matter.

Sincerely,

Christopher Patrick Heron
21 Dale House
Boundary Road,
London NW8 0JB
U.K.